**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

              Plaintiff,

    v.

CVS PHARMACY, INC.,

           Defendant.

No. 1:14-CV-863-JWD

**MEMORANDUM IN SUPPORT**

**<u>MEMORANDUM IN SUPPORT OF</u>**
**<u>DEFENDANT'S MOTION TO DISMISS OR,</u>**
**<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Eric Dreiband
Yaakov Roth
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for CVS Pharmacy, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.  CVS PHARMACY'S SEVERANCE AGREEMENT DOES NOT INTERFERE WITH FORMER EMPLOYEES' ABILITY TO FILE EEOC CHARGES OR TO COOPERATE WITH THE EEOC ................................................................................ 4

II.  MERE INCLUSION OF CONTRACTUAL TERMS IN A SEVERANCE AGREEMENT DOES NOT VIOLATE ANY PART OF TITLE VII ............................. 8

    A.  The Complaint Does Not and Cannot Allege Any Unlawful Discrimination or Retaliation Under Title VII ....................................................... 9

    B.  Without Unlawful Discrimination or Retaliation, No "Pattern or Practice" Action Can Be Alleged, and the EEOC's Claim Therefore Fails ....................... 11

    C.  The EEOC's Unprecedented Theory Would Turn "Pattern or Practice" Authority into a Blank Check for the Agency ..................................................... 14

    D.  At Minimum, Any Section 707 Action Would Require *Intentional* Interference, Which the EEOC Has Not Plausibly Alleged and Cannot Show ..................................................................................................................... 15

III.  THE EEOC VIOLATED TITLE VII AND ITS OWN REGULATIONS WHEN IT FILED THE COMPLAINT WITHOUT FIRST ATTEMPTING TO CONCILIATE .......................................................................................................... 16

    A.  The EEOC Must Endeavor To Conciliate Claims in a Confidential Manner *Before* Filing a Lawsuit, But Here the EEOC Flatly Refused To Do So ............. 16

    B.  Title VII, Forty Years of Unanimous Jurisprudence, and the EEOC's Own Regulations Demonstrate That the EEOC Must Conduct Conciliation Proceedings Before It Files a "Pattern or Practice" Suit ..................................... 18

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)...................................................................................15

*Aeroground, Inc. v. CenterPoint Props. Trust*,
    738 F.3d 810 (7th Cir. 2013) ......................................................................7

*Amari Co. v. Burgess*,
    546 F. Supp. 2d 571 (N.D. Ill. 2008) ........................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................16

*Babrocky v. Jewel Food Co.*,
    773 F.2d 857 (7th Cir. 1985) .....................................................................13

*Celestine v. Petroleos de Venezuella SA*,
    266 F.3d 343 (5th Cir. 2001) .....................................................................13

*Council 31, AFSCME, AFL-CIO v. Ward*,
    978 F.2d 373 (7th Cir. 1992) ..........................................................12, 13, 15

*Davis v. Precoat Metals*,
    328 F. Supp. 2d 847 (N.D. Ill. 2004) ..........................................................9

*DeWalt v. Carter*,
    224 F.3d 607 (7th Cir. 2000) .......................................................................2

*EEOC v. Agro Distrib. LLC*,
    555 F.3d 462 (5th Cir. 2009) .....................................................................17

*EEOC v. Asplundh Tree Expert Co.*,
    340 F.3d 1256 (11th Cir. 2003) .................................................................17

*EEOC v. Bass Pro Outdoor World, LLC*,
    No. 4:11-CV-3425, 2014 U.S. Dist. LEXIS 27019 (S.D. Tex. Mar. 4, 2014)........................19

*EEOC v. Bloomberg L.P.*,
    751 F. Supp. 2d 628 (S.D.N.Y. 2010)........................................................19

*EEOC v. Bloomberg L.P.*,
    No. 07-Civ.-8383, 2013 U.S. Dist. LEXIS 128385 (S.D.N.Y. Sept. 9, 2013) .......................17

*EEOC v. Cognis Corp.*,
    No. 10-cv-2182, 2012 U.S. Dist. LEXIS 71870 (C.D. Ill. May 23, 2012)........................10, 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*,
  821 F.2d 1085 (5th Cir. 1987) ...................................................................................5, 6

*EEOC v. CRST Van Expedited*,
  679 F.3d 657 (8th Cir. 2012) ...............................................................................17

*EEOC v. Firestone Tire & Rubber Co.*,
  366 F. Supp. 273 (D. Md. 1973) ..........................................................................20

*EEOC v. Freeman*,
  No. 09-cv-2573, 2010 U.S. Dist. LEXIS 41336 (D. Md. Apr. 26, 2010) .............................19

*EEOC v. Gonnella Baking Co.*,
  No. 08-C-5240, 2009 U.S. Dist. LEXIS 9260 (N.D. Ill. Feb. 5, 2009) ...................................17

*EEOC v. Int'l Profit Assocs.*,
  No. 01-C-4427, 2007 U.S. Dist. LEXIS 19070 (N.D. Ill. Mar. 16, 2007)........................12, 14

*EEOC v. JBS USA, LLC*,
  940 F. Supp. 2d 949 (D. Neb. 2013) .....................................................................19

*EEOC v. Kaplan Higher Educ. Corp.*,
  790 F. Supp. 2d 619 (N.D. Ohio 2011).................................................................19

*EEOC v. Mach Mining, LLC*,
  738 F.3d 171 (7th Cir. 2013) ...............................................................................17

*EEOC v. Massey-Ferguson, Inc.*,
  622 F.2d 271 (7th Cir. 1980) ...............................................................................16

*EEOC v. Nucletron Corp.*,
  563 F. Supp. 2d 592 (D. Md. 2008).................................................................10, 14

*EEOC v. Pierce Packing Co.*,
  669 F.2d 605 (9th Cir. 1982) ...............................................................................17

*EEOC v. Sears, Roebuck & Co.*,
  490 F. Supp. 1245 (M.D. Ala. 1980) ....................................................................19

*EEOC v. Sears, Roebuck & Co.*,
  857 F. Supp. 1233 (N.D. Ill. 1994) .................................................................10, 14

*EEOC v. Severn Trent Servs., Inc.*,
  358 F.3d 438 (7th Cir. 2004) ...............................................................................7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*EEOC v. Swissport Fueling, Inc.*,
No. CV-10-02101, 2014 U.S. Dist. LEXIS 17926 (D. Ariz. Jan. 9, 2014) ...........................17

*EEOC v. SunDance Rehabilitation Corp.*,
466 F.3d 490 (6th Cir. 2006) .......................................................................................10, 14

*EEOC v. U.S. Pipe & Foundry Co.*,
375 F. Supp. 237 (N.D. Ala. 1974).....................................................................................20

*EEOC v. United Air Lines*,
No. 73-C-972, 1975 U.S. Dist. LEXIS 11689 (N.D. Ill. June 26, 1975), *aff'd*, 560
F.2d 224 (7th Cir. 1977) ....................................................................................................19

*EEOC v. W. Elec. Co.*,
382 F. Supp. 787 (D. Md. 1974).........................................................................................20

*EEOC v. Westvaco Corp.*,
372 F. Supp. 985 (D. Md. 1974).........................................................................................20

*EEOC v. Whirlpool Corp.*,
80 F.R.D. 10 (N.D. Ind. 1978)............................................................................................19

*Fortino v. Quasar Co.*,
950 F.2d 389 (7th Cir. 1991) ...............................................................................................5

*Gilardi v. Schroeder*,
833 F.2d 1226 (7th Cir. 1987).............................................................................................20

*International Brotherhood of Teamsters v. United States*,
431 U.S. 324 (1977).....................................................................................................12, 13

*Isbell v. Allstate Ins. Co.*,
418 F.3d 788 (7th Cir. 2005) ...................................................................................5, 6, 9, 14

*Keri v. Bd. of Trustees of Purdue Univ.*,
458 F.3d 620 (7th Cir. 2006) ...............................................................................................4

*Local Union No. 1992 v. Okonite Co.*,
189 F.3d 339 (3d Cir. 1999)..................................................................................................5

*Occidental Life Ins. Co. v. EEOC*,
432 U.S. 355 (1977).....................................................................................................16, 18

*Parisi v. Goldman, Sachs & Co.*,
710 F.3d 483 (2d Cir. 2013).........................................................................................13, 14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Puffer v. Allstate Ins. Co.*,
    675 F.3d 709 (7th Cir. 2012) ...............................................................15

*Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ'l Servs.*,
    No. 08-CV-367, 2011 U.S. Dist. LEXIS 118250 (W.D.N.Y. Oct. 13, 2011) ........10

*Reger Dev., LLC v. Nat'l City Bank*,
    592 F.3d 759 (7th Cir. 2010) .................................................................7

*Ribble v. Kimberly-Clark Corp.*,
    No. 09-C-643, 2012 U.S. Dist. LEXIS 21822 (E.D. Wis. Feb. 22, 2012) .........6, 15

*Romero v. Allstate Ins. Co.*, Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS
    25794 (E.D. Pa. Feb. 27, 2014) l. ...........................................................6

*Romero v. Allstate Ins. Co.*, Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS
    32491 (E.D. Pa. Mar. 13, 2014) l...........................................................10, 11, 14

*Thompson v. Ill. Dep't of Prof'l Regulation*,
    300 F.3d 750 (7th Cir. 2002) ..................................................................2

*Velez v. Marriott PR Mgmt., Inc.*,
    590 F. Supp. 2d 235 (D.P.R. 2008)...........................................................14

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959)...........................................................................20

STATUTES

42 U.S.C. § 2000e-2...............................................................................9

42 U.S.C. § 2000e-2(a)(1).........................................................................9

42 U.S.C. § 2000e-3...............................................................................9

42 U.S.C. § 2000e-3(a) .........................................................................9, 10

42 U.S.C. § 2000e-4...............................................................................11

42 U.S.C. § 2000e-5...............................................................................18

42 U.S.C. § 2000e-5(b)........................................................................11, 16

42 U.S.C. § 2000e-5(f)(1).........................................................................16

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

42 U.S.C. § 2000e-6 ................................................................................................................18

42 U.S.C. § 2000e-6(a) ...............................................................................................11, 12, 15

42 U.S.C. § 2000e-6(c) .......................................................................................................11, 18

42 U.S.C. § 2000e-6(d) .............................................................................................................18

42 U.S.C. § 2000e-6(e) ...............................................................................................11, 16, 18

## OTHER AUTHORITIES

29 C.F.R. § 1601.1 ....................................................................................................................20

29 C.F.R. § 1601.21 ..................................................................................................................20

29 C.F.R. § 1601.24(a).........................................................................................................16, 19

29 C.F.R. § 1601.25 ............................................................................................................16, 20

29 C.F.R. § 1601.27 ..................................................................................................................20

118 Cong. Rec. 7563 (1972) (Rep. Perkins) ............................................................................18

Br. for Plaintiff-Appellant EEOC, *CRST*, Nos. 09-3764, 09-3765, 10-1682 (8th Cir. 2010),
  *available at* http://www.eeoc.gov/eeoc/litigation/briefs/crst.txt.............................................18

Br. of Plaintiff-Appellant, *EEOC v. Geo Grp.*,
  No. 13-16292 (9th Cir. 2014), *available at*
  http://www.eeoc.gov/eeoc/litigation/briefs/geogroup.html. ....................................................13

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................2

Federal Rule of Civil Procedure 56 ...................................................................................2, 4, 16

Enforcement Guidance on Non-Waivable Employee Rights, EEOC Notice No. 915.002
  (Apr. 10, 1997), http://www.eeoc.gov/policy/docs/waiver.html. ..............................................5

## INTRODUCTION

**I.**  This case is an attempt by Plaintiff ("the EEOC" or "Commission") to test its new, unprecedented theory that employers can be held liable for a "pattern or practice" of resisting the rights secured by Title VII of the Civil Rights Act *without ever once violating that law's prohibitions*, simply by including certain contractual provisions in a standard severance agreement with terminated employees.  Established law is clear that executing such an agreement is neither *discrimination* forbidden by the statute nor *retaliation* against employees who have exercised their rights—and, indeed, the EEOC does not allege otherwise.  Nonetheless, the EEOC seeks to hold CVS Pharmacy liable on a pattern-or-practice theory, speculating that its agreement may somehow deter former employees from filing EEOC charges or cooperating in investigations and thus "interfere" with the EEOC's work.  For two reasons, this claim fails.

*First*, the EEOC's premise is simply false.  CVS Pharmacy's run-of-the-mill agreement does not do what the EEOC alleges.  In fact, the agreement *expressly stipulates* that the former employees *may* participate in proceedings before anti-discrimination agencies and cooperate in their investigations.  The EEOC's suggestion that non-disparagement or non-disclosure clauses in the agreement supersede that express stipulation is foreclosed by black-letter contract law. Other than that, the contract simply requires the former employee to release any waivable claims for relief that he may have against CVS Pharmacy (which is a routine and lawful bargain, as EEOC guidance confirms), and notify the company of any lawsuits or investigations relating to CVS Pharmacy as to which the former employee's participation is sought.

*Second*, even if the severance agreement did what the EEOC claims, it would at most be *unenforceable*; it would not remotely constitute a "pattern or practice" of violating Title VII. The statute's pattern-or-practice provision simply authorizes the EEOC to proceed, using a class action-style proof framework, against those who *repeatedly*, *intentionally* engage in "unlawful

employment practices" forbidden by Title VII, namely discrimination and retaliation. Yet the EEOC does not allege that CVS Pharmacy *ever* unlawfully discriminated or retaliated against *anyone*, probably because courts have rejected such claims. Its novel theory thus turns pattern-or-practice liability on its head—instead of being directed at the *worst* discriminators with the *most* discrimination victims, the EEOC would invoke it against conduct that *no* court has *ever* held unlawful and despite the lack of *any* such alleged victims. This Court should reject that perverse, baseless attempt to turn pattern-or-practice authority into a roving commission to penalize lawful conduct that the EEOC deems "bad."

**II.**     To the extent that this Court does not reject the EEOC's legal theory as a matter of law under Federal Rule of Civil Procedure 12(b)(6), CVS Pharmacy should be granted summary judgment under Rule 56, due to the EEOC's failure to comply with the statutory and regulatory requirement that it try to resolve matters through voluntary "conciliation" efforts with the employer before bringing suit. Here, the EEOC flatly refused to engage in any conciliation, despite CVS Pharmacy's repeated requests to do so and its express representation that it was modifying its severance agreement. Instead, the EEOC insisted that it was not bound by this prerequisite in pattern-or-practice cases—another novel position squarely foreclosed by statutory text, four decades of consistent precedent, and the EEOC's own binding regulations.

## FACTUAL BACKGROUND

**I.**     For purposes of CVS Pharmacy's motion to dismiss under Rule 12(b)(6), the Complaint's well-pleaded factual allegations are taken as true. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Because the Complaint attached the allegedly improper severance agreement as an exhibit (Dkt. 1-1 ("Agreement")), that contract can also be considered at the motion-to-dismiss stage—and, indeed, the document itself takes precedence over any allegations about it. *See Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

The Complaint alleges that the "*five-page single-spaced*" Agreement "interferes" with the ability of CVS Pharmacy's former employees to file charges, and otherwise cooperate, with the EEOC and with state Fair Employment Practices Agencies. (Compl., ¶¶ 1, 8.)

*First*, the Agreement contains a release of waivable claims and a related covenant not to sue. Section 7 provides that, with the exception of rights that the former employee "cannot lawfully waive," the former employee "releases" CVS Pharmacy from any "causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, and attorneys fees" arising prior to the execution of the Agreement. (Agreement, § 7.) Section 8 then prohibits the former employee from filing any "action, lawsuit, complaint or proceeding" asserting those released claims. (Agreement, § 8.) However, this provision expressly clarifies that it *does not* "interfere with Employee's right to participate in a proceeding with any … government agency enforcing discrimination laws" and that that the Agreement "shall" not "prohibit Employee from cooperating with any such agency." (*Id.*) In such a case, the former employee is merely precluded from "be[ing] entitled to receive any relief" (*e.g.*, damages). (*Id.*)

*Second*, the Agreement contains covenants committing the ex-employee not to disclose confidential company information or disparage the company. (Agreement, §§ 13.a, 13.d.) The non-disparagement provision does not apply to "truthful statements or disclosures that are required by applicable law, regulation or legal process" or to "confidential legal advice." (*Id.*)

*Third*, the Agreement includes a covenant requiring the former employee to notify the company in the event that he or she receives a "subpoena, deposition notice, interview request, or any other inquiry, process or order relating to any civil, criminal or administrative investigation, suit, proceeding or other legal matter" relating to the company. (Agreement, § 13.e.) However, it does not "prohibit Employee from testifying truthfully in any legal proceeding." (*Id.*)

3

**II.**     For purposes of CVS Pharmacy's alternative Rule 56 motion, the Court may consider supporting affidavits and other factual materials. *See Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006).

This case arises from a charge of race and sex discrimination filed by Tonia Ramos, a former CVS Pharmacy manager discharged in July 2011. (Def.'s Local Rule 56.1 Statement ("SMF"), ¶¶ 5-8.) Ramos signed CVS Pharmacy's standard severance agreement upon her termination; several weeks later, she filed an EEOC charge. (*Id.* ¶¶ 6-7.) Over the course of several interviews with CVS Pharmacy representatives, EEOC investigators began to focus on the severance agreement, rather than Ramos' actual charge. (McConnell Aff., ¶¶ 10-12.) On June 10, 2013, an EEOC attorney issued a letter stating that the EEOC had "reasonable cause" to believe that CVS Pharmacy was engaged in a pattern or practice of "resistance" to Title VII—not based on allegations in Ramos' charge, which the EEOC dismissed three days later, but rather based on CVS Pharmacy's severance agreement. (SMF, ¶¶ 8-9.) The EEOC offered CVS Pharmacy 14 days to decide whether to enter a consent decree, which would be filed jointly "in federal district court immediately after the Commission files a Complaint against the Company." (*Id.* ¶ 8.) After receiving this correspondence, CVS Pharmacy repeatedly offered to participate in conciliation proceedings to resolve the matter informally. The EEOC refused. (*Id.* ¶¶ 10-11.) Instead, on February 7, 2014, the EEOC filed this suit.

## ARGUMENT

**I.    CVS PHARMACY'S SEVERANCE AGREEMENT DOES NOT INTERFERE WITH FORMER EMPLOYEES' ABILITY TO FILE EEOC CHARGES OR TO COOPERATE WITH THE EEOC.**

The premise of the Complaint is that CVS Pharmacy's severance agreement somehow interferes with former employees' rights to file charges with the EEOC or participate in EEOC proceedings. That premise rests on a misreading of the Agreement and fails as a matter of law.

4

1.      **Release and Covenant Not To Sue.**  The Agreement includes both a *release of claims* and a *covenant not to sue*.  The two serve distinct purposes: A release does not forbid the employee to do anything, but simply gives the employer "an effective affirmative defense," allowing it to *win* a suit "should a claim be raised"; by contrast, a covenant not to sue commits the employee "not to sue" at all.  *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 797 (7th Cir. 2005).

There is no serious argument that a mere *release* of Title VII claims is problematic or in any way unlawful.  Even the EEOC recognizes that a "private agreement can eliminate an individual's right to personal recovery."  Enforcement Guidance on Non-Waivable Employee Rights, EEOC Notice No.915.002 (Apr. 10, 1997), http://www.eeoc.gov/policy/docs/waiver.html. And courts routinely enforce such agreements.  *E.g.*, *Fortino v. Quasar Co.*, 950 F.2d 389, 394-95 (7th Cir. 1991) (enforcing release of discrimination claims); *see also Local Union No. 1992 v. Okonite Co.*, 189 F.3d 339, 348 (3d Cir. 1999) ("The requirement that employees sign a release as a condition of receiving severance pay is a common provision in modern severance agreements."); *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1091 (5th Cir. 1987) ("[T]he employee can waive not only the right to recover in his or her own lawsuit but also the right to recover in a suit brought by the EEOC on the employee's behalf.").  Indeed, if the rule were otherwise, no Title VII claim could ever be settled outside of court, which is absurd.

As for the Agreement's covenant not to sue (section 8), it *expressly stipulates* that it shall not "interfere with Employee's right to participate in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation."  (Agreement, § 8.)  That proviso plainly exempts, from the general covenant, the employee's right to file an EEOC charge or participate in an EEOC proceeding.  Thus, while "an employee cannot waive

5

the right to file a charge with the EEOC," *Cosmair*, 821 F.2d at 1091, here, the covenant not to sue does not restrict that right. To the contrary, it affirmatively recognizes and preserves it.

The EEOC objects that this clarifying language is "not repeated anywhere else in the Agreement," and that the Agreement's release provision (§ 7) applies to both "lawsuits" and also "charges," thus supposedly suggesting that the Agreement forbids filing *EEOC charges*. (Compl. ¶ 8.d & f.) That argument fails for four reasons.

*First*, nothing in Title VII requires that severance agreements say anything about the right to participate in EEOC proceedings. *Ribble v. Kimberly-Clark Corp.*, No. 09-C-643, 2012 U.S. Dist. LEXIS 21822, at *24 (E.D. Wis. Feb. 22, 2012). *A fortiori*, there is surely no requirement that an agreement *repeat* statements affirming those rights in every section. *Second*, only the Agreement's *covenant not to sue*, not its *release*, purports to prohibit the former employees from initiating actions. *See Isbell*, 418 F.3d at 797. And the covenant not to sue does *not* use the word "charges," thus indicating that EEOC charges are excluded from that bar—as the provision goes on to say expressly. Therefore, if an ex-employee files an EEOC charge, the only thing released is his right "to receive any relief, recovery or monies" in connection with the claim. (Agreement, § 8.) And that, as explained, is indisputably lawful. *Cosmair*, 821 F.2d at 1091. *Third*, courts have rejected the EEOC's inference from use of the word "charges" in the release. "[W]hile the term 'charges' standing alone could potentially be read as meaning administrative charges, when taken in context … it is easily understood … to constitute legal charges filed in a court." *Romero v. Allstate Ins. Co.*, Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS 25794, at *194 (E.D. Pa. Feb. 27, 2014). *Fourth*, the release itself excludes rights that the employee "cannot lawfully waive" (Agreement, § 7); releases with such a caveat thus "do not prohibit employees from filing EEOC charges." *Ribble*, 2012 U.S. Dist. LEXIS 21822, at *20-24.

6

**2.** **Non-Disparagement & Non-Disclosure.** The covenants against disparagement of the company or disclosure of its confidential information are ubiquitous and unobjectionable. No employer "want[s] to be badmouthed by a disgruntled employee who may be privy to the employer's dark secrets." *EEOC v. Severn Trent Servs., Inc.*, 358 F.3d 438, 440 (7th Cir. 2004).

The Complaint contends that these general provisions could be read to forbid the former employees from filing EEOC charges, because such charges could be thought to disparage CVS Pharmacy or entail disclosure of confidential information. But that is simply an implausible construction of these provisions, given the agreement as a whole. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("During our review, we do not look at any one contract provision in isolation; instead, we read the document as a whole."). As explained above, the Agreement expressly preserves former employees' rights to file EEOC charges and cooperate in EEOC investigations. Under black-letter contract law, a "more specific provision of a contract governs where it arguably conflicts with a more general provision." *Aeroground, Inc. v. CenterPoint Props. Trust*, 738 F.3d 810, 816 (7th Cir. 2013). Thus, the general non-disclosure and non-disparagement covenants cannot be read as superseding the Agreement's specific, express clarification that it does not "prohibit Employee from cooperating with any such agency in its investigation." (Agreement, § 8.) Rather, "the specific provision will be deemed to qualify the more general one, that is, to state an exception to it." *Aeroground*, 738 F.3d at 816. As if that were not enough, the non-disparagement clause also repeats that "nothing in this Agreement shall prohibit Employee from … making truthful statements or disclosures that are required by applicable law, regulation or legal process." (Agreement, § 13.d.)

**3.** **Notification Provision.** Finally, the EEOC cites a provision that merely directs the former employee to notify CVS Pharmacy upon receiving a "subpoena, deposition notice,

interview request, or another inquiry, process or order relating to any civil, criminal or administrative investigation." (Agreement, § 11.e.) CVS Pharmacy has an obvious, legitimate interest in knowing of any lawsuits or investigations that implicate its operations, and there is no basis to allege that this provision would "interfere" with the EEOC's work. To the extent that the EEOC contends that this notice provision would somehow "deter" participation in such an investigation, that is not only wholly speculative but implausible. *First*, the provision requires notice *whether or not* the former employee chooses to cooperate with the investigation or ignore it. *Second*, in any case, the Agreement applies by its nature only to *former* employees, so there is no plausible risk that they would be "chilled" by the notice requirement (and the Complaint does not explain why they would be). *Third*, again, the Agreement explicitly states that it does not interfere with participation in any proceeding or investigation by any antidiscrimination agency.

4.     **Remedies.**  Finally, a former employee who breaches the Agreement is liable for attorneys' fees incurred by CVS Pharmacy in remedying such breach. (Agreement, § 14.)  But any objection to this remedy provision is wholly derivative of the objections to the Agreement's substantive terms.  Since the Agreement's other terms are perfectly lawful, as explained, there is obviously nothing wrong with its remedy provision either.

In sum, this Agreement merely does what *all* severance agreements do.  If an employee wants the *benefits* of such an agreement, he must comply with its terms—and CVS Pharmacy's terms are both reasonable and lawful.  The Complaint's premise thus fails as a matter of law.

## II.     MERE INCLUSION OF CONTRACTUAL TERMS IN A SEVERANCE AGREEMENT DOES NOT VIOLATE ANY PART OF TITLE VII.

Even if CVS Pharmacy's Agreement *did* interfere with its ex-employees' participation in EEOC proceedings, that at most would render the offending provisions *unenforceable*.  The mere inclusion of the provisions in the contract does not, however, amount to unlawful discrimination

or retaliation—and the EEOC does not allege otherwise. But without any substantive violations of Title VII, there obviously can be no "pattern or practice" liability. Pattern-or-practice authority allows the EEOC to proceed on a class-wide basis against the worst violators of Title VII, but the EEOC's unprecedented theory here would allow it to prohibit and enjoin all sorts of conduct that does *not* violate Title VII. No support exists for that stunning theory.

### A. The Complaint Does Not and Cannot Allege Any Unlawful Discrimination or Retaliation Under Title VII.

**1.** At the outset, it is important to observe what the Complaint does *not* allege. Title VII's "unlawful employment practices" are defined in section 703 and section 704 of the Act. 42 U.S.C. §§ 2000e-2, 2000e-3. Section 703, entitled "unlawful employment practices," forbids an employer to "discriminate against any individual … because of such individual's race, color, religion, sex, or national origin." *Id.* § 2000e-2(a)(1). The EEOC does not allege violation of this provision. Section 704 ("other unlawful employment practices") forbids discrimination against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* § 2000e-3(a). The Complaint does not allege violation of this anti-retaliation provision, either.

**2.** There is a good reason for the Complaint's omission of any claim under sections 703 (discrimination) or 704 (retaliation): It is very clear, as a matter of law, that the mere use of certain terms in a severance agreement does not run afoul of either prohibition.

*First*, this is plainly not discrimination on any protected ground (race, sex, etc.). *Isbell*, 418 F.3d at 795 (rejecting discrimination claim because all terminated employees received same offer); *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 852 (N.D. Ill. 2004) ("Offering severance benefits in return for a general release of claims is neither discriminatory nor retaliatory.").

*Second*, courts have held that even including a charge-filing ban in a severance agreement is not "retaliation" under Title VII. The employee has not "made a charge, testified, assisted, or participated" in any EEOC proceeding, 42 U.S.C. § 2000e-3(a), and the employer has not taken any adverse action against anyone. In *EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490 (6th Cir. 2006), the EEOC argued that the employer committed a "per se violation" of Title VII's anti-retaliation provision by "condition[ing] severance pay on promises from the terminated employee not to file charges with the EEOC [or] … to participate in EEOC proceedings." *Id.* at 497. The Sixth Circuit rejected that theory, holding that since the employer simply "offered a contract" and "engaged in no further action," its "mere offer of the Separation Agreement" did not, "without more, amoun[t] to facial retaliation." *Id.* at 498, 500-01. While the Sixth Circuit agreed that a ban on EEOC charge-filing "may be unenforceable" as a matter of contract law, it nonetheless held that "its inclusion in the Separation Agreement does not make SunDance's offering that Agreement in and of itself *retaliatory*." *Id.* at 501.

Thus, while an agreement's ban on filing EEOC charges may be unenforceable, merely *offering or executing* such a contract is not itself unlawful under Title VII. *Accord EEOC v. Sears, Roebuck & Co.*, 857 F. Supp. 1233, 1239 (N.D. Ill. 1994) ("[C]onditioning severance benefits on an invalid release is not actionable."); *EEOC v. Nucletron Corp.*, 563 F. Supp. 2d 592, 598 (D. Md. 2008) ("[M]ere offer of the severance agreement is insufficient to constitute … retaliation."); *EEOC v. Cognis Corp.*, No. 10-cv-2182, 2012 U.S. Dist. LEXIS 71870, at *20-21 (C.D. Ill. May 23, 2012) (rejecting retaliation theory where employer did not enforce void provision); *Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Coop. Educ'l Servs.*, No. 08-CV-367, 2011 U.S. Dist. LEXIS 118250, at *32 (W.D.N.Y. Oct. 13, 2011) (rejecting retaliation claim); *Romero v. Allstate Ins. Co.*, Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS

32491, at *64 (E.D. Pa. Mar. 13, 2014) (while release "clearly suffers from several infirmities," it is still not "a substantive violation of the anti-retaliation statutes").

**B.   Without Unlawful Discrimination or Retaliation, No "Pattern or Practice" Action Can Be Alleged, and the EEOC's Claim Therefore Fails.**

Because any claim of a substantive Title VII violation is legally foreclosed, the EEOC alleges that CVS Pharmacy's use of the Agreement constitutes a "pattern or practice" of resisting Title VII. That is *backwards*: a pattern-or-practice action targets the *worst* discriminators and gives the EEOC a procedural vehicle to seek class-wide relief. Thus, there can be no pattern-or-practice liability unless there has been *actual, repeated discrimination or retaliation*.

**1.**   Text, structure, and precedent all confirm that pattern-or-practice authority is just a procedural tool to combat "unlawful employment practices" already defined by Title VII—not a distinct substantive violation or a delegation to the EEOC to define other unlawful practices.

As explained above, sections 703 and 704 of the Civil Rights Act address the "unlawful employment practices" it forbids—*i.e.*, discrimination and retaliation. Section 705 creates the EEOC. 42 U.S.C. § 2000e-4. Section 706 sets forth "enforcement provisions," which allow the EEOC to bring suit (subject to certain procedural preconditions) on behalf of aggrieved persons. *See id.* § 2000e-5(b). Finally, section 707 granted the Attorney General the power to file an action if an employer "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that . . . pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described." *Id.* §2000e-6(a). In 1972, Congress transferred the Attorney General's pattern-or-practice authority to the EEOC, subject to the same procedural requirements that apply under section 706. *Id.* § 2000e-6(c), (e).

Structurally, sections 703 and 704 of the Act set forth the practices that are substantively unlawful, while sections 706 and 707 set forth two procedural mechanisms by which the EEOC

may challenge those practices. A "pattern or practice" is therefore not a distinct type of unlawful employer conduct but—as its name implies—a *policy* of discrimination. Statutory text offers further corroboration: Section 707 allows challenge to a pattern or practice of resistance to "the rights secured by this subchapter." 42 U.S.C. § 2000e-6(a). Those "rights" are those, already "secured" and "herein described," to be free of the defined "unlawful employment practices." Section 707 thus does not create *new* rights or prohibit *other* employment practices.

Consistent precedent confirms this understanding. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the leading case, explained that a pattern-or-practice suit is akin to a class action. *Id.* at 360. The Court held that to prove a "systemwide pattern or practice of resistance to the full enjoyment of Title VII rights," the Government "had to establish" that "discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Id.* at 336. The burden then shifts to the employer to prove that particular adverse actions were *not* caused by discriminatory animus. *Id.* at 357-62. The Court recognized that Congress intended the pattern-or-practice authority to apply if an employer "repeatedly and regularly" engaged in the unlawful employment practices "prohibited by the statute." *Id.* at 336 n.16 (quoting 110 Cong. Rec. 14270 (1964) (Sen. Humphrey)). Section 707 thus does not prohibit any employer misconduct *distinct* from sections 703 and 704; it prohibits and provides a special mechanism to address *repeated* violations of those provisions.

In other words, a "pattern or practice action is designed to provide a remedy when an employer has engaged in unlawful employment practices, as defined by [section 703], that are systemic and widespread." *EEOC v. Int'l Profit Assocs.*, No. 01-C-4427, 2007 U.S. Dist. LEXIS 19070, at *20 (N.D. Ill. Mar. 16, 2007). A pattern-or-practice action requires "showing that an employer regularly and purposefully discriminates against a protected group." *Council 31,*

12

*AFSCME, AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992); *see also Amari Co. v. Burgess*, 546 F. Supp. 2d 571, 583 (N.D. Ill. 2008) ("[T]he EEOC is authorized to initiate a Title VII enforcement lawsuit only when … an *unlawful employment practice* has occurred …." (emphasis added)). A pattern or practice is thus simply a form of "classwide discrimination." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 n.6 (7th Cir. 1985). Without violations of Title VII's substantive prohibitions, there can be no actionable pattern or practice.

As such, pattern-or-practice is really just a way of proving discrimination under sections 703 and 704, not a freestanding claim. *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) ("[I]n Title VII jurisprudence 'pattern-or-practice' simply refers to a method of proof and does not constitute a 'freestanding cause of action.'"); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001) ("A pattern or practice case is not a separate and free-standing cause of action … but is really merely another method by which disparate treatment can be shown."). As the EEOC itself just told the Ninth Circuit, "'pattern or practice' is an evidentiary framework, not a 'claim.'" Br. of Plaintiff-Appellant at 40, *EEOC v. Geo Grp.*, No. 13-16292 (9th Cir. 2014), *available at* http://www.eeoc.gov/eeoc/litigation/briefs/geogroup.html.

**2.** Accordingly, the Complaint's theory must fail. As shown, the Agreement does not violate Title VII's two substantive prohibitions, and the EEOC has not alleged otherwise. Plainly, then, no Title VII "class action" is possible (because such a class requires *many* victims of discrimination); the EEOC cannot demonstrate that CVS Pharmacy "repeatedly and regularly engaged in acts prohibited by the statute" (because it does not allege that CVS Pharmacy *ever* engaged in the statutorily defined "unlawful employment practices"); and it cannot prove that "discrimination was [CVS Pharmacy's] standard operating procedure" (because it is undisputed that CVS *never* engaged in unlawful discrimination). *Teamsters*, 431 U.S. at 336 & n.16, 360.

Rather, the EEOC seeks to invoke pattern-or-practice authority to outlaw conduct that is *not* prohibited as an "unlawful employment practice." But the pattern-or-practice provision is not a "freestanding" prohibition, *Parisi*, 710 F.3d at 487; it merely creates "an additional procedural vehicle," *Velez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 241 (D.P.R. 2008), to combat "unlawful employment practices, as defined by" Title VII, *Int'l Profit*, 2007 U.S. Dist. LEXIS 19070, at *20—which are concededly absent here.

Indeed, on the EEOC's theory, cases like *SunDance* should have come out the other way. Those courts found that the use of contract provisions that prevented the filing of EEOC charges did not give rise to liability under Title VII. *SunDance*, 466 F.3d at 501; *Sears, Roebuck*, 857 F. Supp. at 1239; *Nucletron*, 563 F. Supp. 2d at 598; *Cognis Corp.*, 2012 U.S. Dist. LEXIS 71870, at *20-21; *Romero*, 2014 U.S. Dist. LEXIS 32491, at *64. The EEOC's theory here is that it simply should have pleaded those claims as pattern-or-practice violations. That is not remotely tenable. The failure of the pattern-or-practice theory follows *a fortiori* from those cases.

**C.      The EEOC's Unprecedented Theory Would Turn "Pattern or Practice" Authority into a Blank Check for the Agency.**

On the EEOC's view, a pattern-or-practice suit may be pursued, even if the employer has *never* committed a single act of discrimination or retaliation and even if there is no reason to suspect that it *ever* will. So long as the EEOC can allege that the employer's (lawful) behavior somehow interferes with the EEOC's work, it can sue. That is a stunningly unbounded authority, handing the EEOC the power to challenge any employer policy that it believes to be "bad."

On that logic, the EEOC could allege, *e.g.*, that requiring *any* release of Title VII claims is a pattern-or-practice violation, because employees are less likely to file EEOC charges if they would not obtain personal relief. *But see Isbell*, 418 F.3d at 792-93 (upholding such release). Or the EEOC could challenge a requirement that employees arbitrate their discrimination claims,

because that too could dissuade them from approaching the EEOC.  *But see 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (upholding such an arbitration agreement).  Or the EEOC could argue that employers must *affirmatively advise* employees of their right to file an EEOC charge. *But see Ribble*, 2012 U.S. Dist. LEXIS 21822, at \*24 (upholding release even though it did not "explicitly state[] that a signing employee retains the right to file a charge with the EEOC").

In short, transforming section 707 from the class-action device it has always been, into an open-ended, undefined, and independent category of wrongdoing, would not only conflict with the statute's structure and the uniform caselaw, but also vest the EEOC with the far-reaching power to define new "violations" of Title VII—a power that Congress never intended to give it.

**D.     At Minimum, Any Section 707 Action Would Require *Intentional* Interference, Which the EEOC Has Not Plausibly Alleged and Cannot Show.**

Even if section 707 could be invoked based only on supposed "interference" with EEOC charge-filing or EEOC investigations, such a claim would exist only if the employer *intentionally* engaged in such "interference."   Section 707 allows suit only against a pattern or practice "*intended* to deny the full exercise of the rights herein described."   42 U.S.C. § 2000e-6(a) (emphasis added).  *Cf. Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) ("Pattern-or-practice . . . represent[s] a theory of intentional discrimination."); *Council 31*, 978 F.2d at 378 (pattern-or-practice requires "showing that an employer . . . purposefully discriminates"). Accordingly, even on the EEOC's unprecedented broad reading of section 707, it could cover only *intentional* "resistance" to Title VII rights.

Here, the EEOC has alleged only CVS Pharmacy's "use" of an "overly broad" and "misleading" Agreement.  (Compl., ¶¶ 1, 10.)  For reasons explained in Part I, however, any such effect would come at most from *misinterpretations* of the Agreement.  The EEOC's claim is thus that even if the Agreement does *not* impermissibly restrict ex-employees, they may erroneously

believe otherwise because it is somehow "misleading." That obviously does not state a plausible claim of *intentional* resistance to Title VII rights. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Proving the point, the Agreement expressly recommends that former employees "seek the advice of legal counsel concerning this Agreement before signing this Agreement" and provides them "the opportunity to do so." (Agreement, § 10; *see also id.* § 12(a).) No employer trying to deceive its former employees about their rights would specifically advise those employees to seek legal advice to clarify those rights. At most, the EEOC has alleged *potential inadvertent confusion* that CVS Pharmacy has *endeavored to avoid*. That is plainly insufficient.

## III. THE EEOC VIOLATED TITLE VII AND ITS OWN REGULATIONS WHEN IT FILED THE COMPLAINT WITHOUT FIRST ATTEMPTING CONCILIATION.

If the Court disagrees with the arguments above, this suit should still be dismissed under Rule 56 because the EEOC refused to comply with the statutory and regulatory requirement that it try to resolve all claims through voluntary conciliation *before* bringing suit.

### A. The EEOC Must Endeavor To Conciliate Claims in a Confidential Manner *Before* Filing a Lawsuit, But Here the EEOC Flatly Refused To Do So.

**1.** Title VII requires the EEOC to "refrain from commencing a civil action until it has discharged its administrative duties." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 368 (1977). One of those duties requires the agency to "endeavor to eliminate any . . . alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). The employer is entitled to confidentiality during those efforts. *See id.* Only if the EEOC is "unable to secure . . . a conciliation agreement acceptable to [it]" may it "bring a civil action." *Id.* §§ 2000e-5(f)(1), 2000e-6(e); *accord EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 277 (7th Cir. 1980). The EEOC's own regulations reiterate its duty to conciliate, 29 C.F.R. § 1601.24(a), and further provide that the EEOC will "notify" the employer "in writing" if it concludes that conciliation has not succeeded. *Id.* § 1601.25.

16

**2.** In this case, the EEOC flatly refused to comply with its duty to "endeavor" to eliminate the alleged unlawful employment practice through conciliation. While CVS Pharmacy repeatedly made clear its willingness to take part in conciliation (SMF, ¶ 10), and even indicated that it was already implementing modifications and clarifications to its Agreement to address the EEOC's concerns, the EEOC refused to participate in any conciliation efforts, insisting instead that it *would* file a lawsuit and that, at most, the parties could settle that lawsuit *publicly* through a consent decree (*Id.* ¶ 8). There is no dispute, therefore, that the EEOC did not undertake *any* conciliation in this case. That failure violates Title VII and EEOC regulations, as described.[1]

**3.** Dismissal is the appropriate remedy for the EEOC's refusal to try to conciliate. A stay might be a sufficient remedy where "the EEOC has at least attempted to conciliate." *EEOC v. Gonnella Baking Co.*, No. 08-C-5240, 2009 U.S. Dist. LEXIS 9260, at *11 (N.D. Ill. Feb. 5, 2009). But, here, the EEOC refused to attempt any conciliation and instead subjected CVS Pharmacy to a public suit that it wanted to avoid through voluntary means. As many courts have held, dismissal is proper in such cases. *E.g.*, *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608-09 (9th Cir. 1982); *EEOC v. CRST Van Expedited*, 679 F.3d 657, 677 (8th Cir. 2012); *EEOC v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1261 (11th Cir. 2003); *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 469 (5th Cir. 2009); *EEOC v. Bloomberg L.P.*, No. 07-Civ.-8383, 2013 U.S. Dist. LEXIS 128385, at *34 (S.D.N.Y. Sept. 9, 2013).

---

[1] *EEOC v. Mach Mining, LLC*, 738 F.3d 171 (7th Cir. 2013), held that, while the EEOC is required by law to conciliate, courts should not question the sufficiency of its efforts so long as "the EEOC has pled on the face of its complaint that it has complied with all procedures required under Title VII and the relevant documents are facially sufficient." *Id.* at 184. Here, however, the relevant documents are *not* facially sufficient, and it is undisputed that the EEOC did not conduct any conciliation proceedings; the dispute is over whether conciliation is *required*, not whether conciliation efforts were *adequate*. The *Mach Mining* decision surely does not prevent this Court from resolving the former question. *See EEOC v. Swissport Fueling, Inc.*, No. CV-10-02101, 2014 U.S. Dist. LEXIS 17926, at *5 (D. Ariz. Jan. 9, 2014) (distinguishing *Mach Mining* where court had no need to make "specific inquiries into settlement amounts or numbers of meetings held").

**B.** **Title VII, Forty Years of Unanimous Jurisprudence, and the EEOC's Own Regulations Demonstrate That the EEOC Must Conduct Conciliation Proceedings Before It Files a "Pattern or Practice" Suit.**

The EEOC takes the unprecedented position that it was not required to engage in conciliation because this is a pattern-or-practice suit under section 707 (42 U.S.C. § 2000e-6), whereas the conciliation duty is found in section 706 (*id.* § 2000e-5). That is wrong. The statutory conciliation requirement applies to the EEOC's section 707 actions, and the EEOC's own regulations impose the same duty in any event.

**1.** When Congress transferred pattern-or-practice authority to the EEOC in 1972, it required the EEOC to "carry out such functions in accordance with subsections (d) and (e) of this section." 42 U.S.C. § 2000e-6(c). Subsection (d) addresses then-pending cases, allowing the EEOC to be substituted in cases initiated by the Attorney General. *Id.* § 2000e-6(d). Subsection (e) addresses future cases, authorizing the EEOC "to investigate and act on a charge of a pattern or practice of discrimination . . . . *All such actions shall be conducted in accordance with the procedures set forth in section 2000e-5 of this title.*" *Id.* § 2000e-6(e) (emphasis added).

By cross-referencing section 706 (42 U.S.C. § 2000e-5) as setting forth the "procedures" that the EEOC must follow in its section 707 cases, Congress made clear that the EEOC—*in all cases*—must comply with the same "integrated, multistep enforcement procedure[s]" described in *Occidental Life*, 432 U.S. at 359, including conciliation. *Accord* 118 Cong. Rec. 7563 (1972) (Rep. Perkins) (noting, when introducing Conference Report on 1972 amendments, that EEOC may sue "[o]nly if conciliation proves to be impossible"). Indeed, the EEOC has previously admitted as much. For example, it correctly advised the Eighth Circuit that "whether filed under 42 U.S.C. § 2000e-5 (§ 706) or § 2000e-6 (§ 707), all EEOC litigation shares the same administrative prerequisites." Br. for Plaintiff-Appellant EEOC at 62, *CRST*, Nos. 09-3764, 09-3765, 10-1682 (8th Cir. 2010), *available at* http://www.eeoc.gov/eeoc/litigation/briefs/crst.txt.

18

**2.** Four decades of caselaw confirm the statutory text and the EEOC's admission. Shortly after the 1972 amendments, this Court explained that "[t]he Commission's new authority under 707(c), unlike the Attorney General's authority under 707(a), is required to be exercised in accordance with the procedures set forth in section 706(b), which includes efforts to conciliate with the respondent prior to the institution of suit." *EEOC v. United Air Lines*, No. 73-C-972, 1975 U.S. Dist. LEXIS 11689, at *4-5 (N.D. Ill. June 26, 1975), *aff'd*, 560 F.2d 224 (7th Cir. 1977). Numerous courts have since agreed. *See, e.g.*, *EEOC v. Whirlpool Corp.*, 80 F.R.D. 10, 17 (N.D. Ind. 1978) ("[B]oth Section 706 and Section 707 suits must now be preceded by investigation, a reasonable cause determination and conciliation."); *EEOC v. Freeman*, No. 09-cv-2573, 2010 U.S. Dist. LEXIS 41336, at *13 (D. Md. Apr. 26, 2010) ("[T]he EEOC's [section 707] authority … is restricted by the procedures set forth in Section 706."); *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 644 (S.D.N.Y. 2010) ("The EEOC's enforcement authority under section 706 is subject to several procedural requirements, which are incorporated by reference into the EEOC's authority to bring 'pattern or practice' claims under section 707."); *EEOC v. Kaplan Higher Educ. Corp.*, 790 F. Supp. 2d 619, 622 (N.D. Ohio 2011) (same).

Courts thus routinely analyze, in EEOC pattern-or-practice actions under section 707, whether the agency satisfied its pre-suit obligations. *E.g.*, *EEOC v. Bass Pro Outdoor World, LLC*, No. 4:11-CV-3425, 2014 U.S. Dist. LEXIS 27019, at *20-33 (S.D. Tex. Mar. 4, 2014); *EEOC v. JBS USA, LLC*, 940 F. Supp. 2d 949, 965-67 (D. Neb. 2013); *Bloomberg*, 751 F. Supp. 2d at 637-40; *see also EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1256 (M.D. Ala. 1980) (dismissing because "conciliation is a condition precedent to an EEOC pattern or practice suit").

**3.** Finally, EEOC regulations require presuit conciliation *whenever* the EEOC issues a reasonable cause determination. 29 C.F.R. § 1601.24(a) ("Where the Commission determines

that there is reasonable cause to believe that an unlawful employment practice has occurred or is occurring, the Commission shall endeavor to eliminate such practice by informal methods of conference, conciliation and persuasion."); *id.* § 1601.25 (when EEOC determines that further conciliation "would be futile or nonproductive, it shall … so notify the [employer] in writing"); *id.* § 1601.27 (EEOC may bring a "civil action" unless it "secure[s]" a "conciliation agreement"). Nothing about these regulations is limited to section 706 cases, and their purpose is to set forth the EEOC's "procedures … for carrying out its responsibilities in the administration and enforcement of title VII"—with no caveat for section 707 cases. *Id.* § 1601.1.[2]

Given the deference accorded to the EEOC's procedural regulations when construing Title VII, these regulations clear up any remaining doubt over application of the pre-suit duties to section 707 cases. *See Gilardi v. Schroeder*, 833 F.2d 1226, 1232 (7th Cir. 1987). Moreover, the regulations *independently* bind the EEOC, even if not mandated by the statute. *See Vitarelli v. Seaton*, 359 U.S. 535, 539-40 (1959) (agency must comply with rules that "afford greater procedural protections" than statute). Numerous courts have thus dismissed EEOC actions for failure to comply with its conciliation regulations, even in fairly minor ways. *EEOC v. W. Elec. Co.*, 382 F. Supp. 787, 796-97 (D. Md. 1974); *EEOC v. U.S. Pipe & Foundry Co.*, 375 F. Supp. 237, 246-48 (N.D. Ala. 1974); *EEOC v. Firestone Tire & Rubber Co.*, 366 F. Supp. 273, 275-78 (D. Md. 1973). Dismissal is thus clearly required here, where the EEOC did not even *attempt* to conciliate. *Accord EEOC v. Westvaco Corp.*, 372 F. Supp. 985, 992-94 (D. Md. 1974).

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

---

[2] The EEOC also violated its regulation about reasonable-cause determinations, by issuing such a determination despite *dismissing* Ramos' charge. 29 C.F.R. § 1601.21(a) (authorizing reasonable-cause determinations only when EEOC "has not settled or dismissed a charge or made a no cause finding").

Dated:  April 18, 2014     Respectfully submitted,


         /s/ Eric Dreiband_____
         Eric Dreiband (Illinois Bar No. 6210456)
         Yaakov Roth
         JONES DAY
         51 Louisiana Ave., N.W.
         Washington, D.C. 20001-2113
         Telephone:  (202) 879-3939
         Facsimile:  (202) 626-1700

         *Counsel for CVS Pharmacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 18th day of April, 2014.

*/s/ Eric S. Dreiband*
One of the Attorneys for CVS Pharmacy, Inc.
