IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| _____ )<br>EQUAL EMPLOYMENT )<br>OPPORTUNITY COMMISSION, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>CVS PHARMACY, INC., )<br> )<br>Defendant. )<br>_____ ) | | No. 1:14-CV-863<br><br>Hon. John W. Darrah |

**BRIEF OF THE RETAIL LITIGATION CENTER, INC. AS AMICUS CURIAE IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
FOR SUMMARY JUDGMENT**

Deborah R. White
RETAIL LITIGATION CENTER
1700 N. Moore Street
Suite 2250
Arlington, VA 22209
(703) 600-2067

Jason C. Schwartz
Thomas M. Johnson Jr.
Lindsay S. See
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 923-2651

**TABLE OF CONTENTS**

Page

INTRODUCTION AND INTERESTS OF AMICUS CURIAE.................................................. 1

ARGUMENT ........................................................................................................................... 2

I.     CVS'S SEPARATION AGREEMENT, WHICH CONTAINS STANDARD
       TERMS WIDELY USED IN THE RETAIL INDUSTRY AND ROUTINELY
       APPROVED BY FEDERAL COURTS, DOES NOT VIOLATE TITLE VII ................ 2

       A.     Offering Employees A Severance Agreement Does Not Violate Title VII........... 3

       B.     The CVS Agreement Explicitly Informs Employees Of Their Right To
              Participate In Agency Employment Discrimination Investigations...................... 5

       C.     The Agreement Conforms With Standard Industry Practice ................................ 6

II.    THE EEOC'S THEORY PROVIDES EMPLOYERS WITH NO DISCERNIBLE
       STANDARD TO GUIDE THEIR CONDUCT AND VIOLATES EMPLOYERS'
       DUE PROCESS RIGHTS............................................................................................... 7

       A.     CVS Had No Notice That Its Conduct Violated The Law.................................... 7

       B.     The EEOC's Extra-Statutory Standard Would Invite Arbitrary
              Enforcement...................................................................................................... 11

III.   A RULING AGAINST CVS WOULD UNDERMINE THE IMPORTANT
       SOCIETAL GOALS OF FINALITY AND INFORMAL DISPUTE
       RESOLUTION UNDERLYING TITLE VII.................................................................. 12

CONCLUSION...................................................................................................................... 15

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Gardner-Denver Co.*,
  415 U.S. 36 (1974) .................................................................................................... 14

*Bess v. DirecTV, Inc.*,
  381 Ill. App. 3d 229 (2008) ....................................................................................... 11

*Bowen v. Georgetown Univ. Hosp.*,
  488 U.S. 204 (1988) ..................................................................................................... 9

*Breckenridge v. Cambridge Homes, Inc.*,
  616 N.E.2d 615 (Ill. App. Ct. 1993) ......................................................................... 10

*Celestine v. Petroleos de Venezuella SA*,
  266 F.3d 343 (5th Cir. 2001) ....................................................................................... 4

*Coleman v. Donahoe*,
  667 F.3d 835 (7th Cir. 2012) ..................................................................................... 13

*Davis v. Precoat Metals*,
  328 F. Supp. 2d 847 (N.D. Ill. 2004) .......................................................................... 3

*Dinkins v. Charoen Pokphand USA, Inc.*,
  133 F. Supp. 2d 1237 (M.D. Ala. 2001) ................................................................... 13

*E.E.O.C. v. Bd. of Governors of State Colls. & Univs.*,
  957 F.2d 424 (7th Cir. 1992) ....................................................................................... 3

*E.E.O.C. v. Cognis Corp.*,
  2012 WL 1893725 (C.D. Ill. May 23, 2012) .............................................................. 4

*E.E.O.C. v. SunDance Rehab. Corp.*,
  466 F.3d 490 (6th Cir. 2006) ................................................................................... 3, 4

*EEOC v. Mach Mining, LLC*,
  738 F.3d 171 (7th Cir. 2013) ..................................................................................... 12

*EEOC v. Sears, Roebuck & Co.*,
  857 F. Supp. 1233 (N.D. Ill. 1994) ............................................................................. 3

*Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
  2003 WL 22176077 (N.D. Ill. Sept. 18, 2003) ........................................................... 9

*Fortino v. Quasar Co.*,
  950 F.2d 389 (7th Cir. 1991) ....................................................................................... 7

*Golden v. McDermott, Will & Emery*,
  299 Ill. App. 3d 982 (1998) ....................................................................................... 10

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ............................................................................................... 7, 11

*Gross v. FBL Fin. Servs., Inc*,
  557 U.S. 167 (2009) ..................................................................................................... 8

*Hampton v. Ford Motor Co.*,
  561 F.3d 709 (7th Cir. 2009) ................................................................................. 7, 13

*Hegwood v. City of Eau Claire*,
   676 F.3d 600 (7th Cir. 2012) ........................................................ 11

*Hill v. Gateway 2000, Inc.*,
   105 F.3d 1147 (7th Cir. 1997) ...................................................... 10

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977) ........................................................................ 4

*Martin v. Spring Break '83 Prods., L.L.C.*,
   688 F.3d 247 (5th Cir. 2012) .......................................................... 9

*Moteles v. Univ. of Penn.*,
   730 F.2d 913 (3d Cir. 1984) ......................................................... 13

*Nall v. Mal-Motels, Inc.*,
   723 F.3d 1304 (11th Cir. 2013) ...................................................... 9

*Occidental Life Ins. Co. of Cal. v. E.E.O.C.*,
   432 U.S. 355 (1977) ................................................................ 13, 14

*Oubre v. Entergy Ops., Inc.*,
   522 U.S. 422 (1998) ........................................................................ 9

*Pac. Mut. Life Ins. Co. v. Haslip*,
   499 U.S. 1 (1991) ......................................................................... 11

*Ribble v. Kimberly-Clark Corp.*,
   2012 WL 589252 (E.D. Wis. Feb. 22, 2012) ................................ 5

*Smith v. City of Jackson*,
   544 U.S. 228 (2005) ....................................................................... 8

*Smith v. Goguen*,
   415 U.S. 566 (1974) ..................................................................... 11

*Spencer v. Banco Real, S.A.*,
   87 F.R.D. 739 (S.D.N.Y. 1980) ................................................... 13

*Whitehead v. Okla. Gas & Elec. Co.*,
   187 F.3d 1184 (10th Cir. 1999) ..................................................... 9

**Statutes**

29 U.S.C. § 626(f)(1) ....................................................................... 8

42 U.S.C. § 2000e-2 ........................................................................ 3

42 U.S.C. § 2000e-3 ........................................................................ 3

42 U.S.C. § 2000e-6 ........................................................................ 4

**Other Authorities**

110 Cong. Rec. 14190 (1964) ......................................................... 15

12 Ill. Law & Prac. Contracts § 59 ................................................ 10

E.E.O.C., *EEOC Sues CVS to Preserve Employee Access to the Legal System*
   (Feb. 7, 2014),
    http://eeoc.gov/eeoc/newsroom/release/2-7-14.cfm ...................... 7

E.E.O.C., *Understanding Waivers of Discrimination Claims In Employee*
*Severance Agreements* App. B,
http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html#B ........................... 5, 13

H.R. Rep. No. 238, 92d Cong., 2d Sess. 2,
*reprinted in* 1972 U.S. Code Cong. & Ad. News 2137 ........................................................... 14

**Regulation**

29 C.F.R. § 1625.22 ..................................................................................................................... 6

**INTRODUCTION AND INTERESTS OF AMICUS CURIAE**

The Retail Litigation Center, Inc. ("RLC") is a public policy organization that identifies and engages in legal proceedings involving important issues that affect the retail industry. The RLC's members include many of the country's largest and most innovative retailers. The member entities whose interests the RLC represents employ millions of people throughout the United States, provide goods and services to tens of millions more, and account for tens of billions of dollars in annual sales. The RLC seeks to provide courts with retail-industry perspectives on important legal issues, and to highlight the potential industry-wide consequences of significant pending cases.

This case is of particular importance to the RLC and its members because retailers nationwide routinely enter into separation agreements with employees as an efficient, mutually agreeable mechanism to resolve disputes, provide employers with finality through a release of claims, and provide employees with additional compensation as they seek new employment. In enacting Title VII, Congress intended to promote and facilitate this private resolution of employment disputes to the greatest extent possible, and the Supreme Court and lower courts have repeatedly affirmed this core purpose of the statute and enforced private releases. Employers and employees nationwide have relied on this established legal landscape to enter into separation agreements, and the courts as a result have been spared the expense of overseeing and resolving a plethora of employment disputes.

Through this lawsuit, the EEOC seeks to upset this established and beneficial framework, and asks this Court to be the first in the country to find that a standard-form separation agreement violates Title VII, despite *no* allegations of discrimination, *no* allegations of retaliation against any employee, and an *explicit* provision memorializing employees' right to

participate in agency proceedings enforcing employment discrimination laws. Worse, the EEOC's novel extension of Title VII liability would have this Court assume the role of copy editor by making a federal case out of the formatting, word choice, and style of a separation agreement. This approach cannot satisfy basic norms of notice inherent in Due Process, because there are no statutory or regulatory standards that could ensure fair enforcement or provide employers with confidence that any future agreements comply with the law. If the EEOC were to prevail, countless similar separation agreements could be invalidated and the threat of liability for noncompliant releases could make companies reluctant to offer them at all. This result would place tremendous costs on employees and employers alike, as well as on the federal judiciary, which would be faced with a new flood of employment-related lawsuits every year if such disputes are not preempted by private, mutually beneficial agreements. The Court should decline the invitation to undermine the policies underlying Title VII and the practices of employers and employees across the country.

## ARGUMENT

## I.    CVS'S SEPARATION AGREEMENT, WHICH CONTAINS STANDARD TERMS WIDELY USED IN THE RETAIL INDUSTRY AND ROUTINELY APPROVED BY FEDERAL COURTS, DOES NOT VIOLATE TITLE VII.

The CVS Separation Agreement ("CVS Agreement" or "Agreement") is substantially similar to agreements used by countless retailers and other employers nationwide. There is nothing problematic about its terms. In fact, courts have routinely upheld similar agreements against Title VII challenges, declining to find liability absent specific allegations of discrimination or retaliation—allegations that are entirely missing from the EEOC's complaint here.

### A.     Offering Employees A Severance Agreement Does Not Violate Title VII.

No court has endorsed the EEOC's theory that a typical agreement like the one here could run afoul of Title VII by "deter[ring] the filing of [EEOC] charges and interfer[ing] with employees' ability to communicate voluntarily with the EEOC."  Compl. ¶ 7.  Merely offering severance to an employee in exchange for a release, without additional evidence of employer misconduct, is neither discrimination nor retaliation—the only two types of "unlawful employment practices" that Title VII prohibits.  *See* 42 U.S.C. §§ 2000e-2, 2000e-3; *E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 498 (6th Cir. 2006) (no Title VII violation where employer "engaged in no further action" beyond "offer[ing] a contract"); *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 852 (N.D. Ill. 2004) ("Offering severance benefits in return for a general release of claims is neither discriminatory nor retaliatory.").  Even directly "condition[ing] severance pay on promises from the terminated employee not to file charges with the EEOC" or "participate in EEOC proceedings" is not, on its own, sufficient to sustain a retaliation charge.  *Sundance*, 466 F.3d at 497, 499, 501; *see also, e.g.*, *EEOC v. Sears, Roebuck & Co.*, 857 F. Supp. 1233, 1239 (N.D. Ill. 1994) ("[C]onditioning severance benefits on an invalid release is not actionable.").  Nor does misstating the law or purporting to limit an employee's rights (which the Agreement does not do, *see infra* Part I.B) amount to discrimination or retaliation.

In other words, the EEOC cannot demonstrate a Title VII violation without allegations that CVS *applied* its severance program in a discriminatory or retaliatory manner.  *Cf. E.E.O.C. v. Bd. of Governors of State Colls. & Univs.*, 957 F.2d 424 (7th Cir. 1992) (finding retaliation under Age Discrimination in Employment Act ("ADEA") where collective bargaining agreement authorized employer to stop union grievance procedures if employee filed EEOC charge and employer in fact did so).  The EEOC complaint contains no such allegations.

In point of fact, all of the EEOC's allegations center on the purported invalidity of the Agreement itself, rather than on any discriminatory or retaliatory act committed by the employer. To be sure, an "overly broad" or "misleading" contract provision (Compl. ¶ 1; *see also id.* ¶ 7) may be *unenforceable*, but that has nothing at all to do with Title VII. *See, e.g.*, *E.E.O.C. v. Cognis Corp.*, 2012 WL 1893725, at *6-*7 (C.D. Ill. May 23, 2012) (provision "threaten[ing] termination if an employee took statutorily protected activity" was "void" as against public policy, but did not violate Title VII); *Sundance*, 466 F.3d at 501 (provision barring employee from filing charges with EEOC was not retaliation even though it "may be unenforceable"). Put simply, a finding of unenforceability does not itself operate as a matter of law to create a Title VII violation.

And because nothing in the Agreement constitutes an "unlawful employment practice" under Title VII, CVS cannot be guilty of a pattern or practice of such violations. Section 707(a) addresses circumstances where an employer "is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights *secured by this subchapter*, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights *herein described*." 42 U.S.C. § 2000e-6 (emphases added). This text makes clear that "pattern or practice" does not refer to a distinct type of wrong, but to repeated instances of the same misconduct described elsewhere in Title VII. *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.16 (1977) ("pattern or practice" is not "a term of art, and the words reflect only their usual meaning"); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355 (5th Cir. 2001). There can be no actionable "pattern or practice" here because the EEOC cannot establish any violation.

**B.**     **The CVS Agreement Explicitly Informs Employees Of Their Right To Participate In Agency Employment Discrimination Investigations.**

Even if this Court were to stretch existing precedent to adopt the EEOC's theory that offering a standard-form separation agreement *could* constitute a pattern or practice of Title VII violations, the express terms of the Agreement make clear that *this* severance program does not. The Agreement includes an easy-to-understand provision stating that "[n]othing" in the covenant not to sue "is intended to or shall interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation." Agreement ¶ 8. This express carve-out for participation in and cooperation with investigations by the EEOC or other agencies applies regardless of whether the employee or agency initiated the proceedings. In this respect, the Agreement is more protective of employees' rights than the sample separation agreement on the EEOC's own website. *See* E.E.O.C., *Understanding Waivers of Discrimination Claims In Employee Severance Agreements* App. B, *available at* http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html#B (suggesting provision excepting "claims that cannot be released under applicable law" but none regarding right to participate in EEOC proceedings). If, as explained above, Title VII is not offended by an agreement that *misstates* the law—which this one does not (*see* Agreement ¶ 7 ("this release does not include any rights that Employee cannot lawfully waive"))—then it cannot be illegal for an employer to go beyond the legal minimum by expressly and accurately informing employees of the rights they retain. *See Ribble v. Kimberly-Clark Corp.*, 2012 WL 589252, at *8 (E.D. Wis. Feb. 22, 2012) (agreement "could have more explicitly stated" that employee "retains the right to file a charge with the EEOC, [but] such specificity is not required").

Moreover, the Agreement contains several provisions designed to ensure that employees fully understand the Agreement and voluntarily accept its terms.  Consistent with the EEOC's regulations for knowing and voluntary releases under the Older Workers Benefit Protection Act ("OWBPA") (*see* 29 C.F.R. § 1625.22), employees are advised to consult with an attorney before signing and are given three weeks in which to seek outside advice and otherwise consider the Agreement, then another week in which to revoke the Agreement after signing.  Agreement ¶¶ 10-11.  A decision for the EEOC would make this Court the first ever to find a Title VII violation hidden within an agreement expressly noting that employees retain the right to participate in investigations and containing sufficient procedural protections (more than those required by law in most instances) to ensure that employees enter into the agreement knowingly and voluntarily.

### C.      The Agreement Conforms With Standard Industry Practice.

Besides having no basis in law, the EEOC's theory would wreak havoc with employers' existing practices, as the CVS Agreement is indistinguishable from countless other standard-form separation agreements used nationwide by employers.  These agreements are not unique to the private sector, but used in the public sector as well.  For example, the EEOC sample agreement contains similar, albeit not as protective, language.  *See supra* p. 5.[1]  Such agreements are both routine and routinely upheld in court absent separate evidence of duress or other outside

---

[1] *See also, e.g.*, ISAC Separation Agreement and General Release of Claims, *available at* http://www.chicagobusiness.com/Assets/legacy/downloads/DavisSeparationAgreement.pdf (six-page, single-spaced agreement used by the legislatively created Illinois Student Assistance Commission including language similar to every provision the EEOC challenges in the CVS agreement); *cf. E.E.O.C.*, Settlement Agreement, *available at* http://www.eeoc. gov/federal/adr/fsms-settlement.cfm (EEOC sample settlement agreement suggesting language stating that employee "agrees not to institute a law suit under" Title VII, but without noting employee's right to file charges with the EEOC).

factors not alleged here.  *See, e.g.*, *Hampton v. Ford Motor Co.*, 561 F.3d 709, 714-16 (7th Cir.

2009) (upholding release of "any and all rights or claims" and agreement not to initiate against

employer "any proceedings of any kind," even though agreement was generic, not subject to

negotiation, and employee allegedly was not allowed to take contract home and did not obtain

legal advice before signing); *Fortino v. Quasar Co.*, 950 F.2d 389, 394-95 (7th Cir. 1991)

(upholding release of discrimination claims).  It is difficult to distinguish the CVS Agreement

from the many others like it signed—and enforced—every year.  As such, invalidating this

Agreement would not only run contrary to a vast array of settled legal precedent but would also

have far-reaching and dramatic implications across multiple industries.

## II.     THE EEOC'S THEORY PROVIDES EMPLOYERS WITH NO DISCERNIBLE STANDARD TO GUIDE THEIR CONDUCT AND VIOLATES EMPLOYERS' DUE PROCESS RIGHTS.

The EEOC's position in this case suffers from another fatal flaw:  It is vague and open-

ended.  If the EEOC prevailed, employers would have no basis to know whether their conduct

violated Title VII and no clear, objective standards to guide future action.  This violates

employers' Due Process rights.  *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 108

(1972).

### A.     CVS Had No Notice That Its Conduct Violated The Law.

The EEOC identifies no false statements in the Agreement, nor alleges that any provision

misstates the law or was applied in a discriminatory manner.  Rather, its objections are

atmospheric, claiming that the Agreement's overall form and style amount to a restraint on

employees' Title VII rights.  The EEOC concedes, as it must, that the Agreement expressly states

that it does not interfere with an employee's right to participate in agency proceedings, but faults

CVS for not *repeating* this caveat (which was not required by law in the first instance).  *See*

Compl. ¶ 8(f) (describing the provision as a "single qualifying sentence that is not repeated

anywhere else in the Agreement").  And the EEOC takes issue with the Agreement's length and formatting, emphasizing that the Agreement is "*five-page[s]*" and "*single spaced.*"  *See id.* ¶ 8; *see also* Press Release, *EEOC Sues CVS to Preserve Employee Access to the Legal System* (Feb. 7, 2014), *available at* http://eeoc.gov/eeoc/newsroom/release/2-7-14.cfm (in press release issued the same day it filed suit, the EEOC accused CVS of using "an overly broad severance agreement set forth in five pages of small print").

Title VII provides no statutory or regulatory basis for objecting to a separation agreement on such grounds.  Congress knows how to dictate standards for valid employment waivers—as well as how to delegate such authority to an agency.  In the OWBPA, for example, Congress included detailed requirements that must be met, and specific language that must be included, before an employee will be held to have "knowing[ly] and voluntar[ily]" waived rights under the ADEA.  29 U.S.C. § 626(f)(1) (waivers must, for example, advise employees "to consult with an attorney prior to executing the agreement," and provide a three-week period "within which to consider the agreement," then another week in which "the individual may revoke the agreement").  Congress did not provide such specific requirements for Title VII waivers, nor did it grant the EEOC authority to mandate such minutiae as an agreement's length and choice of font size.  *See Smith v. City of Jackson*, 544 U.S. 228, 240 (2005) (holding that "textual differences between the ADEA and Title VII" mandate different interpretations); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173 (2009).  Congress also did not include language in Title VII that could be interpreted as requiring searching judicial oversight of private separation agreements.  In contrast, for example, to settlement of Fair Labor Standards Act wage-and-hour

claims, which some courts have determined require agency or judicial approval,[2] there is a long tradition of informal resolution of potential Title VII claims and judicial enforcement of private separation agreements waiving such claims.

The EEOC also has not promulgated the type of standards it contemplates here through notice-and-comment rulemaking. Employers and employee advocates have thus not had an opportunity to provide input into the importance of separation agreements or of best practices for such agreements. The EEOC should not be permitted to adopt a new policy against enforcing separation agreements through litigation; its unprecedented interpretation of Title VII is not entitled to deference. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (refusing deference to "agency counsel's" interpretation "where the agency itself has articulated no position on the question" by regulation or prior rulings).

Even if there *were* Congressional or agency rules dictating the content of employment waivers, that would not be enough to make such rules separately actionable by the EEOC as an affirmative cause of action. The OWBPA's requirements, for example, simply "govern[] the effect under federal law of waivers or releases" on age discrimination claims. *Oubre v. Entergy Ops., Inc.*, 522 U.S. 422, 427 (1998)). Courts almost uniformly interpret this rule to mean that noncompliance is a "shield for plaintiffs . . . when an employer invokes the waiver as an affirmative defense," not "swords that provide plaintiffs with an independent cause of action for affirmative relief." *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184, 1191 (10th Cir. 1999); *see also, e.g., Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2003 WL 22176077, at *5 (N.D. Ill. Sept. 18, 2003). It would be odd to judicially graft an implicit cause of action onto Title VII

---

2 *See, e.g., Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013); *but see Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255-56 (5th Cir. 2012).

regarding the content and style of separation agreements where none exists to enforce the explicit standards in the OWBPA.

Moreover, the EEOC's liability theory conflicts with the well-settled rule that parties are presumed to have read and understood the agreements they sign. Absent allegations of duress or undue influence—which the EEOC does not make for any of the employees who were offered the Agreement in 2012 (Compl. ¶ 9)—"[c]ompetent adults are bound by documents they sign, read or unread." *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997); *see, e.g.*, *Golden v. McDermott, Will & Emery*, 299 Ill. App. 3d 982 (1998) (enforcing severance agreement releasing "any and all claims," known or unknown, despite duress allegations); *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615 (Ill. App. Ct. 1993).

There is nothing unusual or coercive about a five-page, single-spaced separation agreement. Separation agreements typically cover substantial ground in order to protect *both* the employee *and* the employer. For instance, the CVS Agreement sets out the amount and terms of the employee's severance payments, employer-subsidized health insurance, and employer-provided outplacement assistance, as well as delineates time periods for the employee to consult with counsel, consider the agreement, and, if the employee chooses, revoke the agreement after signing. Agreement ¶¶ 2-3, 5, 10-11. These provisions and the rest of the Agreement are written in plain English and set off by numbered paragraphs with bold, underlined headings. And this Agreement does not contain a single footnote, much less fine print. Finding that a mere five pages of such text could render involuntary the signature of a competent adult—much less one who had three weeks to consider the Agreement's terms and consult with counsel—would uproot well-established principles of contract law and call into doubt a host of routine agreements made every day by countless employees, consumers, and other parties. *See, e.g.*, *Bess v. DirecTV, Inc.*,

381 Ill. App. 3d 229, 240 (2008) (no procedural unconscionability from contract's length or formatting where contracting party could "locate, read, [and] understand" provisions in question); 12 Ill. Law & Prac. Contracts § 59 (same).

**B.     The EEOC's Extra-Statutory Standard Would Invite Arbitrary Enforcement.**

Further compounding the notice concerns in this case, the EEOC would replace the prevailing rule in favor of enforcing private severance agreements with undefined, subjective standards leading to arbitrary enforcement. This is improper. "It is a basic principle of due process" that a law is impermissibly void "if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. Clarity is necessary lest the law "trap the innocent by not providing fair warning" or fail to provide regulated parties with a "reasonable opportunity to know what is prohibited, so that [they] may act accordingly." *Id.* And "laws must provide explicit standards for those who apply them" to avoid the need for "ad hoc and subjective" decisions, "with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09; *see also, e.g.*, *Smith v. Goguen*, 415 U.S. 566, 572-73 (1974) (due process vagueness doctrine "incorporates notions of fair notice or warning" and requires "reasonably clear guidelines" for those who enforce and interpret the law); *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012) (same).

The EEOC circumvents these principles by asking this Court to find the Agreement invalid under Title VII without "provid[ing] meaningful standards to guide the application" of its theory. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 44 (1991). A fair reading of the Complaint leaves the precise nature of the EEOC's objections unclear, forcing CVS and other employers to guess at what a permissible separation agreement looks like going forward. Would, for example, the Agreement satisfy Title VII if it were reprinted in 14-point font and double-spaced or if CVS

11

eliminated several provisions to fit it on three pages instead of five? Would CVS have been safe setting off the provision about employees' right to participate in agency investigations in a separate paragraph, or repeating it elsewhere? Or does the Agreement fail EEOC scrutiny based on an unexplained combination of these factors? The Seventh Circuit recently refused to import into Title VII litigation "open-ended" tests it found the statute did not require because they "invite[d] ad hoc assessments" of a party's conduct. *EEOC v. Mach Mining, LLC*, 738 F.3d 171, 183 (7th Cir. 2013). The same result should hold here. Due process norms require more than extra-statutory objections to tone or style.

At bottom, there is no limiting principle to the EEOC's new approach to Section 707(a), which would make it impossible for employers to ensure that future agreements conform with the law—or have any confidence that the EEOC will not alter its undefined test in the future. It serves neither employers nor employees to inject uncertainty into whether, and on what terms, separation agreements will be enforced.

## III. A RULING AGAINST CVS WOULD UNDERMINE THE IMPORTANT SOCIETAL GOALS OF FINALITY AND INFORMAL DISPUTE RESOLUTION UNDERLYING TITLE VII.

Separation agreements are common devices used by countless employers and employees across hundreds of industries—to the mutual benefit of employees and employers, as well as the judicial system, which is spared the cost of resolving innumerable employment disputes. Judgment for the EEOC would discourage the voluntary resolution of potential post-employment disputes through such agreements, at great cost to all involved.

In exchange for signing a release and waiver of potential employment claims, separation agreements provide extra compensation for departing employees quickly and efficiently—which might make all the difference for an unemployed person seeking new employment—without the cost or time of litigation. *See, e.g.*, E.E.O.C., *Understanding Waivers of Discrimination Claims*

12

*in Employee Severance Agreements*, *available at* http://www.eeoc.gov/policy/docs/qanda_ severance-agreements.html (valid waivers require "something of value *in addition to* any of the employee's existing entitlements," such as "a lump sum payment of a percentage of the employee's annual salary" (emphasis added)); *see also, e.g.*, *Hampton*, 561 F.3d at 717 (recognizing $100,000 consideration for separation agreement). Employers, in turn, gain finality instead of the ongoing threat of potential litigation in the months and years after an employee leaves. Even in the typical case with no reason to suspect an employee would sue, the option to trade extra compensation to avoid the risk of litigation can be highly desirable. *See, e.g.*, *Spencer v. Banco Real, S.A.*, 87 F.R.D. 739, 747 (S.D.N.Y. 1980) ("[E]ven if an employer believes it will prevail, it must realize that it will seldom recoup the costs of litigation, however meritless.").

And separation agreements' benefits extend beyond the contracting parties. Congress recognized when enacting Title VII "that the courtroom is not always the best forum for settling workplace disputes." *Dinkins v. Charoen Pokphand USA, Inc.*, 133 F. Supp. 2d 1237, 1241 (M.D. Ala. 2001); *see also Occidental Life Ins. Co. of Cal. v. E.E.O.C.*, 432 U.S. 355, 366 (1977) ("It is hoped that recourse to the private lawsuit will be the exception and not the rule."). Widespread use of separation agreements saves federal courts from expending the time and resources that would be necessary to resolve potentially hundreds or thousands of non-released employment disputes each year. *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012) (when enforcing federal discrimination laws, courts "do[] not sit as a 'super-personnel department,' second-guessing an employer's" business decisions (citation omitted)); *Moteles v. Univ. of Penn.*, 730 F.2d 913, 917 (3d Cir. 1984) ("the sorting out of the complexities surrounding employment discrimination can give rise to enormous expenditures of judicial

resources in already heavily overburdened Federal district courts" (citing H.R. Rep. No. 238, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S. Code Cong. & Ad. News 2137, 2146)).

The EEOC's approach would sacrifice many of these benefits by making it far more difficult for employers and employees to resolve disputes voluntarily. Without a clear standard against which to measure separation agreements going forward—or assurance that the EEOC will not move the mark yet again once permitted to erase the textual limits on Section 707(a)— employers and employees will be hard pressed to know whether the agreements they enter will satisfy the EEOC. Indeed, the risk of gambling against an undefined standard would become significantly greater if, as the EEOC would have it, the consequences for noncompliant agreements could include the "sword" of Title VII enforcement actions. Judgment for the EEOC would thus have an industry-wide effect. In addition, most employees who signed the CVS Agreement—and others like it—may be perfectly happy with the bargains they struck. The EEOC's theory could raise difficult questions of whether those employees would be required to pay back some or all of the consideration they received if those releases are found to violate Title VII.

Such an outcome would also undermine Congress's goals in enacting Title VII to encourage voluntary, informal dispute resolution. Title VII's legislative history and Supreme Court precedent show that Congress intended for informal, out-of-court dispute resolution to be the norm under Title VII, with litigation as a last resort. *See, e.g.*, *Occidental*, 432 U.S. at 366; *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (Congress intended "[c]ooperation and voluntary compliance . . . as the preferred means for achieving" equal employment opportunities); 110 Cong. Rec. 14190, 14443 (1964) (statement of Sen. Humphrey) (Civil Rights Act of 1964 "establish[ed] a framework of law wherein men of good will and reason can seek to

resolve . . . difficult and emotional issues of human rights" through "voluntary conciliation—not coercion").    In other words, the benefits that separation agreements advance—fast and inexpensive resolution of employment disputes with less recourse to the federal courts—are the same goals Congress hoped Title VII would facilitate itself.

## CONCLUSION

For these reasons, CVS's Motion to Dismiss or, in the alternative, for Summary Judgment should be granted.

Dated:  April 28, 2014                              Respectfully submitted,


Deborah R. White                          Jason C. Schwartz
RETAIL LITIGATION CENTER                     (*pro hac vice* application pending)
1700 N. Moore Street                       Thomas M. Johnson Jr.
Suite 2250                                 Lindsay S. See
Arlington, VA 22209                        GIBSON, DUNN & CRUTCHER LLP
(703) 600-2067                             1050 Connecticut Avenue, N.W.
                                           Washington, D.C.  20036
                                           (202) 955-8500

                                             /s/  Gregory M. Boyle
                                           Gregory M. Boyle
                                           JENNER & BLOCK LLP
                                           353 N. Clark Street
                                           Chicago, IL 60654-3456
                                           (312) 923-2651


*Attorneys for Amicus Curiae The Retail Litigation Center, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service were served with a copy of this document via the Court's CM/ECF system on April 28, 2014.

   /s/  Gregory M. Boyle
Gregory M. Boyle
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 923-2651

*Attorney for Amicus Curiae*
*The Retail Litigation Center, Inc.*