## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | |
| Plaintiff, | Civil Action No. 1:14-cv-00863 |
| v. | Judge John W. Darrah |
| **CVS PHARMACY, INC.,** | |
| Defendant. | |

## EEOC'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

BACKGROUND .................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.  CVS'S SEVERANCE CONDITIONS CONSTITUTE RESISTANCE TO THE FULL
ENJOYMENT OF RIGHTS SECURED BY TITLE VII ......................................................... 2

    A.  Section 707(a) Authorizes Injunctive Relief Whenever Any Person Is Engaged in a
Pattern or Practice of Resistance to the Full Enjoyment of Title VII Rights ......................... 3
      i.  Agency access rights are within the scope of § 707(a)................................................ 4
      ii.  "Resistance" includes conduct that would deter a reasonable person from fully
exercising Title VII rights and is not limited to already-prohibited acts of discrimination
and retaliation ............................................................................................................. 6
      iii.  Cases cited by CVS do not address the scope of "resistance" under § 707 ............ 10

    B.  The CVS Severance Conditions Would Deter a Reasonable Person from Fully and
Freely Exercising Title VII Rights to Agency Access ....................................................... 12
      i.  CVS's Severance Conditions Prohibit Charge Filing and Impose Limitations on
Communications with the EEOC................................................................................... 12
      ii.  The Severance Conditions Have a Chilling Effect on the Exercise of Title VII Rights
Because They Are Unreasonably Broad and Ambiguous ................................................. 15
      iii.  The Complaint Plausibly Alleges CVS's  Intent to Deter Protected Activity ........ 18

II.  THE EEOC IS AUTHORIZED TO COMMENCE AN ACTION UNDER SECTION
707(A) WITHOUT A CHARGE OR CONCILIATION ........................................................ 19

I.  SUR-REPLY TO THE ARGUMENTS OF THE AMICUS ............................................... I
    A.  The Law and EEOC's Guidance On Waivers and Releases Is Longstanding............... I
    B.  RLC's Contentions About "Standard Industry Practice" Are Misplaced.................... II
    C.  This Action Is Consistent with the Public Policies Embodied by Title VII .............. III

CONCLUSION ................................................................................................... V

i

## TABLE OF AUTHORITIES

**Cases**

Aliotta v. Bair, 614 F.3d 556, 562 (D.C. Cir. 2010) ...................................................................... 11

Bogacz v. MTD Prods., 694 F. Supp. 2d 400 (W.D. Pa. 2010).................................................... 18

Brandeis Mach. & Supply Co. v. NLRB, 412 F.3d 822, 830-31 (7th Cir. 2005) ........................ 16

Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006) ..................................... 4, 7, 8, 10

Dish Network Corp., S 16-CA-62433, 2012 WL 5564372 (N.L.R.B. Div. of Judges Nov. 14, 2012 ............................................................................................................................................ 16

EEOC v Cintas, 699 F.3d 884, 895 (6th Cir. 2012) ............................................................... 11, 20

EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1184, 1187-88 (4th Cir. 1981) ................................. 11

EEOC v. Astra USA, 94 F.3d 738, 744 (1st Cir. 1996) ....................................................... 5, 6, 17

EEOC v. Bruno's Rest., 13 F.3d 285 (9th Cir. 1993) ................................................................... 10

EEOC v. Caterpillar, 409 F.3d 831 (7th Cir. 2005) ..................................................................... 20

EEOC v. Continental Oil Co., 548 F.2d 884, 890 (10th Cir. 1997) ............................................. 20

EEOC v. Cosmair, 821 F.2d 1085, 1090 (5th Cir. 1987) ............................................................... 5

EEOC v. Frank's Nursery & Crafts, 177 F.3d 448, 456 (6th Cir. 1999) ........................................ 5

EEOC v. Harvey L. Walner & Assoc., 91 F.3d 963, 968 (7th Cir. 1996) .................................... 20

EEOC v. Morgan Stanley & Co., No. 01-cv-8421, 2002 WL 31108179, *1-*2 (S.D.N.Y. Sept. 20, 2002)..................................................................................................................................... 17

EEOC v. Shell Oil Co., 466 U.S. 54, 69 (1984) ...................................................................... 5, 14

EEOC v. The Geo Group, No. 13-16292, at 40 (9th Cir. 2014) ................................................... 10

EEOC v. United Air Lines, 560 F.2d 224 (7th Cir. 1977) ........................................................... 20

EEOC v. United Parcel Service, 860 F.2d 372 (10th Cir. 1988) ................................................. 11

EEOC v. Waffle House, 534 U.S. 279, 296 (2002) ............................................................... 2, III

EEOC v. Whirlpool, 80 F.R.D. 10, 12 (N.D. Ind. 1978) ............................................................. 20

Federal Express Corp. v. Holowecki, 552 U.S. 389, 404 (2008) .................................................. 14

Franks v. Bowman Transp., 424 U.S. 747, 772 (1976) .............................................................. 10

Fribble v. Kimberly Clark, No.09-C-643, 2012 WL 589252, at *8, *9 (E.D. Wis. Feb. 22, 2012) ................................................................................................................................. 17

Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012)............................................ 2

General Telephone v. EEOC, 446 U.S. 318, 326 (1980)............................................... 2, 11, 19

Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 336 n.16 (1977) .............................................. 6, 11

Jefferson v. Ingersoll Int'l, 195 F.3d 894, 899 (7th Cir. 1999)................................................. 11

NLRB v. Gen. Thermodynamics, 670 F.2d 719, 721 (7th Cir. 1982) ........................................ 16

NLRB v. Rich's Precision Foundry, 667 F.2d 613, 622 (7th Cir. 1981)..................................... 16

Park v. Indiana Univ. Sch. of Dentistry, 692 F.3d 828, 830 (7th Cir. 2012).............................. 2

Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1005 (5th Cir.1969) .............................. 5

Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 438 (7th Cir. 1997).................... 15

Robinson v. Shell Oil Co., 519 U.S. 337, 484 (1997) ................................................................ 4

Rupert v. PPG Indus., Nos. Civ.A.07–705, 08–616, 2009 WL 596014 (W.D. Pa. Feb. 26, 2009) ................................................................................................................................. 17

Russello v. U.S., 464 U.S. 16, 23 (1983) ................................................................................... 8

Supply Tech., LLC, 359 NLRB No. 38 (Dec. 14, 2012) ............................................................ 16

U.S. v. Allegheny-Ludlum Inds., 517 F.2d 826, 843 (5th Cir. 1975)........................................... 20

U.S. v. Board of Educ. for School Dist. of Philadelphia, 911 F.2d 882, 891-93 (3d Cir. 1990).... 9

U.S. v. Gulf-State Theaters, et al., 256 F. Supp. 549, 557-58 (N.D. Miss. 1966) .......................... 9

U.S. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, 438 F.2d 679, 681 (7th Cir. 1971) ................................................................................................................... 19, 20

U.S. v. Masonry Contractors Ass'n of Memphis, Inc., 497 F.2d 871, 875-76 (6th Cir. 1974) .... 20

U.S. v. Original Knights of the Ku Klux Klan, 250 F. Supp. 330, 356 (N.D. Miss. 1966)...... 9, 10

U.S. v. Sampson, 256 F. Supp. 470, 474 & n.6 (N.D. Miss. 1966) .............................................. 9

Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2530 (2013) .......................... 8

**Statutes**

29 U.S.C. § 157 ...................................................................................................... 16

29 U.S.C. § 158(a)(1) .............................................................................................. 16

29 U.S.C. § 626(f)(4) ................................................................................................ II

42 U.S.C. § 1971(e), (g) ........................................................................................... 7

42 U.S.C. § 2000a-5(a) ............................................................................................ 9

42 U.S.C. § 2000e-3 ......................................................................................... passim

42 U.S.C. § 2000e-5 ................................................................................. 3, 4, 7, 19

42 U.S.C. § 2000e-6(a) ..................................................................................... passim

42 U.S.C. § 2000e-6(c) ............................................................................................ 3

42 U.S.C. § 2000e-6(e) ............................................................................................ 7

42 U.S.C. §§ 2000e ............................................................................................... 1, 3

42 U.S.C. §§ 2000e-4, e-5, e-6, e-8, e-9 ................................................................ 2

**Other Authorities**

http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html ............................................. II

http://www.eeoc.gov/policy/docs/waiver.html. ...................................................................... I

Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1999), http://www.merriam-
    webster.com/dictionary/resist ........................................................................................ 6

Reorg. Plan No. 1 of 1978 § 5, 43 F.R. 19807, 92 Stat. 3781 ....................................................... 3

Enforcement Guidance on non-waivable employee rights under Equal Employment Opportunity
    Commission (EEOC) enforced statutes, No. 915.002 (April 10, 1997) ...................................... I

Understanding Waivers of Discrimination Claims in Employee Severance Agreements,
    Appendix B (2009), http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html. ... 13

Understanding Waivers of Discrimination Claims In Employee Severance Agreements, at 10
    (July 15, 2009) ......................................................................................................... II

## INTRODUCTION

In addition to directly prohibiting unlawful discrimination and retaliation in employment, Congress also authorized the Government to bring actions for injunctive and other appropriate equitable relief under § 707 of the Civil Rights Act of 1964, whenever any person is engaged in a pattern or practice of resistance to the full enjoyment of Title VII rights. By its plain language, § 707 is not limited to acts that are independently actionable as unlawful discrimination and retaliation. This is confirmed by a straightforward application of the rules of statutory interpretation, as well as by caselaw closely following the enactment of the Civil Rights Act. Moreover, § 707 is not limited to the substantive rights secured by Title VII, but also protects a person's rights to file a charge and communicate freely with the U.S. Equal Employment Opportunity Commission ("EEOC"). Where, as here, an employer is engaged in a pattern of conduct designed to deter its employees from fully exercising those rights, it is therefore engaged in resistance to the rights secured by Title VII. Such resistance systematically undermines the enforcement mechanisms established by Congress, and § 707 provides a remedy.

The Complaint alleges that Defendant CVS regularly imposes severance conditions that are intended to deter its employees from freely exercising their Title VII rights. This states a claim for relief under § 707, and CVS's motion to dismiss should be denied.

CVS's alternative request, for summary judgment for lack of pre-suit conciliation efforts, is also without merit. Conciliation is not required for this § 707(a) action.

Therefore, the EEOC respectfully requests that CVS's motion be denied in its entirety.

## BACKGROUND

The EEOC is the federal agency charged by Congress with the administration and enforcement of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §§ 2000e et seq. "Although the EEOC can secure specific relief . . . on behalf of discrimination victims, the

1

agency is guided by 'the overriding public interest in equal employment opportunity'" and "acts

also to vindicate the public interest in preventing employment discrimination." <u>General

Telephone v. EEOC</u>, 446 U.S. 318, 326 (1980); <u>see also</u> <u>EEOC v. Waffle House</u>, 534 U.S. 279,

296 (2002). "The EEOC's primary role is that of a law enforcement agency." <u>In re Bemis</u>,

279 F.3d 419, 420 (7th Cir. 2002). To enforce Title VII, the agency relies principally on charges

and information provided voluntarily by private individuals. The agency investigates and

resolves most cases without resort to subpoenas or litigation. <u>See</u> 42 U.S.C. §§ 2000e-4, e-5, e-

6, e-8, e-9.[1]

    As set forth further below, the EEOC's Complaint alleges that CVS routinely conditions

the receipt of certain employees' severance benefits on a severance agreement ("SA") that limits

the employees' rights to initiate proceedings at the EEOC and to freely assist and participate in

EEOC investigations. Complaint ¶¶ 7-11. The EEOC seeks injunctive relief under § 707(a).

## <u>ARGUMENT</u>

### I.   CVS'S SEVERANCE CONDITIONS CONSTITUTE RESISTANCE TO THE FULL ENJOYMENT OF RIGHTS SECURED BY TITLE VII

    When an employer regularly engages in resistance to the enjoyment of rights secured by

Title VII, § 707(a) authorizes an action for injunctive relief by the EEOC. Construed in the light

most favorable to the EEOC and drawing all possible inferences in the EEOC's favor,[2] the CVS

severance terms are a pattern of resistance to employees' rights to initiate, assist, or participate

fully in EEOC proceedings. Accordingly, the Complaint plausibly states a claim under § 707(a).

---

[1] <u>See also</u> EEOC enforcement and litigation statistics, www.eeoc.gov/eeoc/statistics/enforcement/all.cfm; www.eeoc.gov/eeoc/statistics/enforcement/litigation.cfm. In opposing Defendant's motion to dismiss, the EEOC may assert and rely on additional facts in its brief that are not included in the complaint, to support its claim and to show that it is plausible, as long as the additional allegations are consistent with the complaint. By doing so, the EEOC does not intend that the Court convert Defendant's motion to a motion for summary judgment. <u>Geinosky v. City of Chicago</u>, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[2] <u>See</u> <u>Park v. Indiana Univ. Sch. of Dentistry</u>, 692 F.3d 828, 830 (7th Cir. 2012) (dismissal standard).

2

**A. Section 707(a) Authorizes Injunctive Relief Whenever Any Person Is Engaged in a Pattern or Practice of Resistance to the Full Enjoyment of Title VII Rights**

In addition to prohibiting discrimination and retaliation in §§ 703-704 (42 U.S.C. §§ 2000e-2, e-3) and authorizing the EEOC and private litigants to seek relief for such unlawful employment practices under § 706 (42 U.S.C. § 2000e-5), Congress separately authorized the EEOC to file an action seeking injunctive relief under § 707(a) "[w]henever" the EEOC:

> has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter [Title VII], and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described....

42 U.S.C. § 2000e-6(a).[3]

To state a claim under this provision, it therefore is sufficient that the Government's complaint:  (i) identify a right secured by Title VII, (ii) allege conduct that is intended to resist the full exercise or enjoyment of that right, and (iii) allege that the Defendant has engaged in that conduct regularly, rather than merely on an isolated occasion.

While a pattern or practice of unlawful discrimination will certainly satisfy this standard, and while attacking such a pattern of discrimination is undoubtedly the most familiar application of § 707, the statute is not confined to that application.  First, the "rights secured" by Title VII are not limited to the substantive rights to be free from discrimination because of race, color, religion, sex, and national origin, but also include rights to file charges and to assist and participate in Title VII investigations and other proceedings.  Second, § 707(a) is addressed

---

[3] As originally enacted, § 707 conferred this authority upon the Attorney General exclusively, and § 707(a) continues to refer to "the Attorney General."  However, in 1972, Congress amended the statute to include § 707(c), which provides that "the functions of the Attorney General under this section shall be transferred to the Commission."  See 42 U.S.C. § 2000e-6(c).  In 1978 a Presidential Reorganization Plan clarified that with respect to state and local government employers the Attorney General retains the authority to initiate pattern or practice actions under § 707.  See Reorg. Plan No. 1 of 1978 § 5, 43 F.R. 19807, 92 Stat. 3781.  Thus, other than with respect to state or local government entities, the EEOC exercises the suit authority granted by § 707.

broadly to a "pattern or practice of resistance," not simply a "pattern or practice of violating Title VII," as CVS incorrectly states.[4] CVS's attempt to read "resistance" out of the statute is contrary to the plain language of § 707 and basic rules of statutory construction.[5]

### i. Agency access rights are within the scope of § 707(a)

Section 707(a) encompasses resistance to "the *full* enjoyment of *any* of the rights secured by" Title VII. See 42 U.S.C. § 2000e-6(a) (emphases added). This includes the right to file charges and to engage in EEOC proceedings. The statute secures these rights by, among other things, prohibiting employers from retaliating against individuals who exercise them. See 42 U.S.C. § 2000e-3; see also Robinson v. Shell Oil Co., 519 U.S. 337, 484 (1997) (purpose of antiretaliation provisions of Title VII is to "maintain unfettered access to statutory remedial mechanisms"). The protection of such rights is essential to Title VII, which "depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 67 (2006). Therefore, the rights to agency access are rights secured by Title VII and so are within the scope of § 707(a).

**The right to file a charge**

Title VII provides for the filing of charges of discrimination with the EEOC by an aggrieved person or by others, see 42 U.S.C. § 2000e-5(b), and secures that right by prohibiting discrimination against an employee "because he has made a charge," see 42 U.S.C. § 2000e-3(a).

Courts have long recognized that filing a charge is a right — and one that cannot validly be waived, since such a waiver is contrary to public policy: "Allowing the filing of charges to be

---

[4] See CVS Memorandum in Support [Dkt. 16] (hereafter "CVS Br.") at 1 (internal quotations omitted).

[5] Therefore, to the extent the Amicus suggests the EEOC must demonstrate that severance conditions constitute retaliation under § 704, it is incorrect. Amicus Br. at 10. If CVS took action against an employee because he engaged in protected activity purportedly barred by the severance terms, that would certainly constitute actionable retaliation under § 704. However, when an employer is engaged in a pattern of conduct designed to deter employees from exercising such rights in the first place, the EEOC need not demonstrate that retaliation has occurred in order to seek injunctive relief under § 707(a).

obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws." EEOC v. Cosmair, 821 F.2d 1085, 1090 (5th Cir. 1987) (waiver of the "right to file a charge" is void as against public policy) (citing EEOC v. Shell Oil Co., 466 U.S. 54, 69 (1984); Pettway v. American Cast Iron Pipe Co., 411 F.2d 998, 1005 (5th Cir.1969)); see also EEOC v. Frank's Nursery & Crafts, 177 F.3d 448, 456 (6th Cir. 1999). "The EEOC depends on the filing of charges to notify it of possible discrimination. A charge not only informs the EEOC of discrimination against the employee who files the charge or on whose behalf it is filed, but also may identify other unlawful company actions." Cosmair, 821 F.2d at 1090.

**The right to assist or participate in any manner in an EEOC investigation**

Title VII protects the right to "testif[y], assist[], or participate[] *in any manner* in an investigation [or] proceeding" under Title VII. See 42 U.S.C. § 2000e-3(a) (emphasis added).

As a natural corollary, courts have found limitations on an employee's ability to assist the EEOC with an investigation to be void as contrary to public policy. "Clearly, if victims of or witnesses to [discrimination] are unable to approach the EEOC or even to answer its questions, the investigatory powers that Congress conferred would be sharply curtailed and the efficacy of investigations would be severely hampered." EEOC v. Astra USA, 94 F.3d 738, 744 (1st Cir. 1996) (enjoining employer from enforcing non-assistance covenants). The Supreme Court has emphasized the underlying public policy: "It is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." Shell Oil Co., 466 U.S. at 69.

That the EEOC could undertake special efforts to overcome such non-assistance provisions — such as through the enforcement of investigative subpoenas — does not make those provisions valid. "It would be most peculiar to insist that the EEOC resort to its subpoena power when public policy so clearly favors the free flow of information between victims of

harassment and the agency entrusted with righting the wrongs inflicted upon them," and it would "significantly increase the time and expense" of an investigation. Astra, 94 F.3d at 745 (rejecting contention that witnesses "should speak only when spoken to"). As noted above, the right conferred by Title VII is to assist or participate in Title VII proceedings "in any manner," see 42 U.S.C. § 2000e-3(a), not merely in the manner prescribed by an employer.

Therefore, these rights to agency access, indispensible to the enforcement mechanisms chosen by Congress, are rights secured by Title VII and so are within the scope of § 707(a).

> ii. **"Resistance" includes conduct that would deter a reasonable person from fully exercising Title VII rights and is not limited to already-prohibited acts of discrimination and retaliation**

"Resistance" to the full enjoyment of Title VII's rights encompasses conduct that would deter a reasonable person from freely and fully exercising those rights. This conclusion flows naturally from the plain meaning of the words chosen by Congress, the rules of statutory construction, and caselaw that closely followed the passage of the Civil Rights Act of 1964. The standard for "resistance" should be objective, as the Supreme Court has found such a standard both administrable and appropriate for protecting rights to agency access under Title VII.

The Supreme Court has explained that "[t]he 'pattern or practice' language in § 707(a) of Title VII was not intended as a term of art, and the words reflect only their usual meaning." Int'l Bhd. of Teamsters v. U.S., 431 U.S. 324, 336 n.16 (1977). The language of § 707(a) is plain and unqualified: It refers to "resistance" to the "full enjoyment" of Title VII rights. The usual meaning of the word "resist" includes "to exert oneself so as to counteract or defeat" something. See, e.g., Merriam-Webster's Collegiate Dictionary 996 (10th ed. 1999), http://www.merriam-webster.com/dictionary/resist.[6] Thus resistance to the full enjoyment of a right should simply be

---

[6] see also http://www.merriam-webster.com/dictionary/resistance ("resistance" is, among other things, an "effort made to stop or to fight against someone or something.")

understood to refer to an effort to keep an employee from exercising that right.

This plain language reading of "resistance" is consistent with the objectives of Title VII as a whole. The Supreme Court has explained that one purpose of the statute is "[m]aintaining unfettered access to statutory remedial mechanisms." See Robinson, 519 U.S. at 346; see also Burlington, 548 U.S. at 64. Noting the "anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status," the Court stated that the anti-retaliation provision (§ 704) "seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Id. at 63. Therefore, conduct that is designed to prevent such unfettered access to the statute's remedial mechanisms is fairly described as resistance to the full enjoyment of rights secured by Title VII.

In arguing that § 707(a) instead refers exclusively to "*actual, repeated discrimination or retaliation*" that is already covered by §§ 703-704, CVS Br. at 11 (emphasis in original), CVS thus fails to give the words in § 707(a) their usual meaning. But Congress did not use terms of art here: "Unlawful employment practice" has a precise meaning under Title VII and is defined in §§ 703-704. When Congress wanted to refer to "unlawful employment practices" in Title VII, it did so. Section 706, for example, refers to the procedures by which the EEOC and others may address "unlawful employment practices." See § 2000e-5. Had Congress wanted § 707(a) to refer to a pattern or practice of "unlawful employment practices," it presumably would have used that phrase in § 707(a). But it did not.

Moreover, when Congress meant to refer to "a pattern or practice of *discrimination*" in the Civil Rights Act, it used that phrase. See 42 U.S.C. § 2000e-6(e) (charges alleging a "pattern or practice of discrimination" to be processed under § 706 procedures); 42 U.S.C. § 1971(e), (g)

(authorizing suit to combat "pattern or practice of discrimination" in voting rights). In short, CVS invites the Court to give something other than the usual meaning to "resistance" and treat § 707(a) as if it referred more narrowly to "unlawful employment practices" or "discrimination."

That invitation conflicts with well-accepted rules of statutory construction. The Supreme Court and the Seventh Circuit have stressed that Congress's "'special care in drawing so precise a statutory scheme' as Title VII 'makes it incorrect to infer that Congress meant anything other than what the text does say.'" See EEOC v. Mach Mining, 738 F.3d 171, 174 (7th Cir. 2013) (quoting Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2530 (2013)).

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. U.S., 464 U.S. 16, 23 (1983). In Russello, the Supreme Court held that a forfeiture provision of the RICO statute was not limited by narrower language in other forfeiture provisions of the same act. "The short answer is that Congress did not write the statute that way." Id. (internal citations omitted); see also Burlington, 548 U.S. at 62-63. The Supreme Court concluded that differences in wording within the same statute cannot simply be presumed to be meaningless: "We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." Russello, 464 U.S. at 23.

Likewise, the Court should refrain here from concluding that the differing language in § 707(a) ("resistance") and § 706 ("unlawful employment practice") has the same meaning. CVS's argument treats § 707(a)'s reference to "resistance" as a drafting error. On this reading, the Court would have to conclude that Congress in fact made this error repeatedly: Title II, the Act's public accommodations title, also authorizes injunctive relief to stop "a pattern or practice

8

of resistance to the full enjoyment of any of the rights" under that title. 42 U.S.C. § 2000a-5(a).

Cases decided shortly after the enactment of these statutory provisions confirm that they were understood to reach conduct beyond that already prohibited by other provisions of the Civil Rights Act. In U.S. v. Gulf-State Theaters, et al., the court enjoined a private individual under the Title II resistance provision, barring him from "urging, advocating, recommending, establishing, or continuing a policy of noncompliance with the Act" in movie theaters, many of which he did not own or control. See 256 F. Supp. 549, 557-58 (N.D. Miss. 1966); see also U.S. v. Sampson, 256 F. Supp. 470, 474 & n.6 (N.D. Miss. 1966) (finding no resistance by public officials to Title II rights, but noting that such relief "of course" could be sought under § 2000a-5 in the future, "should the need arise"). In U.S. v. Original Knights of the Ku Klux Klan, a court relying on § 707(a) enjoined private individuals from engaging in a pattern of threats and violence intended to (among other things) deter blacks from seeking employment and deter employers from hiring them. 250 F. Supp. 330, 356 (N.D. Miss. 1966). "Such acts not only deter Negroes but intimidate employers who might otherwise wish to comply with the law but fear retaliation and economic loss." Id. The Third Circuit has likewise explained that § 707(a) permits "prophylactic relief" from a policy that "endangered" Title VII rights, even if the defendant was "not ... the employer of the employees whose Title VII rights are endangered." U.S. v. Board of Educ. for School Dist. of Philadelphia, 911 F.2d 882, 891-93 (3d Cir. 1990).

In each of these cases, some or all of the defendants were not employers or operators of public accommodations. The acts by non-employers that were found to be a pattern of resistance to Title VII rights in Original Knights were plainly not "unlawful employment practices" within the meaning of §§ 703-704. These cases illustrate that CVS's narrow reading of "resistance" as duplicating unlawful conduct already prohibited by §§ 703-704 lacks judicial support.

The focus in Original Knights on whether a pattern of resistance would deter people from exercising their rights, 250 F. Supp. at 356, is particularly apt in the context of rights to agency access. The Supreme Court has held that to effectively protect such rights, the anti-retaliation provision (§ 704) covers actions that "are likely 'to deter victims of discrimination from complaining to the EEOC'" or "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." See Burlington, 548 U.S. at 68; see also Thompson v. North American Stainless, 131 S.Ct. 863, 868 (2011). The standard is objective reasonableness. Such a standard "is judicially administrable" and "avoids uncertainties and unfair discrepancies" of a subjective standard. See Burlington, 548 U.S. at 68-69. When § 707(a) is used to protect the same rights, what constitutes "resistance" logically should be judged by the same standard.

Therefore, conduct constitutes resistance under § 707(a) if it would deter a reasonable person from full enjoyment of a right secured by Title VII.

### iii.    Cases cited by CVS do not address the scope of "resistance" under § 707

Although CVS says that caselaw "confirms" its narrow construction of § 707, CVS Br. at 12, none of the cases CVS cites considers this question. CVS conflates two different uses of the phrase "pattern or practice": First, the phrase refers to type of *claim*, authorized by § 707(a), that only the Government may bring. See 42 U.S.C. § 2000e-6(a).[7] Second, it also refers to a *method of proof* that may be utilized by any plaintiff, including private plaintiffs and the EEOC, in any appropriate Title VII case. See Franks v. Bowman Transp., 424 U.S. 747, 772 (1976) (pattern or

---

[7] CVS seizes on the wording of a remark buried in the middle of the EEOC's appeal brief in an unrelated case, that "'pattern or practice' is an evidentiary framework, not a 'claim.'" Brief of EEOC, EEOC v. The Geo Group, No. 13-16292, at 40 (9th Cir. 2014). CVS gives this remark a meaning it does not have by presenting it to the Court without any context: The relevant passage of the Geo appeal brief discusses a specific § 706 case (EEOC v. Bruno's Rest., 13 F.3d 285 (9th Cir. 1993)) in which the EEOC relied on the pattern or practice method of proof. In that context, it was entirely correct that "pattern or practice" referred to an evidentiary framework, not to a claim under § 707. The brief does not address the meaning of "resistance," that question is not at issue in Geo, and CVS is wrong to suggest otherwise.

practice method of proof used by private plaintiffs in § 706 case); Jefferson v. Ingersoll Int'l, 195

F.3d 894, 899 (7th Cir. 1999) (method of proof used by EEOC in § 706 case).[8] Indeed, a pattern-

or-practice method of proof may be used even in discrimination cases brought under statutes that

have no analog to § 707. See, e.g., Aliotta v. Bair, 614 F.3d 556, 562 (D.C. Cir. 2010) (method

of proof available under ADEA). Thus to the extent that CVS quotes cases in which *private*

plaintiffs or the Government used a pattern-or-practice framework under §706, those cases

cannot contain any holding about the meaning of "resistance" under § 707.[9]

CVS also cites cases that state — correctly — that § 707(a) is an avenue for addressing a

pattern or practice of "discrimination" or "unlawful employment practices." CVS Br. at 12-14.

CVS's error lies in inferring from these statements that § 707(a) addresses *only* unlawful

employment practices. The cases CVS cites do not consider, much less definitively address, the

scope of "resistance" under § 707, and CVS's claim that they do is incorrect.

To the contrary, as set forth above, the text, basic rules of statutory interpretation, and

caselaw all suggest that § 707 encompasses systematic efforts to frustrate the full enjoyment of

rights conferred by Title VII. Routinely deterring employees from exercising their right to

initiate, assist, and participate in investigations under Title VII not only poses a risk to the rights

of individuals, but inflicts a systemic harm on the Title VII enforcement mechanisms crafted by

---

[8] In Jefferson, the Seventh Circuit explained: "General Telephone, 446 U.S. at 322, holds that, as the plaintiff in a pattern-or-practice suit under § 706(f)(1) ..., the EEOC may seek classwide relief...." Id. Other circuits agree. See EEOC v Cintas, 699 F.3d 884, 895 (6th Cir. 2012), cert. denied, 134 S. Ct. 92 (2013); EEOC v. United Parcel Service, 860 F.2d 372 (10th Cir. 1988); EEOC v. Am. Nat'l Bank, 652 F.2d 1176, 1184, 1187-88 (4th Cir. 1981). No court of appeals has held that the EEOC cannot use a pattern-or-practice method of proof under § 706.

[9] CVS also cites Teamsters, in which the Government was indeed the plaintiff. According to CVS, its view follows from that case's statement that the Government "had to establish ... that racial discrimination was the [defendant's] standard operating procedure." See 431 U.S. at 336. However, that statement does not address the scope of "resistance." The point of the passage is to explain that pattern or practice actions do not reach "isolated or 'accidental' or sporadic" conduct, but rather only conduct that is "the regular rather than the unusual practice." Id. The reference to "racial discrimination" merely reflects the type of claim the Government brought in that case, not a limitation of § 707(a) to racial discrimination.

11

Congress. In administering and enforcing Title VII, the EEOC learns about potential

discrimination primarily through charges of discrimination filed by employees. Perhaps even

more importantly, the EEOC's investigation of such charges and other enforcement efforts

depend primarily on the voluntary cooperation of employees with relevant information.

In sum, Title VII secures the rights of employees to initiate, assist, and participate in

EEOC investigations, the enforcement system chosen by Congress relies on the exercise of such

rights, and § 707 safeguards that system from any pattern of conduct intended to undermine it.

### B. The CVS Severance Conditions Would Deter a Reasonable Person from Fully and Freely Exercising Title VII Rights to Agency Access

The EEOC's Complaint plausibly alleges that CVS's severance conditions are just such a

pattern of conduct.[10] A reasonable employee reading the document would be left with little

doubt that it limits the employee's right to initiate, assist, and participate in EEOC proceedings.

Moreover, the deterrent force of the document is evident: An employee running afoul of it may

be required to pay CVS's attorney fees and damages. SA ¶ 14. Read in the light most favorable

to the EEOC, the precise scope of the limitations on charge filing and assisting the EEOC would

be, at best, unclear to a reasonable employee. An employee who wants to exercise these rights

must weigh this uncertainty and the consequences of violating the severance conditions. That

risk calculus could deter any reasonable employee from talking to the EEOC.

### i. CVS's Severance Conditions Prohibit Charge Filing and Impose Limitations on Communications with the EEOC

**Charge Filing:** In the "General Release of Claims" provision of the severance document

(¶ 7), CVS requires that the employee release the company from all "charges" and refers to three

statutes the EEOC enforces. SA at ¶ 7. EEOC charges are also covered by the "covenant not to

---

[10] CVS does not dispute that the Complaint pleads conduct that was sufficiently routine to constitute a pattern or practice rather than an isolated or sporadic event. Indeed, CVS concedes that the agreement is "run-of-the-mill" and was a "standard severance agreement with terminated employees." CVS Br. at 1.

sue" provision (¶ 8), which prohibits employees from "initiat[ing] or fil[ing] ... a complaint or proceeding .... asserting any of the Released Claims." SA at ¶ 8. In its first sentence, that paragraph makes clear that it is concerned with, among other things, "complaint[s] ... of any kind ... in any federal... agency." SA at ¶ 8. And ¶ 8 forbids the employee from asserting any of the "Released Claims," a term that ¶ 7 expressly defines as including "charges."

Each of these paragraphs includes some language that CVS calls "clarifying," CVS Br. at 6 — a comment that, by itself, illustrates that the document's broad prohibitions plausibly require clarification. Moreover, the "clarifying" provisions do not actually undo the limitations on charge filing imposed by the other provisions. Nowhere do the severance terms explain that the release of "charges" (¶ 7) or the bar on initiating "proceedings" or filing "complaints ... in a[n] agency" or asserting "Released Claims" (¶ 8) do not apply to EEOC charges. Paragraph 7 contains the truism that the release does not limit "any rights that the Employee cannot lawfully waive," but makes no mention of the EEOC or Title VII.[11] By contrast, the same provision specifically states that the waiver of rights does not affect certain indemnification rights, rights under the severance agreement itself, and vested retirement and pension benefits. SA at ¶ 7.

CVS's clarifying provision in ¶ 8 does not address charge filing or initiating proceedings at all. It states that nothing in that paragraph is intended to interfere with an employee's right to "participate in a proceeding with ... a federal ... agency enforcing discrimination laws" and that "nothing in the Agreement prohibit[s] an employee from cooperating with any such agency in its investigation." However, contrary to CVS's contention, this clause *does not* state that an employee can file a charge. An employee could reasonably assume that "participation" is

---

[11] The severance agreement discussed in EEOC's guidance uses this language, but the scope of the waiver is fundamentally different from CVS's waiver. The waiver in the EEOC guidance does not prohibit filing "charges" or initiating an action in a federal agency or impose preconditions or limits on communication with the EEOC. See Understanding Waivers of Discrimination Claims in Employee Severance Agreements, Appendix B (2009), http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html.

different from filing a charge — indeed, Title VII itself makes that distinction. See 42 U.S.C.

§ 2000e-3(a) (protecting rights to "ma[ke] a charge... or participat[e]" in Title VII proceedings).

CVS contends that ¶ 8's covenant not to sue does not cover charge filing because it merely bars "initiat[ing] ... action[s] or proceedings" rather than expressly referring to "charges." This vaults formalism over substance. The purpose of a charge is precisely to "initiate [an] investigation." See Shell Oil, 466 U.S. at 86. A charge is, by definition, a document that "reasonably can be construed to request agency action." See Federal Express Corp. v. Holowecki, 552 U.S. 389, 404 (2008). Moreover, the covenant not to sue in ¶ 8 covers all "Released Claims," a term which by definition includes "charges." SA ¶ 7.

The severance conditions prohibit filing a charge with the EEOC.

**Communication**: The document also limits communications with the EEOC, whether to support one's own charge or in connection with other employees' claims. The "Non-Disclosure" provision (¶ 13(a)) bars sharing "confidential" information. It defines "confidential" to include "wages and benefit structures," "duties of [CVS] employees," "information pertaining to ... charges," "information that could affect [CVS's] business," and "personnel" — categories so broad that they cover essentially all information that could ever be relevant to an EEOC investigation. The "Non-Disparagement" provision (¶ 13(d)) prohibits "any statements that disparage the business or reputation of the Corporation, and/or any officer, director, or employee of the Corporation," categories that describe many comments by employees telling the EEOC about wrongdoing by company officials. The "Cooperation" provision (¶ 13(e)) requires the employee "to promptly notify the Company's General Counsel by telephone and in writing" if the employees receives any inquiry or request "relating to any ... administrative investigation."[12]

---

[12] On the other hand, part ii requires the employee to "cooperate fully" with CVS in "any ... proceeding or dispute" and to "make himself available to testify truthfully ... on behalf of the Company."

14

Again, CVS points to "clarifying" language that purportedly corrects these provisions, but the clarifications do not parallel what the provisions prohibit. Paragraph 8 offers the conclusory proviso that it does not limit the right to participate in a federal proceeding, but does not even attempt to reconcile that with all the other provisions of the document that in fact specifically limit that right. CVS's limits on disclosure of "confidential" information (e.g., any information concerning personnel or a charge) require the employee to seek CVS's "prior written authorization" to share such information (¶ 13(a)). Although other provisions permit employees to make "truthful statements or disclosures" (¶ 13(d)) or to "testify truthfully in any legal proceeding" (¶ 13(e)(i)), these provisions are limited to statements "required by law" or by court order. None of the provisions allows an employee to simply respond voluntarily to an inquiry from the EEOC in the absence of formal legal proceedings compelling a response — and even then only after notifying CVS so that it may take steps to prevent the employee from responding at all. See SA ¶ 13(e)(i). This restrictive regime is plainly contrary to the right to "assist[] or participate[] in any manner" in an EEOC investigation. See 42 U.S.C. § 2000e-3(a).

### ii. The Severance Conditions Have a Chilling Effect on the Exercise of Title VII Rights Because They Are Unreasonably Broad and Ambiguous

Even if a sophisticated contractual analysis of these provisions did support CVS's view that the severance conditions permit filing charges and freely assisting and participating in EEOC investigations, that does not mean the provisions comply with Title VII. The question is not, as the Amicus suggests, whether the severance conditions pass muster under "principles of contract law." Amicus Br. at 10. "Waivers of rights cannot be governed solely by principles of contract." Pierce v. Atchison Topeka & Santa Fe Ry. Co., 110 F.3d 431, 438 (7th Cir. 1997). Rather, as CVS itself correctly acknowledges, the question is whether the severance conditions "violate any part of Title VII." CVS Br. at 8. They do. With language that is, at best, overly

broad and ambiguous, the severance terms are actionable under § 707 because they have a chilling effect that would deter reasonable employees from fully exercising Title VII rights.

The Seventh Circuit has long recognized that the chilling effect of an employer's unreasonably broad or ambiguous rules may impermissibly deter employees from exercising their workplace rights. Section 8(a)(1) of the National Labor Relations Act ("NLRA") makes it unlawful to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the NLRA]." 29 U.S.C. § 158(a)(1). NLRA § 7 guarantees employees the right to form unions and to "engage in other concerted activities for the purpose of ... mutual aid or protection." 29 U.S.C. § 157. The Seventh Circuit held that a workplace rule prohibiting solicitation or distribution of any kind during working hours violates § 8(a)(1) because "the rule is susceptible to an overly broad interpretation that would unlawfully infringe employees' rights by prohibiting solicitation and distribution of union materials." See NLRB v. Rich's Precision Foundry, 667 F.2d 613, 622 (7th Cir. 1981).[13] Moreover, the court found that such a rule "may violate § 8(a)(1) even without a showing that it had been enforced because its mere existence may chill the exercise of § 7 rights." Id. Such overly broad rules restrain § 7 rights because they "might well have deterred their employees or they might have reasonably assumed that they acted at their peril." NLRB v. Gen. Thermodynamics, 670 F.2d 719, 721 (7th Cir. 1982). "[I]t is incumbent upon employers to use language that 'is not reasonably subject to an interpretation that would unlawfully affect the exercise of Section 7 rights.'" Brandeis Mach. & Supply Co. v. NLRB, 412 F.3d 822, 830-31 (7th Cir. 2005) (handbook inviting employees to report what it

---

[13] Requiring notice to an employer of communications from a government agency (as CVS requires) has been recognized as a condition that may restrain the exercise of protected NLRA rights. Dish Network Corp., S 16-CA-62433, 2012 WL 5564372 (N.L.R.B. Div. of Judges Nov. 14, 2012 (citing cases). An overly broad ADR program that listed the NLRA has been found to violate the right to file a charge, even though the document included language allowing the "fil[ing] of a charge or complaint with a government agency" and stating the employee was "free to cooperate with a government agency that might be investigating a charge or complaint." Supply Tech., LLC, 359 NLRB No. 38 (Dec. 14, 2012).

described as union "harassment" could be read to mean that union conduct could be punished).

If employees may be deterred from exercising § 7 rights by overly broad workplace rules, it is plausible that the same employees could likewise be deterred by severance terms that are susceptible to an interpretation that limits the full exercise of Title VII rights.

And in fact courts interpreting provisions such as CVS's have concluded that they do have a chilling effect on the exercise of Title VII rights.[14] For example, the First Circuit has enjoined the enforcement of settlement agreements requiring employees not to "'voluntarily provide any assistance' to persons asserting claims against the employer." See Astra, 94 F.3d at 741 n.2, 744-45. The court concluded that "settlement agreements that contain stipulations prohibiting cooperation with the EEOC could effectively thwart an agency investigation" and thus harms the public interest. See id. at 744. Another court found void as against public policy a settlement agreement provision that permitted an employee to testify adversely to the Company only with a subpoena and after notice to the company, as well as an employee handbook provision that required notice to the company of any inquiry from the government and threatened termination for failure to comply. See EEOC v. Morgan Stanley & Co., No. 01-cv-8421, 2002 WL 31108179, *1-*2 (S.D.N.Y. Sept. 20, 2002). The court concluded that these provisions "could have a chilling impact on claimants." See id. at *2.[15]

---

[14] The OWBPA waiver cases cited as authority by CVS are not to the contrary. They address language that is not analogous to CVS's. See CVS Br. at 6 (citing Romero v. Allstate Ins. Co., CIV.A. 01-3894, 2014 WL 796005, *64 (E.D. Pa. Feb. 27, 2014), opinion clarified on denial of reconsideration (Apr. 7, 2014) (upholding as consistent with OWBPA a release that did not mention administrative actions or include a covenant not to sue, both of which are included in CVS's severance conditions in ¶ 8)); Fribble v. Kimberly Clark, No.09-C-643, 2012 WL 589252, at *8, *9 (E.D. Wis. Feb. 22, 2012) (upholding as consistent with OWBPA a release where the release does not specifically list "charges" or reference "federal ... agency," or include a "covenant not sue," all of which appear in CVS's severance conditions).

[15] The OWBPA cases that are more analogous have found that the employers' waivers interfere with the rights to file a charge and participate in EEOC proceedings. In Rupert v. PPG Indus., Nos. Civ.A.07–705, 08–616, 2009 WL 596014 (W.D. Pa. Feb. 26, 2009), the court rejected a release agreement where the release provision covering "all claims of any kind" including the "ADEA" could be read in conjunction

The severance document's statement that an employee should seek legal advice before signing it (¶ 10) does not absolve CVS of responsibility for the effects of these confusing and contradictory statements. An employee may have no reason to anticipate, prior to signing the document, any communications with the EEOC. The agency may contact the employee well after the severance conditions have been imposed — for instance, in connection with the investigation of another employee's charge. Further, there is no reason to believe that an employee's ability to consult an attorney (something any employee is always free to do) somehow absolves an employer of responsibility for terms that are void against public policy.

The issue is not whether an attorney can find his way out of CVS's severance conditions but whether a reasonable employee can do so. It is plausible that a reasonable employee would understand the severance terms to prohibit charge filing and communicating with the EEOC.

### iii.    The Complaint Plausibly Alleges CVS's  Intent to Deter Protected Activity

The Complaint alleges that CVS's use of the severance conditions is intended to limit the full exercise of Title VII rights. Complaint ¶ 11. This is one of the overt purposes of the severance document:  ¶ 7 expressly refers to "Title VII of the Civil Rights Act of 1964" and purports to waive "charges," and related provisions bar employees from sharing (without the prior, written permission of CVS) information "pertaining to ... charges," as well as information about wages, benefits, employees' duties, and "personnel" generally — all information that EEOC routinely requests. CVS chose to include these limitations on protected activities in its document and CVS intended the consequences that would reasonably flow from its use of the

---

with the covenant not to sue to prohibit challenges to the validity of the release. Reading CVS's "Covenant Not to Sue" in ¶ 8 (which bars initiating an action asserting a "Released Claim") along with the definition of "Released Claims" in ¶ 7 (which covers "charges") creates the possibility that as in Rupert, "the average eligible participant reasonably could have understood that the Release barred a challenge." Id; see also Bogacz v. MTD Prods., 694 F. Supp. 2d 400 (W.D. Pa. 2010) (finding that a broad release of claims could be construed to cover an enforceability action in violation of OWBPA).

document with its departing employees. CVS Br. at 1. It is not as though the limitations are an inadvertent consequence of language in an agreement addressed to an unrelated topic. As the Amicus points out, severance terms such as CVS's are "*intended* to promote ... *private* resolution of employment disputes to the greatest extent possible" and to provide employers "finality." Amicus Br. at 1 (emphases added). That is to say, the point of such an agreement is to keep employment discrimination from coming to the attention of public agencies such as the EEOC.

In any event, it is at least plausible that CVS intended the limits that are set forth in its severance document, which is all that is required at this stage.

## II.   THE EEOC IS AUTHORIZED TO COMMENCE AN ACTION UNDER SECTION 707(A) WITHOUT A CHARGE OR CONCILIATION

Although the EEOC did attempt to settle this matter before filing suit,[16] conciliation efforts are not required for this § 707(a) action. The only prerequisite to a suit under § 707(a) is that the EEOC have "reasonable cause." 42 U.S.C. § 2000e-6(a); <u>see also</u> <u>U.S. v. Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers</u>, 438 F.2d 679, 681 (7th Cir. 1971). Section 706, by contrast, requires the EEOC to follow additional procedures before filing suit, including informal efforts to resolve a case through conciliation. 42 U.S.C. § 2000e-5(b); <u>see</u> <u>Mach Mining</u>, 738 F.3d at 174-75. While CVS attempts to meld §§ 706 and 707, they are distinct.

When Congress transferred § 707 suit authority from the Attorney General to the EEOC, "[i]t is clear that with the 1972 amendments Congress intended the EEOC to proceed in the same manner [as did the Attorney General]." <u>General Telephone</u>, 446 U.S. at 329; <u>see also</u> n.3, <u>supra</u>. The Attorney General's § 707 authority "did not depend upon the filing of a charge with the EEOC." <u>General Telephone</u>, 446 U.S. at 327. The Seventh Circuit has also acknowledged the EEOC's authority to proceed under § 707(a) without first using § 706 procedures. <u>See</u> <u>EEOC v.</u>

---

[16] <u>See</u> EEOC's Response to CVS's Rule 56.1 Statement, response to ¶ 11.

Harvey L. Walner & Assoc., 91 F.3d 963, 968 (7th Cir. 1996) ("Congress also transferred to EEOC authority previously vested in the Attorney General under Section 707 of Title VII to institute 'pattern or practice' lawsuits on its own initiative – i.e., without certain of the prerequisites to a civil action under 2000e-5(f)").[17]

Section 707(e) only requires that the EEOC act "in accordance with the procedures set forth in [§ 706]" when the EEOC "investigate[s] and act[s] on a charge of a pattern or practice of discrimination." Only the procedures set forth in § 706 require conciliation.

Here, conciliation is not required because this case does not fall under § 707(e)'s requirements. First, the Complaint does not rely on any charge as a jurisdictional basis, and CVS's attempt to explore whether the charge is the basis for the EEOC's reasonable cause belief is not a litigable issue. See EEOC v. Caterpillar, 409 F.3d 831 (7th Cir. 2005); Iron Workers, 438 F.2d at 681-82. Second, even if the EEOC learned of CVS's severance agreement through its investigation of the charge CVS cites, the charge attached to CVS's pleadings merely alleged individual sex and race discrimination and not a "pattern or practice" of discrimination. Thus, that charge is not within the scope of § 707(e). Finally, the Complaint does not allege discrimination at all. Therefore, § 707(e) does not apply, and conciliation is not required.

Accordingly, CVS's alternative motion for summary judgment should be denied.

---

[17] Other circuits have uniformly agreed. See Serrano & EEOC v. Cintas, 699 F.3d 884, 896 (6th Cir. 2012); EEOC v. Continental Oil Co., 548 F.2d 884, 890 (10th Cir. 1997); U.S. v. Fresno Unified Sch. Dist., 592 F.2d 1088, 1096 n.5 (9th Cir. 1979); U.S. v. Masonry Contractors Ass'n of Memphis, Inc., 497 F.2d 871, 875-76 (6th Cir. 1974); U.S. v. Allegheny-Ludlum Inds., 517 F.2d 826, 843 (5th Cir. 1975).

The cases CVS cites do not hold otherwise. CVS cites a Seventh Circuit opinion, EEOC v. United Air Lines, affirming a district court judgment, but the opinion does not even mention the issue of conciliation or other § 706 procedures. See 560 F.2d 224 (7th Cir. 1977). CVS's implication that the Seventh Circuit opined on these matters is incorrect. The quote CVS offers is from a decision of the district court and is dicta. The district court's holding was simply that where the EEOC was substituted for the Attorney General under § 707(d), the EEOC did *not* need to comply with the procedures of § 706. See No. 73 c 972, 1975 WL 194, *2 (N.D. Ill. June 26, 1975). EEOC v. Whirlpool Corp. is of no help to CVS either: it is a § 706, not a § 707 lawsuit. See 80 F.R.D. 10, 12 (N.D. Ind. 1978).

## I. SUR-REPLY TO THE ARGUMENTS OF THE AMICUS[i]

Amicus Retail Litigation Center ("RLC" or "Amicus") claims that EEOC's institution of this lawsuit violates due process because employers lacked prior notice of the EEOC's views about impermissible waivers. Due process considerations are not implicated here, and even if they were, the EEOC's views on these matters are longstanding.

The EEOC's claim against CVS is narrow and entirely consistent with longstanding public policy: Employees should not be led to believe that they cannot initiate, assist, and participate freely in EEOC investigations. The EEOC's complaint does not challenge the employee's personal release of his or her own claims for relief.

### A. The Law and EEOC's Guidance On Waivers and Releases Is Longstanding

RLC's invocation of the Due Process Clause is misplaced. Since the time the Act was passed, Title VII has protected employees' right to file charges and participate in EEOC investigations and proceedings. 42 U.S.C. § 2000e-3(a). Caselaw has long confirmed that these rights are not subject to waiver and that rules or agreements purporting to waive such rights could be enjoined or declared unenforceable. See Part I(A)(i), supra. CVS itself acknowledges that agreements purporting to waive such rights have long been considered void. CVS Br. at 10.

The EEOC has had guidance on the topic for nearly two decades. In its publicly available guidance published in 1997, the agency explained both that such waivers are void under Title VII and could violate the anti-retaliation provisions. See Enforcement Guidance on non-waivable employee rights under Equal Employment Opportunity Commission (EEOC) enforced statutes, No. 915.002 (April 10, 1997).[ii] That guidance articulated the same view that is asserted here: "Such agreements have a chilling effect on the willingness and ability of

---

[i] In accord with this Court's May 5, 2014 ruling, this section of the brief constitutes the EEOC's sur-reply to the new arguments raised by Amicus RLC and is consistent with the Court's five-page limit.

[ii] http://www.eeoc.gov/policy/docs/waiver.html.

individuals to come forward with information that may be of critical import to the EEOC as it seeks to advance the public interest in the elimination of unlawful employment discrimination" and thus are actionable. Id. at p. 4.

RLC points out that Older Work Benefits Protection Act ("OWBPA") contains specific standards for a release of ADEA claims, recognizing that "[n]o waiver agreement may affect the Commission's rights and responsibilities." 29 U.S.C. § 626(f)(4). But that has never been regarded as an indication that Title VII waivers may do so. In fact, the agency published further guidance concerning severance agreements in 2009 (well after OWPBA was enacted), explaining that for all types of discrimination, "an employer cannot lawfully limit your right to testify, assist, or participate in an investigation, hearing, or proceeding conducted by the EEOC or prevent you from filing a charge of discrimination with the agency." Understanding Waivers of Discrimination Claims In Employee Severance Agreements, at 10 (July 15, 2009).[iii] And the agency recently confirmed its commitment to these principles by identifying and publicly announcing that "preserving access to the legal system" is one of the agency's six strategic enforcement priorities in its Strategic Enforcement Plan.[iv]

## B. RLC's Contentions About "Standard Industry Practice" Are Misplaced

RLC alleges that CVS's severance conditions are typical of those in the industry. This factual contention is beyond the scope of the Complaint and so should play no role in the resolution of a motion to dismiss. Even if this contention were properly before the Court, neither Title VII nor caselaw makes "industry practice" a defense to violation of Title VII. If anything, this allegation illustrates precisely why this kind of claim is appropriate for resolution under § 707 and why injunctive relief is needed.

---

[iii] http://www.eeoc.gov/policy/docs/qanda_severance-agreements.html.

[iv] http://www.eeoc.gov/eeoc/plan/sep.cfm.

## C. This Action Is Consistent with the Public Policies Embodied by Title VII

Without the voluntary assistance and participation of employees, EEOC simply cannot perform its work as Congress envisioned. RLC argues that an employer's interest in "finality" somehow trumps this interest. However, most of RLC's discussion pertains to the resolution of a private individual's personal claim for relief, which is not the subject of this action. A private individual may not waive the public interest in enforcing the civil rights laws, however. An employer has no valid claim to cutting off the flow of information to the enforcement system established by Congress to implement Title VII. See § I(A)(i), supra.

Far from undermining voluntary and informal resolution disputes, Amicus Br. at 14, Title VII builds voluntary and informal dispute resolution into the EEOC's mission, and nearly all of the cases resolved by the EEOC are resolved informally and voluntarily, rather than by resort to litigation. See EEOC charge statistics, www.eeoc.gov/eeoc/statistics/enforcement/all.cfm; EEOC litigation statistics, www.eeoc.gov/eeoc/statistics/enforcement/litigation.cfm. This system depends, however, upon the free flow of information, as Congress and the courts have repeatedly recognized.

While individuals could seek to have the provisions declared void or unenforceable, EEOC does not stand in their shoes, see Waffle House, but rather is authorized to act independently under § 707(a) when it identifies a pattern or practice of resistance, particularly when the EEOC believes the pattern or practice may undermine its ability to carry out its enforcement obligations under Title VII. 534 U.S. at 297-98. Title VII "clearly makes the EEOC the master of its own case." Id. at 291-22.

The severance agreement at issue was written by lawyers to be understood, at best, by lawyers, but to be signed with potentially profound consequence by non-lawyer employees and on the EEOC's execution of its law enforcement mission. The EEOC alleged facts sufficient to

demonstrate that CVS has engaged "in a pattern or practice of resistance to the full enjoyment of any rights secured" by Title VII. See 42 U.S.C. § 2000e-6(a). RLC's motion, however, completely disregards the statutory "resistance" language. Because of the significant public interest in free employee communication with the EEOC, waivers of or preconditions to the right to file a charge and communicate with the agency are void, and a pattern of imposing such unenforceable limitations on employees is actionable as resistance to the rights protected by Title VII.

## CONCLUSION

For the foregoing reasons, CVS's motion should be denied in its entirety.

Dated: June 6, 2014

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

For the UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
312-869-8000

/s/ John C. Hendrickson
JOHN C. HENDRICKSON
Regional Attorney

/s/ Greg Gochanour
GREGORY GOCHANOUR
Supervisory Trial Attorney

LAURA R. FELDMAN
Trial Attorney

/s/ Deborah Lois Hamilton
DEBORAH LOIS HAMILTON
Trial Attorney

/s/ Justin Mulaire
JUSTIN MULAIRE
Trial Attorney