**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

          Plaintiff,

   v.

CVS PHARMACY, INC.,

         Defendant.

No. 1:14-CV-863-JWD

**REPLY MEMORANDUM**

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT CVS PHARMACY, INC.'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Eric Dreiband (Illinois Bar No. 6210456)
Yaakov Roth (*admitted pro hac vice*)
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for CVS Pharmacy, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.   THE CHALLENGED SEVERANCE AGREEMENT CLEARLY AUTHORIZES
     PARTICIPATION IN EEOC PROCEEDINGS AND INVESTIGATIONS .................... 3

II.  IN ANY EVENT, USING AN AMBIGUOUS SEVERANCE AGREEMENT
     DOES NOT CONSTITUTE A "PATTERN OR PRACTICE" OF
     INTENTIONALLY RESISTING THE RIGHTS SECURED BY TITLE VII ................. 7

     A.   The EEOC Cites No Case or Other Legal Authority Supporting Its Broad,
          Unbounded Construction of Title VII's Pattern-or-Practice Provision ................. 8

     B.   The Text, Structure, and Legislative History of Title VII Further Refute
          the EEOC's Novel Understanding of Its Pattern-or-Practice Authority ............. 14

     C.   At Minimum, the EEOC Has Not Plausibly Alleged a Forbidden Intent To
          Interfere with EEOC Charge-Filing or Investigations ......................................... 16

III. THE EEOC VIOLATED TITLE VII AND ITS OWN REGULATIONS WHEN
     IT FILED THE COMPLAINT WITHOUT ATTEMPTING TO CONCILIATE .......... 18

CONCLUSION ..................................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Aeroground, Inc. v. CenterPoint Props. Trust,*
  738 F.3d 810 (7th Cir. 2013) .............................................................................5

*Alexander v. Gardner-Denver Co.,*
  415 U.S. 36 (1974).............................................................................................17

*Arbaugh v. Y & H Corp.,*
  546 U.S. 500 (2006)...........................................................................................8

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................................7

*Atkins v. City of Chicago,*
  631 F.3d 823 (7th Cir. 2011) .......................................................................7, 16

*Bogacz v. MTD Prods., Inc.,*
  694 F. Supp. 2d 400 (W.D. Pa. 2010).............................................................6, 7

*Brandeis Mach. & Supply Co. v. NLRB,*
  412 F.3d 822 (7th Cir. 2005) ...........................................................................12

*Burlington Indus. v. Ellerth,*
  524 U.S. 742 (1998)...........................................................................................20

*Burlington N. & Santa Fe Ry. v. White,*
  548 U.S. 53 (2006).............................................................................................11

*Cooper v. Fed. Reserve Bank,*
  467 U.S. 867 (1984)...........................................................................................10

*Council 31, AFSCME, AFL-CIO v. Ward,*
  978 F.2d 373 (7th Cir. 1992) .........................................................................9, 10

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.,*
  555 U.S. 271 (2009)...........................................................................................4

*Dececco v. UPMC,*
  No. 12-272, 2014 U.S. Dist. LEXIS 29427 (W.D. Pa. Mar. 7, 2014) ....................11

*EEOC v. Astra USA, Inc.,*
  94 F.3d 738 (1st Cir. 1996).......................................................................6, 7, 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*EEOC v. Cognis Corp.,*
  No. 10-cv-2182, 2012 U.S. Dist. LEXIS 71870 (C.D. Ill. May 23, 2012) ............................11

*EEOC v. Cont'l Oil Co.,*
  548 F.2d 884 (10th Cir. 1977) ........................................................................................19

*EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.,*
  821 F.2d 1085 (5th Cir. 1987) ............................................................................4, 10, 14

*EEOC v. Harvey L. Walner & Assocs.,*
  91 F.3d 963 (7th Cir. 1996) ............................................................................................19

*EEOC v. Hiram Walker & Sons, Inc.,*
  768 F.2d 884 (7th Cir. 1985) ..........................................................................................17

*EEOC v. Mach Mining, LLC,*
  738 F.3d 171 (7th Cir. 2013) ..........................................................................................12

*EEOC v. Mitsubishi Motor Mfg. of Am.,*
  990 F. Supp. 1059 (C.D. Ill. 1998) ...................................................................................9

*EEOC v. Morgan Stanley & Co.,*
  No. 01-Civ-8421, 2002 U.S. Dist. LEXIS 17484 (S.D.N.Y. Sept. 20, 2002) .....................6, 7

*EEOC v. Nucletron Corp.,*
  563 F. Supp. 2d 592 (D. Md. 2008) ...............................................................................11

*EEOC v. Sears, Roebuck & Co.,*
  490 F. Supp. 1245 (M.D. Ala. 1980) ..............................................................................19

*EEOC v. Sears, Roebuck & Co.,*
  839 F.2d 302 (7th Cir. 1988) .......................................................................................9, 10

*EEOC v. Shell Oil Co.,*
  466 U.S. 54 (1984) .......................................................................................................8, 19

*EEOC v. SunDance Rehabilitation Corp.,*
  466 F.3d 490 (6th Cir. 2006) ..........................................................................................11

*EEOC v. United Air Lines,*
  No. 73-C-972, 1975 U.S. Dist. LEXIS 11689 (N.D. Ill. June 26, 1975).............................19

*EEOC v. U.S. Pipe & Foundry Co.,*
  375 F. Supp. 237 (N.D. Ala. 1974)..................................................................................20

## TABLE OF AUTHORITIES
(continued)

Page(s)

*EEOC v. Waffle House, Inc.*,
　534 U.S. 279 (2002)....................................................................................8, 10

*EEOC v. Watkins Motor Lines, Inc.*,
　553 F.3d 593 (7th Cir. 2009) ..............................................................................17

*EEOC v. Westvaco Corp.*,
　372 F. Supp. 985 (D. Md. 1974)...........................................................................20

*EEOC v. Whirlpool Corp.*,
　80 F.R.D. 10 (N.D. Ind. 1978)..............................................................................19

*General Tel. Co. v. EEOC*,
　446 U.S. 318 (1980)...............................................................................9, 18, 19

*Gross v. FBL Fin. Servs., Inc.*,
　557 U.S. 167 (2009)...........................................................................................7

*Int'l B'hd of Teamsters v. United States*,
　431 U.S. 324 (1977)...................................................................9, 10, 15

*Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*,
　478 U.S. 421 (1986).............................................................................................8

*NLRB v. Gen. Thermodynamics, Inc.*,
　670 F.2d 719 (7th Cir. 1982) ...............................................................................12

*Puffer v. Allstate Ins. Co.*,
　675 F.3d 709 (7th Cir. 2012) .........................................................................9, 10

*Ribble v. Kimberly-Clark Corp.*,
　No. 09-C-643, 2012 U.S. Dist. LEXIS 21822 (E.D. Wis. Feb. 22, 2012)............4, 7

*Robinson v. Shell Oil Co.*,
　519 U.S. 337 (1997).............................................................................................11

*Romero v. Allstate Ins. Co.*,
　Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS 32491 (E.D. Pa. Mar. 13,
　2014) .................................................................................................................11

*Rupert v. PPG Indus., Inc.*,
　No. 07-705, 2009 U.S. Dist. LEXIS 125743 (W.D. Pa. Feb. 11, 2009)..............6, 7

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Russello v. United States*,
   464 U.S. 16 (1983)...............................................................................................................4

*Serrano v. Cintas Corp.*,
   699 F.3d 884 (6th Cir. 2012) ..................................................................................9, 17, 19

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ............................................................................................16

*United States v. Bd. of Educ. for Sch. Dist. of Phila.*,
   911 F.2d 882 (3d Cir. 1990)...............................................................................................13

*United States v. Fresno Unified Sch. Dist.*,
   592 F.2d 1088 (9th Cir. 1979) ...........................................................................................19

*United States v. Gulf-State Theaters, Inc.*,
   256 F. Supp. 549 (N.D. Miss. 1966) (per curiam) .......................................................12, 13

*United States v. Masonry Contractors' Ass'n of Memphis, Inc.*,
   497 F.2d 871 (6th Cir. 1974) .............................................................................................19

*United States v. Original Knights of the Ku Klux Klan*,
   250 F. Supp. 330 (E.D. La. 1965) ...................................................................................12, 13

*United States v. Sampson*,
   256 F. Supp. 470 (N.D. Miss. 1966)................................................................................12, 13

*Utility Air Regulatory Grp. v. EPA*,
   No. 12-1146, 573 U.S. ___ (June 23, 2014) .......................................................................8

**STATUTES**

29 U.S.C. § 158...................................................................................................................11

29 U.S.C. § 626.....................................................................................................................6

42 U.S.C. § 2000e-2 (Civil Rights Act, § 703)........................................................... *passim*

42 U.S.C. § 2000e-3 (Civil Rights Act, § 704)........................................................... *passim*

42 U.S.C. § 2000e-5 (Civil Rights Act, § 706)........................................................... *passim*

42 U.S.C. § 2000e-6 (Civil Rights Act, § 707)........................................................... *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

OTHER AUTHORITIES

29 C.F.R. § 1601.24 ................................................................................................20

29 C.F.R. § 1625.23 ..................................................................................................6

110 Cong. Rec. 14,189 (1964) .................................................................................15

H.R. Rep. 92-238 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137 .................................15

S. Comm. on Labor & Public Welfare, 92d Cong., *Legislative History of the Equal
Employment Opportunity Act of 1972* (Feb. 16, 1972) .............................................15

http://www.justice.gov/crt/about/emp/overview.php........................................................9

http://www.merriam-webster.com/dictionary/participate................................................4

## <u>INTRODUCTION</u>

CVS Pharmacy demonstrated in its opening papers that its severance agreement expressly permits former employees to file EEOC charges and cooperate fully in EEOC proceedings. CVS Pharmacy also demonstrated that Title VII does not prohibit allegedly "ambiguous" severance agreements; rather, section 707 of the Civil Rights Act is a procedural mechanism that authorizes class action-style suits that attack systemic and pervasive forms of *discrimination* (not alleged here). Further, CVS Pharmacy explained that the EEOC must conduct confidential conciliation proceedings before it files suit, under both Title VII itself and the EEOC's own regulations.

The EEOC's response cites nothing that contradicts any of this. The EEOC attacks the Agreement by cherry-picking language out of context and trying to minimize its terms expressly authorizing former employees to participate in EEOC proceedings. The EEOC cites no case supporting this approach. The EEOC likewise cites no case supporting its unprecedented claim that section 707 forbids anything other than pervasive discrimination. Nor does the EEOC cite any case authorizing it to skip its mandatory pre-suit obligations or ignore its own regulations. The EEOC cites no authority because there is none. Its claim thus fails several times over.

I.      The EEOC fails to grapple with the fundamental hole in the premise of its claim. CVS Pharmacy's Agreement *expressly* and *specifically* says, in terms any employee would easily understand, that it does *not* "interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation." (Agreement, § 8.) Whatever ambiguities the EEOC claims to expose elsewhere in the Agreement do not call into question its clarity on the precise issue here: Former employees *may* "participate in" and "cooperat[e] with" with EEOC "proceeding[s]" and "investigation[s]." There is thus no basis to speculate, much less to allege plausibly, that former employees would

be chilled by this Agreement from talking to the EEOC. And indeed, the EEOC nowhere even *alleges* that *any* former employee has been so chilled. (In fact, the only record evidence is that one such employee, Tonia Ramos, had no apparent qualms about filing an EEOC charge.) For this reason alone, the EEOC's claim fails as a matter of law and must be dismissed.

II.     In any case, the law is clear that if an employer purports to use a contract to block employees from working with the EEOC, the remedy is to strike such provisions as contrary to public policy—not to hold the employer liable for violating Title VII. The EEOC cannot cite a *single case in the history of Title VII* that even suggests (much less holds) that the pattern-or-practice provision forbids any conduct that may "discourage" ex-employees from talking to the EEOC. To the contrary, every case has construed the provision, consistent with its text, structure, and history, as allowing the Government to sue those who repeatedly, intentionally engage in forbidden *discrimination*. Tellingly, the EEOC's "best" case is a 1965 district court decision involving Ku Klux Klan members who confessed to assaulting African-Americans to prevent them from exercising their Title VII rights to equal employment. That the EEOC believes use of an allegedly "unclear" severance contract is somehow remotely comparable to that quintessential, intentional, violent racial hatred is both legally outrageous and morally offensive.

III.     In the alternative, this Court should grant summary judgment to CVS Pharmacy because the EEOC failed to try to conciliate its claim before bringing suit. The EEOC openly admits that it did not conciliate, arguing instead that the conciliation duty does not apply to this sort of pattern-or-practice suit. Again, that is a revisionist position with zero legal authority to commend it. Congress intended the EEOC to try to conciliate *all* claims; the statute plainly so provides; and no court has ever held otherwise. And, in any case, the EEOC does not even try to explain how its conduct here can be squared with its own independently binding regulations.

2

## ARGUMENT

### I.  THE CHALLENGED SEVERANCE AGREEMENT CLEARLY AUTHORIZES PARTICIPATION IN EEOC PROCEEDINGS AND INVESTIGATIONS.

As CVS Pharmacy explained in its motion to dismiss, the threshold flaw in the EEOC's claim is that it rests on a false characterization of the severance agreement at issue.  (MTD 4-8.) The EEOC's response is to quote snippets of the Agreement out-of-context and simply assert without explanation that its provisions preserving former employees' rights vis-a-vis the EEOC are somehow insufficient or unclear.  They are not.  Any reasonable employee, whether or not sophisticated, would readily understand that the Agreement does not bar him from participating *in any way* in an EEOC proceeding or investigation.  The contrary premise of the EEOC's legal theory is implausible and speculative—and thus fails as a matter of law.

**1.**      The EEOC argues that sections 7 and 8 of the Agreement, read together, prohibit former employees from "initiat[ing] or fil[ing]" certain released claims, including "charges," not only in court but also in "any federal … agency."  (EEOC Br. 12-13.)  Standing alone, it claims, that language could be understood by signatories to prohibit their filing of EEOC charges.

That is precisely why, however, the Agreement then provides an express *carve-out* that stipulates otherwise.  As the EEOC concedes (EEOC Br. 13), the covenant-not-to-sue follows its broad language with a caveat: "[N]othing in this paragraph is intended to or shall interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation."  (Agreement, § 8.)  On its face, that caveat makes perfectly clear that when it comes to agencies enforcing discrimination laws (*e.g.*, the EEOC), the Agreement does *not* block participation in their proceedings or cooperation with their investigations.  This language squarely refutes the EEOC's construction.

The EEOC's *only* response to this dispositive provision is to complain that it "does not address charge filing" specifically, and so an employee supposedly might think that *participation* in EEOC proceedings is permissible but *filing a charge* is nevertheless prohibited. (EEOC Br. 13-14.) No reasonable employee would adopt such an implausible dichotomy. "Participate" is a term "of breadth." *Russello v. United States*, 464 U.S. 16, 21-22 (1983). It encompasses *any* manner in which an employee might "take part in" or "be involved with" an EEOC proceeding, http://www.merriam-webster.com/dictionary/participate. That obviously includes filing a charge of discrimination with that agency, which is ordinarily the first step in most EEOC investigations and proceedings and a classic form of "participation" therein. *See* 42 U.S.C. § 2000e-5(b).[1]

Despite inventing this highly formalistic distinction between "participating" in an EEOC proceeding versus "initiating" one, the EEOC rejects as "formalism" the further reasons why the Agreement does not ban charge-filing. (EEOC Br. 14.) For one, the covenant-not-to-sue forbids assertion of released claims only in a "complaint, claim, action or lawsuit"—not a "charge," even though the Agreement uses that term elsewhere. (Agreement §§ 7-8.) For another, the release expressly excludes "rights that Employee cannot lawfully waive." (Agreement § 7.) Since "an employee cannot waive the right to file a charge with the EEOC," *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1091 (5th Cir. 1987), courts hold that releases with such language "do not prohibit employees from filing EEOC charges." *Ribble v. Kimberly-Clark Corp.*, No. 09-C-643, 2012 U.S. Dist. LEXIS 21822, at *20-24 (E.D. Wis. Feb. 22, 2012).

---

[1] The EEOC suggests that *Title VII* distinguishes between filing a charge versus participating in a proceeding, because it prohibits retaliating against an employee "because he has *made a charge*, testified, assisted, or *participated in any manner* in an [EEOC] investigation, proceeding, or hearing," 42 U.S.C. § 2000e-3(a) (emphases added). (EEOC Br. 14.) But "participated in any manner" is just a broad catch-all, not a different category of conduct: Testifying, assisting, and filing a charge are *forms* of participation. Indeed, this clause is known as the "participation clause," because it broadly protects all participation in EEOC matters. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009).

Ultimately, the point is that whether viewed from the technical perspective of contract interpretation or the real-world perspective of a reasonable employee, the Agreement clearly affirms and preserves the right of its signatories to work in any manner with the EEOC.

**2.** The EEOC also contends that the Agreement "limits communications with the EEOC," through its general prohibitions on unauthorized disclosure of confidential information and disparagement of CVS Pharmacy. (EEOC Br. 14.) Again, however, the EEOC ignores the Agreement's specific and express statement that it does *not* "interfere with Employee's right to participate in a proceeding" before an anti-discrimination agency like the EEOC or "prohibit Employee from cooperating with any such agency in its investigation." (Agreement, § 8.)

The EEOC objects that this statement "does not even attempt to reconcile" itself with the non-disparagement and non-disclosure provisions, which allegedly "specifically limit that right." (EEOC Br. 15.) But, in fact, those provisions do not *specifically* limit the right to cooperate with the EEOC, which is exactly CVS Pharmacy's point: A basic rule of contract interpretation is that when a *general* provision appears to conflict with a *specific* provision, the latter governs. Thus, to the extent that the *general* non-disparagement and non-disclosure provisions might somehow appear to prevent an ex-employee from "cooperating with" the EEOC, the Agreement's *specific* statement preserving the latter right takes precedence, creating an exception to the broader rules. That is how apparently competing contractual terms are always "reconcile[d]." *See Aeroground, Inc. v. CenterPoint Props. Trust*, 738 F.3d 810, 816 (7th Cir. 2013) (reiterating that the "more specific provision of a contract governs where it arguably conflicts with a more general provision"). Nor is this some technical rule of construction that employees would not appreciate. *Nobody* would understand the Agreement's general non-disparagement and non-disclosure clauses to *completely nullify* the contract's clear approval of cooperating with the EEOC.

**3.** The EEOC cites four cases that supposedly involve "provisions such as CVS's" that courts construed to bar charge-filing. (EEOC Br. 17 & n.15.) None is remotely comparable and none determined that any agreement violated section 707 or any other part of Title VII.

Two of the cases involved agreements that everyone *agreed* barred cooperation with the EEOC; unlike CVS Pharmacy's Agreement, they contained no applicable carve-out. *See EEOC v. Astra USA, Inc.*, 94 F.3d 738, 742 (1st Cir. 1996) (employer "steadfastly maintain[ed] that employees who have signed settlement agreements may not volunteer any information to the [EEOC]"); *EEOC v. Morgan Stanley & Co.*, No. 01-Civ-8421, 2002 U.S. Dist. LEXIS 17484, at *4 (S.D.N.Y. Sept. 20, 2002) (employer "concede[d]" that agreement prevented employees from cooperating with the EEOC, unless and until they were served with formal subpoenas).

The other two cases are even further afield: They addressed whether releases under the Age Discrimination in Employment Act ("ADEA") were void under a regulation requiring such releases to preserve the right to challenge the release. 29 C.F.R. § 1625.23. In light of a specific statutory rule that ADEA releases must be "written in a manner calculated to be understood by … the average individual," 29 U.S.C. § 626(f)(1)(A), the courts held that the releases at issue, which were broadly worded and contained *no* applicable exception or carve-out, improperly suggested that signatories were barred from challenging the releases in court. *See Rupert v. PPG Indus., Inc.*, No. 07-705, 2009 U.S. Dist. LEXIS 125743, at *13-25 (W.D. Pa. Feb. 11, 2009); *Bogacz v. MTD Prods., Inc.*, 694 F. Supp. 2d 400, 404, 411 (W.D. Pa. 2010). These cases have absolutely nothing to do with EEOC charge-filing or with CVS Pharmacy's Agreement.

Indeed, if anything, these cases show why the EEOC's claim here is frivolous. *Astra* and *Morgan Stanley* involved undisputed charge-filing bans yet did *not* hold the employers liable for having "resisted" Title VII. Rather, they merely held the charge-filing provisions *unenforceable*,

6

as contrary to public policy. *See Astra*, 94 F.3d at 746; *Morgan Stanley*, 2002 U.S. Dist. LEXIS 17484, at *3. And *Rupert* and *Bogacz* subjected ADEA releases to rigorous scrutiny from the perspective of an average employee only because the ADEA and its regulations impose specific, concrete restrictions on such releases. By contrast, nothing in *Title VII* imposes such restrictions, or compels releases to "explicitly state[] that a signing employee retains the right to file a charge with the EEOC." *Ribble*, 2012 U.S. Dist. LEXIS 21822, at *24. As the Supreme Court has recently warned, such "textual differences between Title VII and the ADEA" must be respected by the courts. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 n.2 (2009).

*          *          *

Everyone agrees that CVS Pharmacy may condition its severance payments on releases, non-disclosure provisions, and non-disparagement rules, as virtually all severance agreements do. The EEOC's only objection is that those terms could be read too broadly, as to preclude former employees from working with the EEOC. But precisely to address that concern, CVS Pharmacy included in the Agreement a clear statement preserving signatories' rights to participate in EEOC proceedings and cooperate with EEOC investigations. That was the proper way to clarify this point, and no reasonable employee would—or is even alleged to have been—confused. The EEOC's contrary claim is baseless speculation, insufficient to survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

## II.   IN ANY EVENT, USING AN AMBIGUOUS SEVERANCE AGREEMENT DOES NOT CONSTITUTE A "PATTERN OR PRACTICE" OF INTENTIONALLY RESISTING THE RIGHTS SECURED BY TITLE VII.

The EEOC's claim also fails because, even if the Agreement could cause some former employees to erroneously believe that they could not work with the EEOC, that is not a basis to hold CVS Pharmacy liable for an intentional "pattern or practice" of "resistance" to Title VII. Such a pattern or practice arises only from a pattern of *discrimination*. That is how every court

to have considered the law since its enactment fifty years ago—plus the U.S. Department of Justice ("DOJ")—has described it. The EEOC's unprecedented contrary position has literally no support, and is contradicted by statutory text, structure, and history. Nor, in any case, could the statute's *intent* requirement be satisfied by allegations of a merely "ambiguous" contract.

###### A.    The EEOC Cites No Case or Other Legal Authority Supporting Its Broad, Unbounded Construction of Title VII's Pattern-or-Practice Provision.

If the pattern-or-practice provision truly gave the EEOC the broad power to enjoin any conduct that might interfere with its work, one would think that someone—over the half-century of the law's existence—would have noticed. Yet every court has in fact given the statute a far narrower scope, and the EEOC cannot cite *any* contrary decisions. "When an agency claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,' we typically greet its announcement with a measure of skepticism." *Utility Air Regulatory Grp. v. EPA*, No. 12-1146, 573 U.S. ___ (June 23, 2014).

**1.**    Courts invariably describe Title VII's pattern-or-practice provision as applying to repeated *discrimination*, as a class-action device for asserting violations of sections 703 and 704. They do not say that it applies to such repeat discrimination *or any otherwise-lawful conduct that might in theory deter employees from filing EEOC charges. See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 n.4 (2006) ("Title VII … authoriz[es] suits by the Government to enjoin 'pattern or practice' *discrimination.*"); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 286 (2002) ("[Title VII] authorized … actions by the Attorney General in cases involving a 'pattern or practice' of *discrimination.*"); *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 454 n.29 (1986) ("[T]he Attorney General [had] the power to institute suit in cases where there existed a pattern or practice of *discrimination.*"); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 56 (1984) ("Section 707(e) … authorizes the [EEOC] 'to investigate and act on a charge' that an employer has

engaged in 'a pattern or practice' of employment *discrimination*."); *General Tel. Co. v. EEOC*, 446 U.S. 318, 327 (1980) ("Prior to 1972, the only civil actions authorized … were actions by the Attorney General upon reasonable cause to suspect 'a pattern or practice' of *discrimination*."); *Int'l B'hd of Teamsters v. United States*, 431 U.S. 324, 360 (1977) (in a pattern-or-practice action, Government must "demonstrate that unlawful *discrimination* has been a regular procedure"); *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) ("Pattern-or-practice … represent[s] a theory of intentional *discrimination*."); *Council 31, AFSCME, AFL-CIO v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992) ("[A] 'pattern or practice' suit is a method of proving *discrimination*."); *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 308 (7th Cir. 1988) (EEOC must show "pattern or practice of *discrimination*"); *EEOC v. Mitsubishi Motor Mfg. of Am.*, 990 F. Supp. 1059, 1076 (C.D. Ill. 1998) ("[P]attern or practice cases target large scale, system-wide *discriminatory* practices …..") (all emphases added).  As the court explained in a case that the EEOC itself cites, "claims brought by the EEOC under § 707" are "limited to allegations of a pattern or practice of *discrimination*."  *Serrano v. Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012) (emphasis added).

Those uniform descriptions of Title VII's pattern-or-practice authority are also consistent with the interpretation of the U.S. Department of Justice, which explains that under "[s]ection 707 of Title VII, the Attorney General has authority to bring suit against a state or local government employer where there is reason to believe that a 'pattern or practice' *of discrimination* exists."  http://www.justice.gov/crt/about/emp/overview.php (emphasis added).

The EEOC submits that the courts and the Justice Department have simply missed that section 707's scope is broader than "discrimination," and have never "consider[ed]" the EEOC's new theory.  (EEOC Br. 11.)  Of course, that the EEOC's view conflicts with such a foundational and longstanding assumption about this fifty-year old legislation is a powerful strike *against* it.

The EEOC also tries to distinguish cases addressing use of the pattern-or-practice proof framework by private plaintiffs under section 706, as opposed to pattern-or-practice suits by the Government under section 707. (EEOC Br. 10-11.) But the Supreme Court has called it "plain that the elements of a prima facie pattern-or-practice case are the same in a private class action" as in "an action litigated on the merits by the Government as plaintiff under § 707(a)." *Cooper v. Fed. Reserve Bank*, 467 U.S. 867, 876 n.9 (1984). Anyway, as the plethora of cases cited above and all others decided over the last five decades show, courts understand pattern-or-practice suits to be class-action *discrimination* claims whether filed by private parties (as in *Puffer* and *Council 31*) or the Government (as in *Waffle House*, *General Telephone*, *Teamsters*, and *Sears*).

**2.** To give some legal cover to its stunning claim that one can engage in a "pattern or practice" under Title VII without *ever* discriminating, the EEOC cites a mix of inapposite cases, falling into four general categories. None of them remotely supports the EEOC's position.

**a.** The EEOC cites *EEOC v. Cosmair* and *EEOC v. Astra USA*, which it says recognized Title VII rights to file an EEOC charge and assist the EEOC with an investigation. (EEOC Br. 4-6.) Those cases do not help the EEOC, however, because they hold only that contract terms purporting to bar employees from engaging in those activities are *unenforceable* as contrary to public policy. *Cosmair*, 821 F.2d at 1090 (holding that charge-filing ban "is void as against public policy"); *Astra*, 94 F.3d at 745 ("[N]on-assistance covenants which prohibit communication with the EEOC are void as against public policy."). Neither case approves the far different proposition—advanced by the EEOC here—that an agreement barring charge-filing or cooperation with the EEOC *itself violates Title VII*. There is a significant and consequential difference between simply refusing to enforce an overbroad contract (as *Cosmair* and *Astra* did) versus holding an employer *affirmatively liable* for offering it to employees.

10

      **b.**     The EEOC also cites cases under Title VII's retaliation provision, section 704 of the Civil Rights Act (42 U.S.C. § 2000e-3). *See Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). (EEOC Br. 4, 7.) These cases explain that Congress enacted the retaliation provision to ensure that employees are not deterred from filing charges by fear that their employer could then punish them with impunity. Employers who retaliate because employees talked to the EEOC are thus liable under section 704.

      The retaliation cases do not help the EEOC either, because the EEOC *concedes* that CVS Pharmacy has not engaged in any retaliation. (EEOC Br. 4 n.5.) It must so concede, because the Sixth Circuit held in *EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490 (6th Cir. 2006), that even a clear charge-filing ban in a severance agreement does not constitute retaliation. Because no employee has engaged in protected activity and the employer has taken no adverse action, the inclusion of such a provision in a contract "does not make … offering that Agreement in and of itself *retaliatory*." *Id.* at 501. The EEOC does not dispute *SunDance*, which has been followed unanimously. *See EEOC v. Nucletron Corp.*, 563 F. Supp. 2d 592, 598 (D. Md. 2008); *EEOC v. Cognis Corp.*, No. 10-cv-2182, 2012 U.S. Dist. LEXIS 71870, at *20-21 (C.D. Ill. May 23, 2012); *Romero v. Allstate Ins. Co.*, Nos. 01-3894, 01-6764, 01-7042, 2014 U.S. Dist. LEXIS 32491, at *64 (E.D. Pa. Mar. 13, 2014); *see also Dececco v. UPMC*, No. 12-272, 2014 U.S. Dist. LEXIS 29427, at *130-67 (W.D. Pa. Mar. 7, 2014) (following *SunDance*; dismissing retaliation claim under ADEA; rejecting EEOC's contrary guidance). Yet the EEOC's broad construction of the pattern-or-practice provision would effectively reverse the holdings of all of those cases.

      **c.**     Next, the EEOC cites cases that apply the National Labor Relations Act ("NLRA"), which forbids employers to "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" by the Act, such as the right to form a union. 29 U.S.C.

§ 158(a)(1). (EEOC Br. 16.) An employer could violate that section of the NLRA by adopting workplace rules that are "reasonably subject to an interpretation" prohibiting union organizing activities. *Brandeis Mach. & Supply Co. v. NLRB*, 412 F.3d 822, 831 (7th Cir. 2005). These cases are irrelevant, because unlike the NLRA, Title VII does *not* prohibit any effort to "interfere with" employees' EEOC-related activities. As the Seventh Circuit recently warned, it is improper to import NLRA concepts into the Title VII context, given the differences between the two statutes. *See EEOC v. Mach Mining, LLC*, 738 F.3d 171, 176 (7th Cir. 2013).

Moreover, the NLRA does not require "proof of coercive intent" to establish a violation, *NLRB v. Gen. Thermodynamics, Inc.*, 670 F.2d 719, 721 (7th Cir. 1982), which is why even ambiguous workplace rules can constitute unlawful "interference" with union activity if they are likely to have the *effect* of deterring union organizing. Title VII's pattern-or-practice provision, however, does not target *effects*—only conduct "*intended* to deny the full exercise" of Title VII rights. 42 U.S.C. § 2000e-6(a) (emphasis added). The NLRA analogy fails for this reason too.

**d.** Finally, the EEOC cites three pattern-or-practice cases, decided by district courts in Mississippi and Louisiana in the 1960s. *United States v. Gulf-State Theaters, Inc.*, 256 F. Supp. 549 (N.D. Miss. 1966) (per curiam); *United States v. Sampson*, 256 F. Supp. 470 (N.D. Miss. 1966); *United States v. Original Knights of the Ku Klux Klan*, 250 F. Supp. 330 (E.D. La. 1965). Invocation of these cases is mystifying, as each involved blatant racial discrimination.

In *Gulf-State Theaters*, the Attorney General alleged a "pattern or practice" not under Title VII, but rather under Title II of the Civil Rights Act, which prohibits discrimination in public accommodations. *See* 42 U.S.C. § 2000a-5(a). The defendants, including two chains of movie theaters and an individual shareholder who "influences and may to a large extent control the policy of all theaters here involved," were "charged with maintaining a policy of refusing to

admit Negroes to the theaters because of their race." 256 F. Supp. at 551, 554. That was plainly *discrimination* forbidden by the Act—which, again, the EEOC does not allege here.

The EEOC observes that the individual defendant in *Gulf-State* was not the "employe[r] or operator[r]" of the theaters. (EEOC Br. 9.) He was enjoined because the court found that "the racial policy of the theaters flows largely from [him]," due to his ownership stake. 256 F. Supp. at 557. But that has nothing to do with this case: The issue here is whether CVS Pharmacy's severance agreement is unlawful, not whether CVS Pharmacy is a proper defendant.[2]

*Sampson* is another Title II case, in which the Attorney General alleged that the mayor and police of Greenwood conspired with "persons who perpetrated the assaults on Negro patrons of the theater … to deprive [them] of their rights to equal enjoyment of places of public accommodations." 256 F. Supp. at 473-74. Again, that case involved plain racial discrimination.

Finally, the *Original Knights* case was a suit against the KKK under the Equal Protection Clause, Voting Rights Act, and various sections of the Civil Rights Act. *See* 250 F. Supp. at 335. Among other things, the defendants "admit[ted] that they beat and threatened Negro pickets to prevent them from enjoying the right of equal employment opportunity." *Id.* at 356. The EEOC's belief that this decision somehow supports its claim that an allegedly unclear severance agreement constitutes a "pattern or practice" of "resistance" to Title VII rights is nothing short of incredible. Attacking African-Americans to stop them from obtaining jobs is exactly the type of systematic race discrimination that Congress wanted the Civil Rights Act to end. By contrast, Congress did not enact the Civil Rights Act to regulate severance agreements.

---

[2] For the same reason, the EEOC gains nothing from the Third Circuit's recognition that a pattern-or-practice claim could be stated against Pennsylvania based on an allegedly "discriminatory" law affecting public school teachers, even though Pennsylvania was "not … the employer of the employees" affected. *United States v. Bd. of Educ. for Sch. Dist. of Phila.*, 911 F.2d 882, 892 (3d Cir. 1990).

**B.    The Text, Structure, and Legislative History of Title VII Further Refute the EEOC's Novel Understanding of Its Pattern-or-Practice Authority.**

The EEOC's position is wrong not just as a matter of precedent, but also as a matter of first principles.  Title VII's text, structure, and history refute the theory that pattern-or-practice liability exists whenever employees may be discouraged from cooperating with the EEOC.

1.    The EEOC invokes the text of section 707, which allows suit to enjoin a pattern or practice of "resistance" to the "rights secured by" Title VII.  (EEOC Br. 3-8.)  Using an unclear severance agreement is "resistance," the EEOC argues, to "rights secured by" Title VII.

That is wrong.  *First*, as the EEOC correctly notes, to "resist" means to try "to counteract or defeat."  (EEOC Br. 6.)  But even on the EEOC's view, CVS Pharmacy's Agreement does not "defeat" an ex-employee's right to participate in an EEOC proceeding.  To the contrary, all agree that any contractual term purporting to prevent employees from working with the EEOC is *void and unenforceable*.  *Cosmair*, 821 F.2d at 1090.  *Second*, the rights "secured by" Title VII are the substantive guarantees to be free of discrimination, including discrimination for having engaged in protected activity—as specifically enumerated in the statute.  42 U.S.C. §§ 2000e-2, 2000e-3.  Again, however, the EEOC does not allege violation of those "rights."  It refers instead to the "rights" to file EEOC charges or cooperate with the EEOC, but Title VII protects those activities only through its retaliation provision (§ 2000e-3), not independently.  In short, in the context of Title VII's guarantee of equal employment opportunities, to "resist" the "rights secured by" Title VII means to *discriminate*—just as the cases uniformly recognize.

2.    The EEOC argues that its view is consistent with Title VII's structure, because the statute is concerned with "maintaining unfettered access to statutory remedial mechanisms," as by prohibiting retaliation against employees who participate in EEOC proceedings.  (EEOC Br. 7 (quoting *Robinson*, 519 U.S. at 346).)  But this cuts *against* the EEOC's construction of section

14

707.  Title VII includes a specific retaliation provision, section 704, that protects the right to file EEOC charges and otherwise participate in EEOC matters.  Yet the EEOC concedes that CVS Pharmacy has not violated that provision.  (EEOC Br. 4 n.5.)  *See supra* Part II.A.2.b.  It makes no sense to construe section 707 to forbid conduct that section 704, the provision that is meant to protect the precise rights that the EEOC claims to be protecting here, actually *permits*.

**3.**     Finally, the EEOC ignores section 707's legislative history, which the Supreme Court has used to construe the statute.  *Teamsters*, 431 U.S. at 336 n.16.  That history confirms that Congress contemplated pattern-or-practice suits as the equivalent of class actions to combat the worst, most widespread *discrimination*.  Section 707 was incorporated into the 1964 Act, which did not otherwise allow public enforcement of Title VII, because Senators insisted that the authorities needed some way to take remedial action "where [they] feel that there is a pattern of *discrimination*." 110 Cong. Rec. 14,189 (1964) (Sen. Pastore) (emphasis added).  Under section 707, the Attorney General could thus "institute suit whenever he has reasonable cause to believe that there is a pattern or practice of *discrimination*." *Id.* at 12,722 (Sen. Humphrey) (emphasis added).  And when Congress transferred pattern-or-practice authority to the EEOC in 1972, a House Committee described it as addressing a "deeply imbedded form of *discrimination*."  H.R. Rep. 92-238, at 14 (1971), *reprinted in* 1972 U.S.C.C.A.N. 2137, 2149 (emphasis added).  As one prominent Senator explained, a pattern-or-practice suit is "nothing but a broader version involving more parties in greater depth in terms of length of time and the prevalence of a given practice than an individual suit."  S. Comm. on Labor & Public Welfare, 92d Cong., *Legislative History of the Equal Employment Opportunity Act of 1972*, at 1590 (Feb. 16, 1972) (Sen. Javits). By contrast, the EEOC offers *no* legislative history for its radical notion that section 707 allows it to enjoin any non-discriminatory conduct that it worries might deter employees.

### C.   At Minimum, the EEOC Has Not Plausibly Alleged a Forbidden Intent To Interfere with EEOC Charge-Filing or Investigations.

In all events, the EEOC concedes that a pattern-or-practice exists only if the defendant "intend[s] to limit the full exercise of Title VII rights." (EEOC Br. 18.) But, here, the EEOC cannot plausibly allege such an intent. As the EEOC's brief makes clear, its theory is that the Agreement uses "ambiguous" language that would be "unclear" to ex-employees, potentially "deter[ring]" them from talking to the EEOC—even if the Agreement does not actually preclude them from doing so under "principles of contract law." (EEOC Br. 12, 15-16.) At most, this is an allegation about, as the EEOC itself admits, "the *effects*" of the Agreement. (EEOC Br. 18 (emphasis added).) But "effects" alone cannot state an *intentional* Title VII violation.

Rather, the EEOC must allege that CVS Pharmacy intentionally sought to deter contact with the EEOC. Given (i) the Agreement's stipulation *allowing* such contact, even if ambiguous; and (ii) its suggestion that employees "seek the advice of legal counsel" (Agreement, § 10), any allegation that CVS Pharmacy intentionally used unclear terms to confuse employees as part of a sinister plot to interfere with the EEOC is hardly better than a conspiracy theory. The point is not that advising employees to seek legal counsel "absolves" the employer of responsibility (EEOC Br. 18), but rather that it is implausible that an employer providing that advice is involved in an intentional scheme to trick employees about the contract's meaning. The EEOC's allegations are not a "story that holds together," and so cannot survive. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010); *see also Atkins*, 631 F.3d at 831-32 (allegations cannot be "unrealistic," or "contradicted" by "documents attached to [complaint]," or "ungrounded").

The EEOC responds that the Agreement specifically mentions Title VII claims. (EEOC Br. 18.) But there is nothing wrong with voluntary settlements that waive Title VII claims, as caselaw and the EEOC have long recognized. (*See* MTD 6.) Likewise, it is irrelevant that the

Agreement prohibits the disclosure of confidential information, including the sort that the EEOC "routinely requests." (EEOC Br. 18.) In both respects, the question is whether CVS Pharmacy intended those provisions to be *misread* by employees as prohibiting working with the EEOC, notwithstanding the Agreement's express contrary stipulation. That is facially implausible.

Finally, the EEOC notes that the Agreement is intended to promote "*private* resolution of employment disputes." (EEOC Br. 19.) True, but that is not the intent forbidden by Title VII. To the contrary, the Seventh Circuit has noted "Congress' express preference for settlement" in "Title VII cases." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (describing "[c]ooperation and voluntary compliance" as "preferred means" for combating discrimination). This argument is, however, a telling indication of the breadth of the EEOC's position: On its view, any conduct designed to promote private settlement of Title VII claims, *e.g.*, releases or arbitration clauses, could equally be said to reflect an unlawful "intent" to interfere with EEOC investigations and so be unlawful. (*See* MTD 14-15.) That would turn Title VII jurisprudence on its head.[3]

*      *      *

In sum, the EEOC's "authority to bring suit is *more limited* when it acts pursuant to § 707," *Serrano*, 699 F.3d at 894 (emphasis added), because that provision covers only the worst, most widespread, intentional discrimination. Yet the EEOC tries to invoke it here to challenge an allegedly unclear severance agreement that concededly does not discriminate against anybody and so would not support even an ordinary § 706 claim. Its theory thus fails as a matter of law.

---

[3] Moreover, private settlements do not preclude the EEOC from investigating discrimination or suing employers, so there is no basis for the EEOC's claim that the "point" of the Agreement is to "keep employment discrimination from coming to the attention of public agencies such as the EEOC." (EEOC Br. 19.) *See, e.g.*, *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 597 (7th Cir. 2009) (recognizing that "agency's powers are independent of any resolution between employer and employee").

### III.   THE EEOC VIOLATED TITLE VII AND ITS OWN REGULATIONS WHEN IT FILED THE COMPLAINT WITHOUT ATTEMPTING TO CONCILIATE.

The EEOC admits that it refused to participate in conciliation efforts before filing suit. (Resp. to SMF ¶ 11.)  The EEOC further admits that, when acting under section 706 of the Civil Rights Act, it must "follow additional procedures before filing suit, including informal efforts to resolve a case through conciliation." (EEOC Br. 19.)  Nonetheless, the EEOC insists that it need not conciliate in section 707 suits.  That position is textually indefensible.  *No* court has ever endorsed it; rather, the courts have unanimously determined that the EEOC has a pre-suit duty to conciliate.  The EEOC's position also flies in the face of Congress's manifest preference for resolving Title VII disputes *without* lawsuits; ignores the EEOC's own regulations; and violates CVS Pharmacy's absolute right to try to effectuate a confidential resolution of this case.

**1.**  The EEOC criticizes CVS Pharmacy for trying to "meld" section 706 (which requires conciliation) with section 707 (the pattern-or-practice provision).  (EEOC Br. 19.)  But it was *Congress* that procedurally "meld[ed]" them, when it transferred to the EEOC the power to "carry out" the Attorney General's section 707 functions "in accordance with subsections (d) and (e)."  42 U.S.C. § 2000e-6(c).  Subsection (e), in turn, allows the EEOC to "act on a charge of a pattern or practice of discrimination," and requires "[a]ll such actions" to be "conducted in accordance with the procedures set forth in [section 706]."  *Id.* § 2000e-6(e).  Hence the EEOC's concession in the Eighth Circuit *CRST* case—which it does not even try to square with its new position here—that it must comply with the conciliation duty in *all* cases.  (MTD 18.)

**2.**  None of the EEOC's cited cases support its argument.  The EEOC quotes *General Telephone* for the proposition that the EEOC can "proceed in the same manner" as the Attorney General, but the Court there was referring to the power to "br[ing] its suits in the name of the United States and without obtaining [class] certification under Rule 23," not the conciliation

obligation. *See* 446 U.S. at 329. As for *EEOC v. Harvey L. Walner & Associates*, 91 F.3d 963 (7th Cir. 1996), it said only that the EEOC may pursue a pattern-or-practice suit "on its own initiative," *id.* at 968—which means that it can proceed based on a charge filed by one of the EEOC's Commissioners. *See Shell Oil*, 466 U.S. at 62 ("[W]hen a Commissioner has reason to think that an employer has engaged in a 'pattern or practice' of discriminatory conduct, he may file a charge *on his own initiative*." (emphasis added)); 42 U.S.C. § 2000e-6(e) (charge may be filed by "member of the Commission"). That does not negate the statutory duty to conciliate.[4]

In contrast to the EEOC's spliced, out-of-context, and ultimately irrelevant quotes, CVS Pharmacy cited numerous cases squarely recognizing that section 706's procedures, including conciliation, extend to the EEOC's section 707 suits. (MTD 19.) The EEOC responds to just two. (EEOC Br. 20 n.17.) It dismisses as "dicta" the statement in *EEOC v. United Air Lines* that "[t]he [EEOC's] new authority under 707(c) … is required to be exercised in accordance with the procedures set forth in section 706(b), which includes efforts to conciliate." No. 73-C-972, 1975 U.S. Dist. LEXIS 11689, at *4-5 (N.D. Ill. June 26, 1975). And it urges this Court to ignore *EEOC v. Whirlpool Corp.*, which stated that "[s]ection 707 suits must now be preceded by investigation … and conciliation," 80 F.R.D. 10, 17 (N.D. Ind. 1978), because *Whirlpool* was a section 706 case. Both objections miss the point that courts have *uniformly* understood, for forty years, that conciliation extends to section 707 suits. Indeed, many courts have based holdings on that rule. *E.g.*, *EEOC v. Sears, Roebuck & Co.*, 490 F. Supp. 1245, 1256 (M.D. Ala. 1980) (dismissing because "conciliation is a condition precedent to an EEOC pattern or practice suit").

---

[4] In a footnote, the EEOC cites two other cases making the same irrelevant point that the EEOC may proceed under section 707 using a Commissioner's charge, "without first receiving a charge filed by an aggrieved individual." *Serrano*, 699 F.3d at 896; *see also EEOC v. Cont'l Oil Co.*, 548 F.2d 884, 890 (10th Cir. 1977). And it cites two cases filed by the *Attorney General*, who, unlike the EEOC, is *not* obliged by the statute to conciliate. *See United States v. Fresno Unified Sch. Dist.*, 592 F.2d 1088 (9th Cir. 1979); *United States v. Masonry Contractors' Ass'n of Memphis, Inc.*, 497 F.2d 871 (6th Cir. 1974).

**3.** In an effort to address section 707(e)'s requirement that the EEOC follow section 706 procedures when it "act[s] on a charge of a pattern or practice of discrimination," the EEOC makes the strange claim that this requirement is inapplicable because its Complaint "does not rely on any charge" and does not allege "discrimination." (EEOC Br. 20.) The EEOC cites no cases supporting this theory. Nor does it explain why Congress would have forced the EEOC to conciliate only if it happens to cite a charge in its Complaint, or only on "discrimination" claims. To the contrary, Congress's intent, across-the-board, was "to promote conciliation rather than litigation" of Title VII cases. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 764 (1998). Section 707(e) refers to "a pattern or practice of *discrimination*" because, as explained in Part II, that is what "pattern or practice" *means*—not to exclude other, undefined "patterns or practices." And it refers to action on a "charge" because, whether initiated by an aggrieved employee or by the Commission, that is how all EEOC investigations are triggered. *Shell Oil*, 466 U.S. at 62-65.

**4.** Finally, and in any event, the EEOC simply makes no effort whatsoever to square its refusal to conciliate with its own, binding regulations. Those regulations require the EEOC to conciliate *whenever* it finds "reasonable cause to believe that an unlawful employment practice has occurred or is occurring." 29 C.F.R. § 1601.24(a). Conciliation was therefore required here. (Compl. ¶ 3 (alleging that "unlawful employment practices were and are now being committed").) The EEOC's utter failure to comply with its own regulations—or even to attempt to justify that failure in its brief—is an egregious violation of CVS Pharmacy's rights, requiring dismissal of the Complaint. *EEOC v. Westvaco Corp.*, 372 F. Supp. 985, 992-94 (D. Md. 1974) (dismissing where EEOC "failed to comply with its own regulations" by not engaging in conciliation); *EEOC v. U.S. Pipe & Foundry Co.*, 375 F. Supp. 237, 246-48 (N.D. Ala. 1974) (same).

## CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

Dated:  July 7, 2014                                  Respectfully submitted,


                                                      */s/ Eric Dreiband*_____
                                                      Eric Dreiband (Illinois Bar No. 6210456)
                                                      Yaakov Roth (*admitted pro hac vice*)
                                                      JONES DAY
                                                      51 Louisiana Ave., N.W.
                                                      Washington, D.C. 20001-2113
                                                      Telephone:  (202) 879-3939
                                                      Facsimile:  (202) 626-1700

                                                      *Counsel for CVS Pharmacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 7th day of July, 2014.

_____*/s/ Eric S. Dreiband*_____
One of the Attorneys for CVS Pharmacy, Inc.