In the

# United States Court of Appeals

### For the Seventh Circuit



CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 14-3653

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

CVS PHARMACY, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
1:14-cv-00863 — **John W. Darrah**, *Judge*.

ARGUED OCTOBER 29, 2015 — DECIDED DECEMBER 17, 2015

Before FLAUM, MANION, and ROVNER, *Circuit Judges*.

FLAUM, *Circuit Judge*. This appeal arises out of an enforcement action brought by the Equal Employment Opportunity Commission ("EEOC") under Section 707(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6. The EEOC claims that CVS Pharmacy, Inc. ("CVS") is violating Title VII by offering a severance agreement that could deter terminated employees from filing charges with the EEOC or participating in EEOC proceedings. The district court grant-

ed summary judgment for CVS because it interpreted Title VII as requiring the EEOC to conciliate its claim before bringing a civil suit, and the EEOC had refused to engage in conciliation. The district court was also skeptical that an employer's decision to offer a severance agreement to terminated employees could serve as the basis for a "pattern or practice" suit under Title VII, without any allegation that the employer engaged in retaliatory or discriminatory employment practices. On appeal, the EEOC argues that Section 707(a) of Title VII gives it broad powers to sue without engaging in conciliation or even alleging that the employer engaged in discrimination. For the reasons that follow, we disagree with the EEOC and affirm the judgment of the district court.

## I. Background

In July 2011, CVS fired store manager Tonia Ramos and offered her a severance agreement (the "Agreement"), which she signed. Severance agreements (also known as "separation agreements") are contracts commonly used by employers to protect against legal liability. Under a typical severance agreement, the former employee agrees to waive claims against the employer in exchange for consideration that the former employee would not otherwise be entitled to, such as additional pay or benefit extensions.

The CVS Agreement, a four-and-a-half-page, single-spaced document, includes a broad release of waivable claims relating to the signatory's employment, including claims under Title VII.[1] It also includes a covenant not to sue

---

[1] It is undisputed that individual Title VII claims can be released. *See, e.g., Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52

CVS in any court or agency, but expressly carves out the employee's right to "participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws." The Agreement forbids the signatory from improperly using or disclosing confidential information belonging to CVS and making "any statements that disparage the business or reputation" of CVS, but clarifies that the Agreement does not prohibit the employee from "making truthful statements or disclosures that are required by applicable law, regulation or legal process" or "requesting or receiving confidential legal advice." The Agreement requires the signatory to cooperate with CVS to protect confidential company information in legal proceedings, but provides that "[n]othing in this Agreement shall be construed to prohibit Employee from testifying truthfully in any legal proceeding." If the signatory complies with these and other related covenants, the signatory is entitled to severance

---

(1974) ("[P]resumably an employee may waive his cause of action under Title VII as part of a voluntary settlement … ."); *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) ("It is hornbook law that employers can require terminated employees to release claims in exchange for benefits to which they would not otherwise be entitled. Nothing in the employment-discrimination statutes undermines this rule … ." (internal citation omitted)); EEOC, Enforcement Guidance on Non-Waivable Employee Rights, Notice No. 915.002 (Apr. 10, 1997), http://www.eeoc.gov/policy/docs/waiver.html ("*[W]hile a private agreement can eliminate an individual's right to personal recovery*, it cannot interfere with EEOC's right to enforce Title VII, the EPA, the ADA, or the ADEA by seeking relief that will benefit the public and any victims of an employer's unlawful practices who have not validly waived their claims." (emphasis added)).

pay, subsidized health insurance during the severance peri-
od, and two months of outplacement assistance. The Agree-
ment advises the terminated employee to seek legal advice
before signing, allows the terminated employee twenty-one
days to consider whether to sign, and provides a seven-day
revocation period after signing.

In August 2011, approximately one month after signing
the Agreement, Ramos filed a charge with the EEOC alleg-
ing that CVS fired her because of her race and sex. During
the EEOC's investigation of Ramos's charge, CVS provided
the EEOC with Ramos's severance agreement.

On June 10, 2013, an EEOC regional attorney sent CVS a
letter stating that he "ha[d] reasonable cause to believe that
[CVS] is engaged in a pattern or practice of resistance to the
full enjoyment of the rights secured by Title VII … and that
the pattern or practice is of such a nature and is intended to
deny the full exercise of the rights described in Title VII … ."
The letter contended that CVS "conditioned employees' re-
ceipt of severance pay on an overly broad, misleading and
unenforceable" agreement that "interferes with employees'
right to file charges with the EEOC, … communicate with
the EEOC[,] and participate in EEOC … investigations." The
EEOC gave CVS fourteen days to agree to certain terms as
part of a consent decree to be filed in court.[2] Three days lat-
er, the EEOC dismissed Ramos's discrimination charge.

---

[2] The requested terms included: (1) discontinuing the use of
the Agreement; (2) expressly stating in future severance agree-
ments that the employee "retain[s] the right to file charges" and
"recover monetary relief" in any action by the EEOC; (3) expressly
stating in future severance agreements that the employee may

On July 29, 2013, after several phone calls with the EEOC, CVS responded with a letter requesting that the EEOC comply with the pre-suit procedures contained in Section 706 of Title VII.[3] CVS also asked the EEOC to reconsider its position that the act of offering a severance agreement to terminated employees, without any allegation that CVS engaged in discrimination or retaliation, was actionable under Title VII. Nonetheless, the EEOC continued to state in telephone conversations that it would only resolve its claims by consent decree. The agency also contended that it was not required to engage in conciliation because it was proceeding under Section 707(a) and therefore was not bound by the pre-suit requirements contained in Section 706.

In a letter dated August 1, 2013, CVS again requested conciliation. CVS also stated that it was "implementing changes to its release agreements to enhance the existing language to ensure that employees understand their rights to file a charge with the EEOC and cooperate fully with the EEOC." The EEOC did not respond and instead filed suit in the Northern District of Illinois six months later, on February 7, 2014.

---

communicate and cooperate with EEOC, regardless of any confidentiality obligations; (4) tolling Title VII's charge-filing period for former employees who signed the Agreement; (5) issuing a "corrective communication;" and (6) training personnel about their right to file charges and communicate with the EEOC.

[3] Section 706 states that the EEOC must attempt to resolve a charge of an unlawful employment practice "by informal methods of conference, conciliation, and persuasion" before filing a civil suit. 42 U.S.C. §§ 2000e-5(b), (f).

The EEOC's complaint alleged that CVS was engaged in a pattern or practice of resistance to the full enjoyment of rights guaranteed under Title VII by, among other things, "conditioning the receipt of severance benefits on … employees' agreement to a Separation Agreement that deters the filing of charges and interferes with employees' ability to communicate voluntarily with the EEOC … ." CVS filed a motion to dismiss under Rule 12(b)(6), arguing that the EEOC's claim failed as matter of law because the Agreement did not interfere with the signatory's right to file a charge and cooperate with the EEOC. More broadly, CVS argued that a "pattern or practice" violation under Section 707(a) must include an allegation that the employer engaged in discrimination or retaliation, and because the EEOC's complaint contained no such allegation, the court was required to dismiss the suit. In the alternative, CVS contended that it was entitled to summary judgment because the EEOC had refused to satisfy the pre-suit duties required by Section 706, namely, conciliation.

The district court granted summary judgment for CVS on October 7, 2014, holding that under Title VII and EEOC regulations, the EEOC was required to conciliate its claim before filing a civil suit. The district court also expressed skepticism about the merits of the EEOC's claim in two footnotes. The court first observed that the EEOC improperly sought "to expand the meaning" of the term "resistance" in Section 707(a) by pursuing alleged employer misconduct without an allegation of employment discrimination or retaliation. The district court also concluded that it was unreasonable to construe the Agreement as deterring charge-filing because the Agreement contains a carve-out provision allowing the signatory to participate in proceedings before anti-

discrimination agencies. And even if the Agreement did prohibit charge-filing, the Agreement would be deemed unenforceable in court and thus could not constitute resistance to Title VII. This appeal followed.

## II. Discussion

On appeal, the EEOC contends that the district court erred by granting summary judgment for CVS because Section 707(a) authorizes the agency to bring actions challenging a "pattern or practice of resistance" to the full enjoyment of Title VII rights without following any of the pre-suit procedures contained in Section 706, including conciliation. The EEOC also argues that CVS's use of a severance agreement that could chill terminated employees from filing charges or participating in EEOC proceedings constitutes a "pattern or practice of resistance" for purposes of Section 707(a). Finally, the EEOC argues that a reasonable jury could conclude that the Agreement deterred signatories from filing charges with the EEOC because of its length, small font, and the fact that it is drafted in "legalese," thus making summary judgment for CVS improper. CVS contends in response that the district court correctly determined that the EEOC was required to conciliate its claim before suing, and that a suit brought under Section 707(a) must contain an allegation of employment discrimination or retaliation to survive a motion to dismiss.

We review the district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences in the nonmoving party's favor. *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 707 (7th Cir. 2011). Summary judgment is appropriate if the movant shows that "there is 'no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Id.* at 708 (quoting Fed. R. Civ. P. 56(a)).

Title VII prohibits various "unlawful employment practices" involving discrimination on the basis of "race, color, religion, sex or national origin." 42 U.S.C. §§ 2000e-2, 2000e-3. Title VII also prohibits retaliation against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a).

Before 1972, the EEOC could not enforce Title VII violations by civil suit. Under Section 706, the EEOC was permitted to investigate charges filed by aggrieved parties or by the EEOC on their behalf and attempt to resolve the charge by informal methods "of conference, conciliation, and persuasion." Title VII, Pub. L. No. 88-352, § 706, 78 Stat. 241, 259 (1964). If those methods failed, the EEOC was required to notify the aggrieved individual, who could choose to file a complaint. *See id.* at 260; *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 325 (1980) (observing that before 1972, "[c]ivil actions for enforcement upon the EEOC's inability to secure voluntary compliance could be filed only by the aggrieved person"). In addition, the Attorney General could bring a civil action under Section 707 against persons "engaged in a *pattern or practice of resistance* to the full enjoyment of any of the rights secured by this title" without filing a charge or engaging in conciliation. § 707(a), 78 Stat. at 261 (emphasis added).

Convinced that the "failure to grant the EEOC meaningful enforcement powers ha[d] proven to be a major flaw in the operation of Title VII," Congress amended Title VII's enforcement provisions in 1972. S. Rep. No. 92-415, at 4 (1971).

First, Congress amended Section 706 to give the EEOC a cause of action to sue employers when informal methods of dispute resolution failed. § 2000e-5(f)(1) ("If within thirty days after a charge is filed … the [EEOC] has been unable to secure from the [employer] a conciliation agreement acceptable to the [EEOC], the [EEOC] may bring a civil action … ."). As before, amended Section 706 required the EEOC to proceed on the basis of a charge of an "unlawful employment practice" filed by or on behalf of an aggrieved person. § 2000e-5(b).

Second, the 1972 amendments added subsections (c)–(e) to Section 707, which transferred the Attorney General's authority to initiate "pattern or practice" suits to the EEOC. Section 707(c) provides that "the functions of the Attorney General under this section shall be transferred to [the EEOC]" and requires the EEOC to "carry out such functions in accordance with subsections (d) and (e) of this section." § 2000e-6(c). Importantly, Section 707(e) provides:

> Subsequent to March 24, 1972, [the EEOC] shall have authority to investigate and act on a charge of a *pattern or practice of discrimination*, whether filed by or on behalf of a person claiming to be aggrieved or by [the EEOC]. *All such actions shall be conducted in accordance with the procedures set forth in [Section 706].*

§ 2000e-6(e) (emphasis added).

The Supreme Court discussed the legislative history surrounding the transfer of authority from the Attorney General to the EEOC in *General Telephone Company of the Northwest, Inc. v. EEOC*:

> Senator Williams … noted that, upon the trans-
> fer, "[t]here will be no difference between the
> cases that the Attorney General can bring un-
> der section 707 as a 'pattern or practice' charge
> and those which the [EEOC] will be able to
> bring." Senator Javits agreed with both Sena-
> tors: "The EEOC … has the authority to insti-
> tute exactly the same actions that the Depart-
> ment of Justice does under pattern or practice."
> Senator Javits further noted that "if [the EEOC]
> proceeds by suit, then it can proceed by [pat-
> tern or practice] suit. If it proceeds by [pattern
> or practice] suit, it is in the position of doing
> exactly what the Department of Justice does in
> pattern and practice suits … . [T]he power to
> sue … fully qualifies the [EEOC] to take pre-
> cisely the action now taken by the Department
> of Justice."

446 U.S. at 328–29 (internal citations omitted).

The EEOC seizes on this legislative history to support its
argument that the 1972 amendments released EEOC from
any obligation to follow the pre-suit procedures contained in
Section 706 when proceeding under Section 707(a). Because
the Attorney General could pursue pattern or practice viola-
tions without first engaging in informal methods of dispute
resolution, and Congress transferred "the authority to insti-
tute exactly the same actions that the Department of Justice
does under pattern or practice," the EEOC argues that it is
not bound to follow the procedures set forth in Section 706
either.

The problem with this interpretation is that it reads Section 707(e)—which requires all actions under Section 707 to be "conducted in accordance with the procedures set forth in [Section 706]"—out of the statute. § 2000e-6(e). *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)). In an attempt to surmount this obstacle, the EEOC contends that Section 707(a) grants it the broad power to pursue claims alleging a pattern and practice "*of resistance*." By contrast, Section 707(e) merely requires that claims alleging a pattern or practice "*of discrimination*" comply with Section 706 procedures. Since the EEOC does not contend that CVS discriminated against Ramos when it offered her the severance agreement, the EEOC argues that its claim falls within Section 707(a) and thus, the agency is not required to follow Section 706's pre-suit procedural requirements. In other words, the EEOC advances a novel interpretation of its powers under Section 707(a) that extends beyond the pursuit of unlawful unemployment practices involving discrimination and retaliation, and that frees the EEOC from engaging in informal methods of dispute resolution as a prerequisite to litigation. As the district court observed, the EEOC "cites to no case law distinguishing actions brought under Section 707(a) and actions brought under Section 707(e), nor has any case been found that supports the distinction between the two sections as argued by the EEOC."

We reject the EEOC's expansive interpretation of its powers under Section 707(a). Title VII protects employees against discrimination on the bases of race, color, national origin, sex, or religion. Section 707(a) allows the EEOC to challenge "resistance to the full enjoyment of *any of the rights*

*secured by [Title VII]*." § 2000e-6(a) (emphasis added). There-
fore, suits under Section 707(a) must challenge practices that
threaten the employee's right to be free from workplace dis-
crimination and retaliation for opposing discriminatory em-
ployment practices—the only rights secured by Title VII.
Section 707(a) does not create a broad enforcement power
for the EEOC to pursue non-discriminatory employment
practices that it dislikes—it simply allows the EEOC to pur-
sue multiple violations of Title VII (i.e., unlawful employ-
ment practices involving discrimination or retaliation de-
fined in Sections 703 and 704) in one consolidated proceed-
ing. *See, e.g., Council 31, Am. Fed'n of State, Cty., & Mun.
Emps. v. Ward*, 978 F.2d 373, 378 (7th Cir. 1992) (finding that
pattern or practice refers to "a method of proving discrimi-
nation" "prohibited by Section 703," requiring a showing
that an "employer regularly and purposefully discrimi-
nates"); *Parisi v. Goldman Sachs & Co.*, 710 F.3d 483, 487 (2d
Cir. 2013) ("[I]n Title VII jurisprudence 'pattern-or-practice'
simply refers to a method of proof and does not constitute a
'freestanding cause of action.'" (citation omitted)); *Serrano v.
Cintas Corp.*, 699 F.3d 884, 894 (6th Cir. 2012) (claims "under
§ 707 … are limited to allegations of a pattern or practice of
discrimination").

The EEOC does not contend that CVS discriminated
against Ramos when it offered the Agreement. Nor does the
EEOC allege that CVS engaged in retaliation by offering the
Agreement to terminated employees, and that is because the
argument would fail: Several circuit courts, including ours,
have held that conditioning benefits on promises not to file
charges with the EEOC is not enough, in itself, to constitute
"retaliation" actionable under Title VII. *See, e.g., Isbell v. All-
state Ins. Co.*, 418 F.3d 788, 793 (7th Cir. 2005) (rejecting a

claim that the employer committed unlawful retaliation when it terminated all of its insurance agents and required those who wanted to stay in an independent contractor relationship to sign a release of claims); *EEOC v. Allstate Ins. Co.*, 778 F.3d 444, 452 (3d Cir. 2015) (finding "no legal authority" for the proposition that "denying an employee an unearned benefit on the basis of the employee's refusal to sign a release" is an adverse employment action); *EEOC v. SunDance Rehab. Corp.*, 466 F.3d 490, 499 (6th Cir. 2006) (holding that a severance agreement that conditions severance pay on a promise not to file a charge with the EEOC does not violate Title VII's antiretaliation provisions). Therefore, we agree with the district court that the EEOC's suit did not state a claim under Title VII.[4]

---

[4] Even if we were to accept the EEOC's arguments about the scope of its powers under Section 707(a) and the lack of procedural prerequisites to a suit, the EEOC's claim would still fail because the Agreement makes clear that it does not obstruct the signatory's ability to file a charge with the EEOC. The Agreement stipulates that "nothing" precludes the signatory from "participat[ing] in a proceeding with any appropriate federal, state, or local government agency enforcing discrimination laws," and that the signatory may "cooperat[e] with any such agency in its investigation." Moreover, the Agreement expressly states that its general release provision does not apply to rights that the signatory cannot lawfully waive. Therefore, the district court correctly concluded that it is unreasonable to construe the Agreement as restricting the signatory from filing a charge or otherwise participating in EEOC proceedings.

The EEOC contends that the Agreement is confusing because of its small font and "legalese," but does not dispute that the parties could locate and read the provisions informing them of their

Moreover, because there is no difference between a suit challenging a "pattern or practice of resistance" under Section 707(a) and a "pattern or practice of discrimination" under Section 707(e), we agree with the district court that the EEOC was required to comply with all of the pre-suit procedures contained in Section 706, including conciliation. This interpretation is not only most consistent with congressional intent, it is the approach required under the EEOC's own regulations, which provide: "Where the [EEOC] determines that there is reasonable cause to believe that an unlawful employment practice has occurred or is occurring, the [EEOC] shall endeavor to eliminate such practice by informal methods of conference, conciliation and persuasion." 29 C.F.R. § 1601.24(a). The regulations further provide that the EEOC may bring a civil action only if it is unable to secure "a conciliation agreement acceptable to the [EEOC]." § 1601.27. Nowhere in the EEOC's comprehensive regulations is there any statement suggesting that suits may brought under Section 707(a) without conciliation or an allegation of discrimination.

If we were to adopt the EEOC's interpretation of Section 707(a), the EEOC would never be required to engage in con-

---

ability to participate in EEOC proceedings. In addition, the Agreement advises the terminated employee to consult with an attorney and requires that the employee attest to fully understanding and voluntarily accepting its terms. The EEOC does not allege that there was a disparity in bargaining power that might suggest procedural unconscionability. Nor does the EEOC present evidence that anyone has actually been misled by the Agreement; instead, the EEOC admits that Ramos filed a charge of discrimination one month after signing it.

ciliation before filing a suit because it could always contend that it was acting pursuant to its broader power under Section 707(a). In other words, the EEOC's position reads the conciliation requirement out of the statute. But Congress has made it clear that it prefers for the EEOC to resolve Title VII disputes by informal methods of dispute resolution and to only resort to litigation when those methods fail. *See Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (observing that conciliation is "a key component of the statutory scheme" and that "Congress chose cooperation and voluntary compliance as its preferred means" of bringing "employment discrimination to an end" (citations, internal quotation marks, and alteration omitted)); *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 368, 379 (1977) (observing that "the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties" and that "Congress, in enacting Title VII, chose cooperation and voluntary compliance … as the preferred means of achieving its goals" (internal citation, quotation marks, and alteration omitted)); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (observing that Congress created the EEOC to give parties "an opportunity to settle disputes through conference, conciliation, and persuasion" before resorting to litigation); *EEOC v. Liberty Trucking Co.*, 695 F.2d 1038, 1042 (7th Cir. 1982) (describing conciliation as the EEOC's "most important function").

Lastly, we clarify a statement made in dicta in an earlier decision. In *EEOC v. Harvey L. Walner & Assocs.*, we explained that in the course of amending Section 707, "Congress … transferred to EEOC authority previously vested in the Attorney General under § 707 … to institute 'pattern or practice' lawsuits on its own initiative—i.e., without certain

of the prerequisites to a civil action under [Section 706(f)]."
91 F.3d 963, 968 (7th Cir. 1996). That statement should not be
interpreted as permitting the EEOC to proceed without a
charge, as the EEOC contends and the district court conclud-
ed in the decision below. The 1972 amendments gave the
EEOC the power to file "pattern or practice" suits on its
own, but Congress intended for the agency to be bound by
the procedural requirements set forth in Section 706, includ-
ing proceeding on the basis of a charge. *See* 42 U.S.C.
§ 2000e-6(e) ("Subsequent to March 24, 1972, [the EEOC]
shall have authority to investigate and act *on a charge* of a
pattern or practice of discrimination … . All such actions
shall be conducted in accordance with the procedures set
forth in [Section 706]." (emphasis added)); *EEOC v. Univ. of
Pa.*, 493 U.S. 182, 190 (1990) ("[The EEOC's] enforcement re-
sponsibilities are triggered by the filing of a specific sworn
charge of discrimination."); *EEOC v. Shell Oil Co.*, 466 U.S.
54, 62 (1984) ("In its current form, Title VII sets forth an inte-
grated, multistep enforcement procedure … . The process
begins with the filing of a charge with the EEOC alleging
that a given employer has engaged in an unlawful employ-
ment practice… . [W]hen a Commissioner has reason to
think that an employer has engaged in a "pattern or prac-
tice" of discriminatory conduct, he may file a charge on his
own initiative." (internal citations, quotation marks, and
footnote omitted)).

We therefore reject the EEOC's interpretation of Section
707(a) that would undermine both the spirit and letter of Ti-
tle VII. Under Section 707(e), the EEOC is required to comply
with all of the pre-suit procedures contained in Section 706
when it pursues "pattern or practice" violations. And be-
cause the EEOC has not alleged that CVS engaged in dis-

crimination or retaliation by offering the Agreement to terminated employees, the EEOC failed to state a claim on which relief can be granted.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.